UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

06 JAN 24 PM 3:30

| | | |
|---|---|---|
| CNG FINANCIAL CORPORATION<br>5155 Financial Way<br>Mason, OH 45040-7447 | : : : : | Case No. **1:06 CV 040**<br><br>Judge<br><br>BECKWITH |
| Plaintiff, | : : | |
| v. | : : | COMPLAINT WITH JURY DEMAND |
| GOOGLE, INC.<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | : : : : | J. BLACK |
| Defendant. | : | |

Plaintiff, CNG Financial Corporation ("CNG"), by and through undersigned counsel and for its Complaint against Google, Inc. ("Google"), states as follows:

### SUMMARY OF THE CASE

1. This is an action for trademark infringement and related causes of action arising from Google's practice of selling CNG's federally registered "Check 'N Go" service mark and other similar names and phrases as keyword search terms to advertisers on Google's search engine website. By this practice, Google provides the means and opportunity to competitors of CNG's operating subsidiaries to divert internet traffic from CNG and its operating subsidiaries to the competitors' own websites when consumers perform a Google search of the "Check 'N Go" mark, and Google is enriched by the misappropriation of that mark.

2. When consumers type "Check 'N Go" into Google's search window, they are presented with "Sponsored Links" to the websites of companies that have paid Google to appear on the search results page triggered by such search. And because of the fame of the Check 'N Go

mark, these companies (predominantly competitors of CNG's subsidiaries) are willing to pay Google handsomely to have links to their websites appear in response to a search of that mark.

3.  Google's complained of practice of selling CNG's Check 'N Go trademark as a keyword search term runs directly contrary to the trademark policy previously followed by Google (and still followed by the other major search engine companies in this country) of disabling sponsored links which appear when Google customers select the trademarks of others as keyword triggers. However, in order to enhance the value of its initial public stock offering and in order to increase its advertising revenues (which account for nearly all of Google's total earnings), Google recently changed that policy. As stated in the Prospectus accompanying Google's 2004 initial public offering:

> In order to provide users with more useful ads, we have recently revised our trademark policy in the U.S. and Canada. Under our new policy, we no longer disable ads due to selection by our advertisers of [other parties'] trademarks as keyword triggers for the ads.

4.  As further stated in this Prospectus, Google was fully aware, when it changed its policy to allow its advertising customers to use the trademarks of others as search terms, that it would face additional trademark infringement lawsuits as a result.

> As a result of this change in policy, we may be subject to more trademark infringement lawsuits. Defending these lawsuits could take time and resources. Adverse results in these lawsuits may result in, or even compel, a change in this practice which could result in a loss of revenue for us, which could harm our business.

5.  By this lawsuit, CNG seeks to enjoin further unauthorized use of its Check 'N Go mark in Google's advertising programs and to recover damages for Google's illegal acts.

**PARTIES, JURISDICTION AND VENUE**

6.  CNG is an Ohio corporation headquartered at 5155 Financial Way, Mason, Ohio. CNG wholly owns numerous subsidiary corporations which operate over 1300 stores that offer

small denomination consumer loans (more typically referred to as "deferred deposit transactions" or "payday loans") in Ohio and 34 other states ("the Check 'N Go Companies"). In addition, CNG's wholly owned subsidiary, Avante TelAvance, Inc., d/b/a Check 'N Go Online ("Check "N Go Online"), extends payday loans through the Check 'N Go internet site at www.checkngo.com ("the Check 'N Go Website").

7. Upon information and belief, Google is a Delaware corporation with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California. In addition, on information and belief, Google advertises, solicits clients, and conducts substantial amounts of business in Ohio and within this District in particular.

8. This action arises under the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a) and 1125(c). This Court has federal question jurisdiction over these claims pursuant to 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331, 1338(a) and 1338(b). Moreover, this Court has diversity jurisdiction over these claims pursuant to 15 U.S.C. §§ 1332 because there is complete diversity of citizenship between the parties and because the amount in controversy, excluding interest and costs, exceeds $75,000.

9. This Court also has subject matter jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. § 1367(a).

10. Google is subject to the personal jurisdiction of this Court because, among other things, it has purposefully availed itself of the benefits of doing business in the State of Ohio by providing services to residents of Ohio and by selling products and services to businesses and individuals located in Ohio.

11. Ohio's long-arm statute, O.R.C. § 237.382, further supports the exercise of personal jurisdiction over Google.

3

12. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) because a substantial part of the events giving rise to the claims occurred in this District and because Google is a corporation subject to personal jurisdiction in this District.

## FACTUAL BACKGROUND

### CNG, the Check 'N Go Companies And The Check 'N Go Mark

13. CNG's Check 'N Go Companies operate the second largest payday lending operation in this country. Payday loans are short-term, unsecured consumer loans, advanced for an average fee of approximately 17% of the amount of the loan, predominantly to individuals who are unable to obtain credit from banking and other institutional services. Over the past five years, more than 1.8 million consumers have obtained payday loans through CNG's Check 'N Go Companies.

14. Since at least as early as 1995, and long prior to the acts of Google complained of herein, CNG and its predecessor corporation adopted and used, and CNG continues to use, the name and mark Check 'N Go ("the Check 'N Go Mark") in interstate commerce in the United States by, *inter alia,* licensing Check 'N Go Online and the Check 'N Go Companies to use that Mark in connection with their payday lending services.

15. To enhance its rights in the Check 'N Go Mark, CNG's predecessor corporation obtained a Federal Service Mark Registration for the Check 'N Go Mark, U.S. Registration No. 2,065,791, registered on September 21, 1995 for "Check Cashing". CNG is the present owner of this Federal Registration, which is incontestable and not subject to attack with respect to its validity. A true and correct copy of the Federal Registration for the Check "N Go Mark is attached hereto as Exhibit "A".

16. CNG invests millions of dollars each year in promoting its Check 'N Go Mark through national advertising and direct marketing. CNG advertises through a variety of media, including television, radio, newspapers, direct mail and in telephone directories across this country. CNG and its licensed subsidiary companies also promote the Check 'N Go Mark on the Check 'N Go Website.

17. As a result of CNG's extensive advertising and promotional efforts and its continuous use of the Check 'N Go Mark, "Check 'N Go" has attained the highest level of brand recognition among consumers of payday lending services, and the Check 'N Go Mark has become "famous" within the meaning of the Federal Dilution Statute, 15 U.S.C. § 1125(c).

18. In addition to promoting the Check 'N Go Mark in conjunction with the payday lending services of Check 'N Go Online and its Check 'N Go Companies, the Check 'N Go Website offers consumers a facility to apply for and obtain such loans from Check 'N Go Online directly through the internet. A large number of existing and new customers visiting the Check 'N Go Website take out payday loans from Check 'N Go Online.

### Google's Business and its "AdWords" Program

19. Internet users who are searching for the website of a specific company, but who do not know the exact domain name or website address at which that website may be found, often type "key words" into a "search engine" window to locate websites which match the keywords typed in by the user. A search engine, such as Google, uses algorithms to process these key words against its database and produces a search results page, which lists the websites that match the customer's key word search. Typically, with the notable exception at issue in this case, Google's algorithms operate so that these websites are listed on the search results page in

order of decreasing relevance to the keyword searched, with the most relevant websites listed first.

20. Upon information and belief, Google's internet search engine, which is free to consumers, is the most widely used internet search engine in the world, answering hundreds of millions of user searches and covering billions of web pages daily.

21. Google's search engine is available, among other places, through its website located at www.google.com. Google also provides its search engine platform to other search engine companies, such as AOL, Askjeeves, Compuserve, EarthLink and Netscape.

22. Google also sells a number of products and services to individuals, businesses, and educational and governmental entities. One of the programs Google offers to its business customers is a keyword-triggered advertising program entitled "Ad Words".

23. Google's "AdWords" program enables advertisers to purchase or bid on key words that generate an advertising link (known as a "Sponsored Link") to the purchaser's website. For example, a company in the payday lending business might bid on the keyword "payday loan" through Google's "AdWords" program, so that the company's website will be the first, or among the first, listed "Sponsored Links" when a customer enters the keyword "payday loan" in Google's search engine window. Google posts these so-called "Sponsored Links" on the top and the side of its search engine results page triggered by the "payday loan" search query. Upon information and belief, Google's AdWords' Sponsored Links are listed in an order which is wholly unrelated to their relevance to the keyword search; instead, their order is determined by how much an advertiser is willing to pay to Google for priority on the search results page.

24. The designation "Sponsored Link" is itself confusing and misleading. In many instances, the Google search engine "results" pages are designed so that the "Sponsored Link"

display is inconspicuous or otherwise not apparent to Google users. Moreover, it is not apparent to Google users who exactly "sponsors" these links—thereby leaving many internet users to believe that those links are "sponsored" by the company whose name they entered into the Google search engine window.

25. Google profits every time an Internet user clicks on a "Sponsored Link" for one of the advertisers to whom Google has sold key words in its "AdWords" program.

26. According to Google, 96% of its net revenues for the first quarter of 2004, which totaled $389 million, were derived from advertising revenues.

### Google's Violation of CNG'S Rights

27. Google has sold various key words comprised, in whole or in part, of the Check 'N Go Mark and other similar names and phrases, to competitors of Check 'N Go Online and the Check 'N Go Companies and other unauthorized users.

28. Although Google agreed, when notified by CNG of its trademark rights in the search term "Check 'N Go", to bar Google's advertisers from using the "Check 'N Go Mark" or any other similar names and phrases within the ad text of their Sponsored Links (which agreement Google has failed to honor), Google refused to stop selling the Check 'N Go Mark or any other similar names and phrases as keyword search terms to those advertisers. Consequently, Google causes the purchase of the Check 'N Go Mark and other similar names and phrases to trigger the appearance of a link to these competitors' websites on the Google search results page whenever a consumer types Check 'N Go, or similar names and phrases such as "checkngo", "check and go" and "check & go", into the Google search window. Moreover, with regard to, at the minimum, "checkngo" and "Check 'N Go", consumers typing those keywords into Google's

7

search window are directed to the Sponsored Links of competitors containing those names and marks within the ad text.

29. By the operation and design of its AdWords program, Google causes consumers who specifically intend and desire to find a Check 'N Go website to be directed, instead, to a search result page containing links to the websites of competitors of Check 'N Go Online and the Check 'N Go Companies. Thus, Google sells, and its customers hope to purchase, the possibility that they will intercept customers who, due to CNG's extensive and pervasive advertising resulting in invaluable good will, are trying to find one of the nation's largest and best known and trusted payday lending operation.

30. Once intercepted, consumers may click on the links to the competitors of Check 'N Go Online and the Check 'N Go Companies and thus be directed to the competitors' websites. Consumers may not realize that they have unwittingly "clicked" on a competitor's website. Once there, the consumer, having been distracted, may not ever return to CNG's website. Even if the consumer appreciates the diversion, he or she will have to spend time and energy trying to backtrack or otherwise find CNG's sites.

31. Through this practice, Google traffics in the infringement and dilution of CNG's Check 'N Go Mark. Google has knowingly sold CNG's Check 'N Go Mark in commerce and included the Check 'N Go Mark and other similar names and phrases in Google's search engine for Google's own profit and to increase the competitive advantage of competitors of Check 'N Go Online and the Check 'N Go Companies. This practice began after the Check 'N Go Mark was registered and/or became famous and distinctive, and it has been continued by Google with full knowledge and in willful disregard of CNG's rights in its Mark.

32. Google has the technological capability of blocking the purchase of the trademarks of others, including CNG's Check 'N Go Mark, as a keyword/search term for its search engine. Indeed, Google's former trademark policy was to block such purchases, and other prominent search engine companies continue to do so.

33. Google's refusal to block the purchase of CNG's Check 'N Go Mark and other similar names and phrases as a keyword/search terms for its search engine constitutes conscious and deliberate disregard of CNG's trademark and other related rights in its Check 'N Go Mark.

## FIRST CAUSE OF ACTION

### Lanham Act – Trademark Infringement

34. CNG hereby incorporates by reference and realleges each and every allegation of Paragraphs 1 through 33 above.

35. Google's unauthorized and willful use and sale of the Check 'N Go Mark as a keyword in connection with its "AdWords" program constitutes a use in commerce which infringes CNG's exclusive rights in its federally-registered mark and is likely to cause confusion, mistake or deception as to the source of the services offered by advertisers who use the Check 'N Go Mark and other similar names and phrases on Google's search engine to promote their own products and services with Google's express authorization to do so. Such actions are also likely to cause confusion as to whether CNG is sponsoring, has authorized or is somehow affiliated with the products or services advertised on Google's search engines using CNG's Check 'N Go Mark.

36. Consumers are likely to be initially confused into believing that clicking on Google's "Sponsored Links" will lead to a Check 'N Go Website and/or to information about Check 'N Go Online or the Check 'N Go Companies and their payday lending services.

37. Even after accessing the websites associated with "Sponsored Links", consumers are likely to be confused into believing that those web sites and the information they contain are associated with, sponsored by or otherwise affiliated with or connected to Check 'N Go Online and the Check 'N Go Companies.

38. Google's unauthorized and willful use of CNG's registered service mark in connection with its "AdWords" program constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

39. Google's infringement has damaged CNG in an amount to be determined at trial.

40. Google's infringement has caused and, unless restrained by this Court, will continue to cause CNG irreparable injury.

41. CNG has no adequate remedy at law for Google's infringement.

## SECOND CLAIM FOR RELIEF

### Lanham Act – Contributory Trademark Infringement

42. CNG hereby incorporates by reference and realleges each and every allegation of Paragraphs 1 through 41 above.

43. With full knowledge of CNG's rights in its Check 'N Go Mark, Google has sold the rights to use that Mark and similar names and phrases to third party advertisers as a keyword as a part of its "AdWords" program. The third party advertisers' use of the Check 'N Go Mark in the context of the "AdWords" program is likely to cause confusion among consumers, and constitutes infringement of CNG's rights in the Check 'N Go Mark.

44. In particular, the use of CNG's Check 'N Go Mark as a keyword on Google's search engine is likely to cause confusion, mistake and deception among Google users as to

whether CNG is the source of, or is sponsoring or affiliated with, the products and services offered on such third party advertisers' web sites.

45. Through its sale of the Check 'N Go Mark as a keyword to the third party advertisers, Google provides such third party advertisers with aid and material contribution to the third party advertisers' violations of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a).

46. Google is therefore contributorily liable for the infringing use of the Check 'N Go Mark by its advertisers who use the Check 'N Go Mark to trigger their advertisements.

47. CNG has been damaged by Google's contributory infringement in an amount to be determined at trial.

48. CNG has no adequate remedy at law for the foregoing wrongful conduct.

49. CNG has been, and absent injunctive relief will continue to be, irreparably harmed by Google's actions.

## THIRD CLAIM FOR RELIEF

### Lanham Act – Vicarious Trademark Infringement

50. CNG hereby incorporates by reference and realleges each and every allegation of Paragraphs 1 through 49 above.

51. Google has the right, ability and obligation to control the use of the Check 'N Go Mark by third party advertisers as a part of its "AdWords" program. The third party advertisers' use of the Check 'N Go Mark in the context of Google's "AdWords" program is likely to cause confusion among consumers, and constitutes infringement of CNG's rights in the Check 'N Go Mark.

52. Google receives a direct financial benefit from the third party advertisers' infringing use of the Check 'N Go Mark.

53. Google is vicariously liable for the infringing use of the Check 'N Go Mark by third party advertisers.

54. CNG has been damaged by Google's vicarious infringement in an amount to be determined at trial.

55. CNG has no adequate remedy at law for the foregoing wrongful conduct.

## FOURTH CAUSE OF ACTION

### Lanham Act – False Representation

56. CNG hereby incorporates by reference and realleges each and every allegation of Paragraphs 1 through 55 above.

57. Google's use of the Check 'N Go Mark and other similar names and phrases on and in connection with its "AdWords" program conveys the misleading commercial impression to the public that the advertisers listed in Google's manipulated search results pages, or their services, are approved by, sponsored by or are somehow affiliated or connected with CNG.

58. Google's misleading use of the Check 'N Go Mark and other similar names and phrases in connection with its "AdWords" program constitutes a false designation of origin and false description and representation, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

59. Google's false representations have damaged CNG in an amount to be determined at trial.

60. Google's false representations have caused and, unless restrained by this Court, will continue to cause CNG irreparable injury.

61. CNG has no adequate remedy at law for Google's infringement.

## FIFTH CAUSE OF ACTION

### Lanham Act - Dilution

62. CNG hereby incorporates by reference and realleges each and every allegation of Paragraphs 1 through 61 above.

63. Google's use of the Check 'N Go Mark in connection with its "AdWords" program has and will continue to lessen the capacity of CNG's famous and distinctive Check 'N Go Mark to distinguish CNG's services from those of others, and has diluted the distinctive quality of CNG's famous and distinctive Check 'N Go Mark.

64. Google's use of the Check 'N Go Mark constitutes dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

65. Google's dilution of the Check 'N Go Mark has caused CNG damage in an amount to be determined at trial.

66. Google's dilution of the Check 'N Go Mark has caused and, unless restrained by this Court, will continue to cause CNG irreparable injury.

67. CNG has no adequate remedy at law for Google's dilution of its Check 'N Go Mark.

## SIXTH CAUSE OF ACTION

### Ohio Trademark Infringement

68. CNG hereby incorporates by reference and realleges each and every allegation of Paragraphs 1 through 67 above.

69. Plaintiff is a "Person" within the meaning of O.R.C. § 4165.01(D).

70. The Check 'N Go Mark is a "Mark" within the meaning of O.R.C. § 4165.01(C) and a "Trademark" within the meaning of O.R.C. § 4165.01(F).

71. Google has violated Ohio Rev.Code § 4165 *et seq.*, in particular and without limitation O.R.C. § 4165.02(A)(1), (2), (3) and (7), by use of the Check 'N Go Mark in connection with its "AdWords" program in a manner causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of products and services offered by those companies whose links appear on search results page generated by the search of that Mark and by causing likelihood of confusion or misunderstanding as to affiliation, connection, or association with, or certification by CNG, and by representing that services have sponsorship, approval, or characteristics that they do not have.

72. As a result of the conduct of Google, CNG has no adequate remedy at law and has suffered, and will continue to suffer, irreparable harm.

73. As a result of the conduct of Google, CNG has suffered, and will continue to suffer damages.

## SEVENTH CAUSE OF ACTION

### Common Law Trademark Infringement

74. CNG hereby incorporates by reference and realleges each and every allegation of Paragraphs 1 through 73 above.

75. Google's actions constitute trademark infringement in violation of CNG's trademark rights at common law.

76. As a result of Google's actions, CNG has no adequate remedy at law and has suffered, and will continue to suffer, irreparable harm.

77. As a result of Google's actions, CNG has suffered, and will continue to suffer, damages.

## EIGHTH CAUSE OF ACTION

### Unjust Enrichment

78. CNG hereby incorporates by reference and realleges each and every allegation of Paragraphs 1 through 77 above.

79. Google has knowingly benefited from its use of CNG's Check 'N Go Mark in conjunction with its "AdWords" program.

80. Google has retained the benefits of its use of the Check 'N Go Mark, which use is in violation of CNG's rights and causes damages to CNG, as set forth above.

81. Under these circumstances, as set forth in the Complaint, it would be unjust for Google to retain the benefit conferred upon it by its use of the Check 'N Go Mark without payment to CNG.

## NINTH CAUSE OF ACTION

### Misappropriation

82. CNG hereby incorporates by reference and realleges each and every allegation of Paragraphs 1 through 81 above.

83. As set forth in the Complaint, CNG has made substantial investment of money and time in developing the brand recognition and good will associated with the Check 'N Go Mark.

84. As a result, the Check 'N Go Mark constitutes valuable property of CNG.

85. Google has made no efforts to enhance the value of the Check 'N Go Mark, and it has made no investment in the Mark.

86. Google's use of the Mark generates benefit to Google because, *inter alia*, direct competitors of CNG participate in Google's AdWords Program and purchase the Mark to serve

as a keyword to divert customers from CNG and trade on the good will and recognition established by CNG.

87.  By enabling direct competitors of CNG to make use of and benefit from the Mark in this manner, Google reduces the incentive of CNG (and other businesses) to distinguish themselves and their marks through promotion and through providing superior quality services.

88.  Google's use of the Mark, at no cost to itself, confers on it for free the benefit which CNG has expended considerable time and effort to create.

89.  Google's intentional use of the Mark constitutes interference with or use of CNG's property without permission.

90.  As a result Google has benefited from CNG's efforts at CNG's expense.

## PRAYER FOR RELIEF

WHEREFORE, CNG asks for an order and demands judgment against Defendants as follows:

A.  Preliminarily and permanently enjoining Google and its officers, partners, agents, subcontractors, servants, employees, subsidiaries and related companies or entities, and all others acting in concert or participating with it or with actual notice of such order from:

- Directly or indirectly selling or offering for sale the Check 'N Go Marks or other terms confusingly similar to the Check 'N Go Marks for use in their search-based advertising programs;
- Continuing to post advertisements for third parties when Internet users run a search on Defendants' search engines using search terms that are identical or confusingly similar to the Check 'N Go Mark; and

- Making any use of the Check 'N Go Mark and/or terms confusingly similar thereto unless specifically authorized by CNG.

B. Awarding CNG costs and attorneys' fees to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. § 1117.

C. Awarding CNG actual and trebled damages to the full extent allowed under 15 U.S.C. § 1117, in an amount to be determined at trial.

D. Awarding CNG actual and punitive damages as provided for under the common law.

E. Awarding CNG actual and trebled damages as provided for under O.R.C. § 4165.

F. Granting such other relief as this Court deems just and equitable.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

Respectfully submitted,

_Ann Gallagher Robinson_
Ann Gallagher Robinson (0064234)
Frost Brown Todd LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, OH 45202-4182
(513) 651-6128
(513) 651-6981 (fax)
arobinson@fbtlaw.com

Barry D. Hunter (not yet admitted)
Medrith Lee Norman (not yet admitted)
Frost Brown Todd LLC
250 West Main Street, Suite 2700
Lexington, Kentucky 40507
(859) 231-0000
(859) 231-0011 (fax)

Attorneys for CNG FINANCIAL CORPORATION