UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| CNG FINANCIAL CORPORATION,<br><br>    Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>GOOGLE INC.,<br><br>    Defendant/Counterclaim-Plaintiff. | Case No. 1:06cv040<br><br>Chief Judge Sandra S. Beckwith<br>Magistrate Timothy S. Black<br><br>**DEFENDANT GOOGLE INC.'S RULE 12(C) MOTION FOR JUDGMENT ON ITS COUNTERCLAIM; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**ORAL ARGUMENT REQUESTED** |

## NOTICE OF MOTION

Defendant and Counterplaintiff Google Inc., through its undersigned counsel hereby moves for a judgment on its counterclaim. Google brings this motion pursuant to Federal Rule of Civil Procedure 12(c) and Local Rules 7.1 and 7.2. This motion is based upon the Memorandum of Points and Authorities set forth below, all pleadings, papers and files in this action, oral argument at a hearing if the Court decides to conduct one, and any other factors that this Court may wish to consider.

Pursuant to Local Rule 7.1(B)(2), Google hereby requests oral argument on the ground that this motion raises a legal issue of significant public importance. The legal issue herein raised affects not only the parties to this action; it also potentially affects any party who advertises on Internet search engines.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This case is a prime example of the errors that sometimes occur when parties attempt to

apply straightforward principles of law to new technologies—in this case, the application of trademark law to Internet search engines. For some reason, rules and propositions that are easily understood in more traditional contexts get muddled when applied to the Internet. But no matter the context, trademark laws do not give trademark holders a monopoly over all uses of trademarks. Instead, whether on the Internet or in magazines, the law protects a trademark's source-identifying function, but permits other uses of the term.

Imagine, for example, that Ford wants to target its advertising at Toyota customers. Ford works with an advertising representative from *Car and Driver*, and pays to have a full-page Ford ad face every Toyota review the magazine prints that year. Ford is aware that many of the readers of those ads go to those pages looking for information about Toyotas. After all, that is precisely the point: Ford *wants* to target its ads at its competitor's customers and prospective customers, and win those customers as its own. In so doing, Ford has "used" its competitor's trademark, "Toyota," in the sense that the trademark is the criterion determining where the Ford ads will appear. But—so long as the Ford ads themselves do not deceive the reader into thinking that Ford's cars are made or sponsored by Toyota—there is no trademark violation in deliberately targeting one's advertisements at customers who are buying, or considering buying, or merely seeking information about, one's competitor's product instead. That isn't trademark infringement, it's competition.

Similarly, no one would suggest that the owner of a new pizza restaurant runs afoul of trademark law by handing flyers to customers on their way into the neighboring Domino's. Neither is there anything wrong with buying billboard space as close to one's competitor's store as one can, displaying generic painkillers next to brand name painkillers, or mailing advertisements to a competitor's customers if one can lawfully obtain a list of them. In each instance, one is "using" its competitor's trademark in the sense that the trademark is used as the selection mechanism or "trigger" for one's own ads. But this is not "use" for purposes of

trademark analysis.

When the same, entirely legitimate competitive activity moves to the Internet, some people think the rules are (or should be) different. Faced with advertising legitimately targeted at search engine users searching for web pages relevant to the term "Check 'N Go," Plaintiff CNG Financial Corp. ("CNG") accuses Defendant Google Inc. of violating trademark laws based on the fact that Google advertisers can select CNG's registered trademark as a keyword that triggers the appearance of advertisements for their web pages, even though that "use" is not a use within the meaning of the Lanham Act (a "trademark use"). But the Lanham Act's threshold requirement of "use" applies with equal force in cyberspace, as courts in this Circuit and elsewhere have confirmed. Triggering ads off of a user's search for a trademarked term does not implicate trademark law at all, so long as the advertisements themselves do not make improper use of those terms.

When a user enters a keyword into its search engine, Google displays a webpage that shows relevant search results along the left side. No one pays for these results; instead Google's proprietary algorithms objectively rank them in the order of their relevancy. For the query "Check 'N Go," these algorithms happen to yield as the first search result the website www.checkngo.com, which is operated by CNG.

In addition to these objectively ranked web search results (known as "organic search results"), Google makes space available on the right side of the page (next to the search results) and, sometimes, above the search results for advertisers to place their ads. Like the organic search results, the advertisements link to web pages. To target potential customers, Google's advertisers can display ads when search engine users enter selected search terms, including trademarks. Therefore, when advertisers bid on the keyword "Check 'N Go" as an ad placement trigger, Google may display the advertisements alongside or just above the search results. These ads are each prominently labeled with the URL of the website to which the user will go if he or

she clicks on that ad.

CNG's complaint about keyword-triggered advertising is nothing more than a lament that Google permits its advertisers to compete head-to-head with CNG, by targeting their advertisements at users who may be potential CNG customers. The law encourages, rather than forbids, robust competition. As long as the ads themselves do not contain CNG's trademark, CNG cannot allege that Google's use of trademarks as keyword triggers for ads constitutes use of CNG's trademark *as a trademark* any more than Wyeth could allege that a generic ibuprofen uses its "Advil" mark as a trademark merely because the generic pays to have its product sit next to Advil on a drugstore shelf. As one frustrated federal court recently explained, "[t]he sponsored link marketing strategy is the electronic equivalent of product placement in a retail store." *Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, __ F.Supp.2d __, 2006 WL 1418616, *2 (S.D.N.Y. May 24, 2006).

Google has filed a counterclaim seeking declaratory relief that this method of keyword advertising does not violate CNG's trademark rights. That counterclaim presents a purely legal question, which this Court can and should decide on the pleadings.[1]

## II.    FACTS

Google's free Internet search engine is the most widely used Internet search engine in the world.[2] Complaint ¶ 20. It answers hundreds of millions of user queries and covers billions of

---

[1] As discussed in more detail below, Google has proceeded in this fashion—a Rule 12(c) motion on its counterclaim rather than a Rule 12(b)(6) motion on CNG's affirmative claims—because CNG's Complaint arguably addresses two different theories in a single count. The first—that triggering advertisements on user searches violates the Lanham Act—is a pure question of law. The second—that advertisers' use of CNG's marks **in the text** of ads gives rise to confusion (which is not clearly plead, but neither is it clearly excluded from the scope of CNG's claims), and that Google is somehow liable for that confusion even though it does not permit such use—may raise contested questions of fact not suitable for determination on the pleadings.

[2] Because Google moves for judgment on the pleadings, Google has treated the allegations in CNG's complaint as if they were true. Those allegations made by Google in its counterclaim that CNG has admitted in its reply to the counterclaim are also recited.

web pages each day.  Counterclaim ¶ 7. When a user enters a keyword into Google's search box and clicks the Google Search button, Google produces a results page.  Using proprietary algorithms, this page lists web pages related to the keywords, with the most relevant page appearing first, then the next, and so on.  Complaint ¶ 19.

Google also sells products and services.  Complaint  ¶ 22.  One such service is the keyword triggered advertising program "AdWords."  *Id.*  Under AdWords, advertisers can bid to have their ads displayed when Google users enter designated keywords.  *Id.*  at ¶ 23.  These ads are called "Sponsored Links."  *Id.*  Google posts the Sponsored Links to the side and above its search engine results based on whichever keywords appear in user queries posted to Google's search engine.  *Id.*  Thus, for example, a company in the payday lending business might bid on the keyword "payday loan."  *Id.*  Then, when a user submits a search containing that keyword, the retailer's paid advertisement would have a chance to appear as a Sponsored Link alongside or just above the search results.  *Id.*

On January 24, 2006, CNG filed the present action against Google, alleging that Google's AdWords program infringes CNG's trademark rights to the term "Check 'N Go."  CNG's Check 'N Go companies operate the second largest payday lending operation in this country, and the Check 'N Go website allows consumers to apply for and obtain payday loans directly through the Internet.  Complaint ¶¶ 13, 18.  CNG owns the federally registered mark "Check 'N Go."  *Id.* at ¶ 15.

CNG has accused Google of violating its trademark rights in two distinct ways.  The gravamen of CNG's complaint relies on a theory that no appellate court has ever embraced: that Google's policy of allowing CNG's competitors to pay to have their advertisements appear when Google users enter "Check N' Go" as a search term by itself constitutes trademark infringement.  For example, CNG's Complaint states: "Google's refusal to block the purchase of CNG's Check 'N Go Mark and other similar names and phrases as a keyword/search terms for its search engine

constitutes conscious and deliberate disregard of CNG's trademark and other related rights in its Check 'N Go Mark." Complaint ¶ 33. But one sentence of CNG's complaint suggests a second and somewhat more traditional trademark infringement theory: CNG alleges that some Google Sponsored Links placed by CNG's competitors actually use "Check N' Go" in their text. Complaint ¶ 28.

Google's existing policy prohibits such conduct: upon request of a trademark holder, Google blocks the use of that trademark in the text of Sponsored Links. Counterclaim ¶ 14. As Google's existing policy already prohibits this complained-of conduct, Google does not seek declaratory relief on this point, and does not seek judgment on the pleadings herein.[3]

On March 24, 2006, Google filed its answer and counterclaim. The counterclaim seeks a declaration that the first advertising practice complained about by CNG—that Google allows its advertising customers to select CNG's asserted trademark as a keyword that will trigger the display of their Sponsored Links—does not violate CNG's trademark rights. Google's counterclaim does not address CNG's suggestion that Google violates CNG's trademark rights by allowing Google's customers to use CNG's trademark in the text of their ads.[4] Instead it isolates those instances in which the only role that CNG's trademark plays is as a triggering criterion for third-party advertisements. When CNG's trademark serves as such a triggering criterion, but does not appear in the title or text of the third party advertisement, trademark laws are not implicated. As a result, Google moves for a judgment on the pleadings for its counterclaim.

---

[3] CNG denies that Google's policy regarding use in the text of Sponsored Links exists at all and also, in a seeming contradiction, alleges that Google does not enforces that policy. Reply ¶ 14. Google disagrees, but recognizes that this is not a dispute amenable to disposition on the pleadings.

[4] Google disputes these allegations and intends to defend against them. But because these defenses turn in part on disputed factual issues, Google's counterclaim and the present motion do not focus on these allegations.

### III.    ARGUMENT

Rule 12(c) of the Federal Rules of Civil Procedure permits any party to move for judgment on the pleadings after the pleadings are closed but within such time as not to delay trial. F.R.C.P. 12(c). In considering such a motion, a court must "construe the complaint in the light most favorable to plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim[s] that would entitle him to relief ." *Ziegler v. IBP Hog Market, Inc.,* 249 F.3d 509, 512 (6th Cir. 2001); s*ee also Mixon v. State of Ohio,* 193 F.3d 389, 400 (6th Cir. 1999). "A court need not, however, accept as true legal conclusions or unwarranted factual inferences." *Todd v. City of Zanesville Police Dept.*, 2006 WL 1027756, *1 (S.D. Ohio April 19, 2006).

This motion focuses on the requirement that use of a protected trademark or a misleading representation "is a *prerequisite* to the finding of a Lanham Act violation." *Holiday Inns, Inc. v. 800 Reservation, Inc.*, 86 F.3d 619, 626 (6th Cir. 1996) (emphasis in original). Simply put, not all uses of a trademark constitute "use" for Lanham Act purposes. In order to constitute "use" under the Lanham Act, a mark must be "used or displayed in the sale or advertising of services and the services are rendered in commerce . . ." 15 U.S.C. § 1127.

The principle behind the use requirement comes from the Lanham Act's definition of a trademark as a word a person uses "to identify and distinguish his or her goods … from those manufactured or sold by others and to indicate the source of the goods [.]" 15 U.S.C. § 1127.[5] The concept that trademark protection extends only to source identification has long been a pillar of trademark law. In 1924, Justice Holmes wrote that "[a] trademark only gives the right to prohibit the use of it so far as to protect the owner's good will against the sale of another's product as his." *Prestonettes, Inc. v. Coty,* 264 U.S. 359, 368 (1924). In other words, the law provides trademark holders with the ability to prevent others from using the mark to identify the

---

[5] The same section provides a similar definition for "Service Mark."

source of a product or service, but does not prohibit other uses of a trademark.

As a result, the use requirement means that "[t]here can be no liability under the Lanham Act absent the use of a trademark in a way that identifies the products and services being advertised by the defendant." *Wells Fargo & Co. v. WhenU.com, Inc.,* 293 F. Supp. 2d 734, 757 (E.D. Mich. 2003). As the Sixth Circuit has explained, if a defendants is using a plaintiff's trademark "in a 'non-trademark' way-that is, in a way that does not identify the source of a product-then trademark infringement and false designation of origin laws do not apply." *Interactive Prods. Corp. v. a2z Mobile Office Solutions, Inc.,* 326 F.3d 687, 695 (6th Cir. 2003).

In *Interactive Products*, the Sixth Circuit considered whether the defendant's visible use of the phrase "laptraveler" (a variant of the plaintiff's mark "Lap Traveler") in the "post-domain path" of a URL[6] violated the Lanham Act. 326 F.3d at 695-96. The court recognized that a domain name itself will often signify source. *Id.* (citing *PACCAR, Inc. v. TeleScan Techs. LLC*, 319 F.3d 243 (6th Cir. 2003) and *Brookfield Commc'ns., Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036 (9th Cir. 1999)). But the functional use of a mark as part of an address is different. "The post-domain path merely shows how the website's data is organized within the host computer's files." *Id.* at 696-97 (citing *Patmont Motor Werks, Inc. v. Gateway Marine, Inc.*, 1997 WL 811770, *4 n.6 (N.D. Cal. Dec. 18, 1997)). Relying on the lack of a source-signifying function for the post-domain path, the Sixth Circuit observed that "it is unlikely that the presence of another's trademark in a post-domain path of a URL would ever violate trademark law." *Id.* at 698. The court then affirmed the trial court's judgment of non-infringement, holding that "it was unnecessary for the district court to examine the eight factors traditionally used to determine likelihood of confusion between two source-signifying marks." *Id.*

---

[6] A URL typically begins with a "domain name," like www.google.com. Anything following the domain name can be referred to as the "post-domain path." So, for example, in the URL http://www.google.com/tm_complaint_adwords.html, "/tm_complaint_adwords.html" is in the post-domain path of the URL.

Shortly after the Sixth Circuit decided *Interactive Products*, the Eastern District of Michigan relied on its reasoning to hold that there was no trademark use in a case with facts very similar to those in the current case.[7] *Wells Fargo & Co. v. WhenU.com, Inc.*, 293 F.Supp.2d 734 (E.D. Mich. 2003). In *Wells Fargo*, the banking company Wells Fargo & Co. sued WhenU.com, Inc., whose business provides Internet contextual advertising. WhenU's SaveNow program relies upon URLs and URL fragments, search terms and keyword algorithms to provide pop-up advertisements that are related to the users' Internet browsing. *Id.* at 743. "Thus, if a consumer were to . . . conduct a search using a search engine by typing in the words 'Wells Fargo,' SaveNow would detect that activity and scan the proprietary directory for a match to a WhenU category such as 'finance.mortgage.'" *Id.* at 744. The system will then display a pop-up advertisement promoting a company within that category. *Id.* at 743. WhenU's advertisers include Bank of America, Citibank, J.P. Morgan, Chase and ING Bank. *Id.* at 738.

The *Wells Fargo* court rejected Wells Fargo's argument that WhenU's use of the Wells Fargo trademark "to trigger delivery of advertisements" constitutes trademark use under the Lanham Act. *Id.* at 758, 762. It began its analysis of whether WhenU used Wells Fargo's trademarks by noting that because the trademarks do not appear in the actual ads "this is not the 'usual trademark case' where 'the defendant is using a mark to identify its goods that is [sic] similar to the plaintiff's trademarks.'" *Id.* at 757-58 (quoting *Interactive Products*, 326 F.3d at 695). Instead, WhenU used Wells Fargo trademark only as a triggering criterion for displaying ads. The court concluded that "[t]his does not constitute the 'use' of any trademark belonging to plaintiffs, as that term is used in the Lanham Act, because WhenU does not use any of the plaintiffs' trademarks to indicate anything about the source of the products and services it

---

[7] Although *Wells Fargo* was decided by the Eastern District of Michigan and is not binding on the Court, it primarily relied on binding precedent from the Sixth Circuit. Other courts that have reviewed the decision have remarked that it is compelling precedent. For example, the Second Circuit recently complimented the decision as "thorough" and "persuasive and compelling." *1-800 Contacts, Inc. v. WhenU.com, Inc.*, 414 F.3d 400, 408 (2d Cir. 2005).

advertises." *Id.* at 762; *see also 1-800 Contacts, Inc. v. WhenU.com, Inc.,* 414 F.3d 400, 409 (2d Cir. 2005) ("Such conduct simply does not violate the Lanham Act, which is concerned with the use of trademarks in connection with the sale of goods or services in a manner likely to lead to consumer confusion as to the source of such goods or services.");*1-800 U-Haul Int'l, Inc. v. WhenU.com, Inc.*, 279 F.Supp.2d 723, 728 (E.D. Va. 2003) (this practice "does not constitute 'use' pursuant to the Lanham Act")).

Although Google's AdWords program was not before the *Wells Fargo* court, it had Google in its thoughts. In arriving at its conclusion that WhenU's reliance on trademarks as a triggering criterion for ads is not trademark use under the Lanham Act, the court noted that the "use of keyword terms in connection with the delivery of advertisements is a common practice on the Internet, and is a source of revenue for search engines such as Google, and other Internet companies." *Wells Fargo*, 293 F. Supp. 2d at 747. It also noted that "keying," *i.e.*, having keywords trigger advertisements, is analogous to WhenU's method of triggering ads. *Id.* at 763.

And in March, the Southern District of New York relied on *Wells Fargo* to rule that when an advertiser uses a trademark to trigger a sponsored link on a search engine, no trademark use takes place. *Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, 425 F.Supp.2d 402, 415 (S.D.N.Y. 2006) (for ads triggered by the keyword "Zocor," "the ZOCOR mark is 'used' only in the sense that a computer user's search of the keyword 'Zocor' will trigger the display of sponsored links to defendants' websites. This internal use of the mark 'Zocor' as a keyword to trigger the display of sponsored links is not use of the mark in a trademark sense.").[8] The *Merck* decision concerned advertisements placed through Google and Yahoo!. *Id.; see also Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, __ F.Supp.2d __, 2006 WL 1418616, *2-*3 (S.D.N.Y. May 24, 2006) (denying motion for reconsideration, and concluding that if anything keyword-triggered ads are "less intrusive than [the] pop-up ads" at issue in the WhenU cases).

---

[8] *But see Edina Realty, Inc. v. TheMLSonline.com*, 2006 WL 737064, *3 (D. Minn. March 20, 2006) (without analysis, coming to the opposite conclusion).

*Wells Fargo's* references to Google are not surprising since the facts between that case and the current case are so similar. Like WhenU.com, Google triggers advertisements with trademarks. Also, like WhenU.com, the ads at issue in this motion do not have the trademarks in the text or the title of the ads. As a result, the display of ads for services other than those offered by CNG when someone enters "Check 'N Go" as a keyword does not use "Check 'N Go" as a source identifier. It only suggests, like the organic search results displayed, that the ads are somehow relevant to the search for the "Check 'N Go" (and since the ads are for CNG competitors, who offer similar services, they are relevant). Because Google does not use CNG's trademark when it allows its advertisers to trigger their ads with the trademark, the Court should grant Google's motion for judgment on its counterclaim.

### IV.     CONCLUSION

By seeking to prevent Google from allowing competitors' ads to appear when users search for "Check 'N Go," CNG seeks nothing more than to suppress free and robust competition. Although CNG has framed the issue as one of trademark law, for the foregoing reasons, trademark law simply is not implicated by the mere use of a trademark to trigger appearance of a sponsored link. Google therefore respectfully requests that the Court grant Google's motion for judgment on its counterclaim.

Dated:  June  22, 2006
*Of Counsel:*

Michael H. Page (*pro hac vice*)
Klaus H. Hamm (*pro hac vice*)
Keker & Van Nest LLP
710 Sansome Street
San Francisco, CA 94107
(415) 391-5400

/s/ Kenneth F. Seibel _
Kenneth F. Seibel (0025168)
Jacobs, Kleinman, Seibel and McNally
1014 Vine Street, Suite 2300
Cincinatti, OH 45202
(513) 281-6600

Attorneys for Defendant and Counterclaim-Plaintiff Google Inc.

## CERTIFICATE OF SERVICE

     I hereby certify that on June 22, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:  Barry D. Hunter, Medrith Lee Norman, and Ann Gallagher Robinson, Attorneys for Plaintiff/Counterclaim-Defendant.

                                                              /s/ Kenneth F. Seibel
                                                              Kenneth F. Seibel (0025168)