UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| CNG FINANCIAL CORPORATION, | Case No. 1:06cv040 |
| Plaintiff/Counterclaim-Defendant, | Chief Judge Sandra S. Beckwith |
| v. | Magistrate Timothy S. Black |
| GOOGLE INC., | **DEFENDANT GOOGLE INC.'S REPLY IN SUPPORT OF ITS RULE 12(c) MOTION FOR JUDGMENT ON ITS COUNTERCLAIM** |
| Defendant/Counterclaim-Plaintiff. | |

For its Reply in support of its Rule 12(c) Motion For Judgment On Its Counterclaim, Google Inc. states as follows:

## I. INTRODUCTION

CNG Financial Corporation's ("CNG") Response is premised on the argument that the Court should ignore the requirement that a party must use a trademark to infringe it. The argument section of CNG's Response begins by denying the requirement's existence: "the argument that the Court must find a 'trademark use' begs the question: does Adwords employ CNG's trademarks in connection with the advertising of services in a manner likely to cause confusion?" Response 5. CNG misstates the law. Trademark use and likelihood of confusion are distinct inquiries, and trademark use is the threshold question. As the Sixth Circuit has stated, the "use of a protected mark or … use of a misleading representation is a *prerequisite* to the finding of a Lanham Act violation. Absent such a finding, the eight-factor test" for determining likelihood of confusion "is irrelevant." *Holiday Inns, Inc. v. 800 Reservation, Inc.*, 86 F.3d 619, 626 (6th Cir. 1996) (emphasis in original). Thus, the issue of trademark use does not "beg[] the question." Instead, for purposes of Google's motion, it is the question.

---

1
DEFENDANT GOOGLE INC.'S REPLY IN SUPPORT OF ITS RULE 12(C) MOTION FOR JUDGMENT ON ITS
COUNTERCLAIM
CASE NO. 1:06cv040

377763.01

Google has moved for a judgment on its counterclaim, which seeks declaratory relief that allowing advertisers to display ads adjacent to search results relevant to the query "Check 'N Go" does not violate trademark laws. The basis for Google's motion is that, as long as the ads do not contain the term "Check 'N Go," neither Google nor its advertisers use the term "Check 'N Go" as a trademark. Google acknowledges that "Check 'N Go" operates as a triggering criterion for the ads' display. But using a trademark as a triggering criterion is not the same as using a trademark as a trademark. To use a trademark as a trademark, a party must use it to identify the source of a product. The mere appearance of ads next to listings of web pages that are relevant to the term "Check 'N Go" does not signal that Check 'N Go is the source of the ads. Instead, it signals that the ads are relevant to the term "Check 'N Go"—and indeed they are: many of the ads promote services that compete with the services marketed by CNG under the "Check 'N Go" trademark.

CNG, on the other hand, argues that displaying an ad in this context is the equivalent to serving Pepsi-Cola to a restaurant patron who ordered Coca-Cola. But this analogy is inappropriate. When Google users enter a search query, they're not asking for a particular web page. Instead, they're asking for a listing of all web pages that are relevant to that query. Thus, when a Google user types in "Check 'N Go" as a search term, he has not requested, and does not expect, that Google will link him directly to the Check 'N Go website.[1] Instead that user has asked for a listing of web pages relevant to the term "Check 'N Go". By retrieving this listing for the user, along with relevant ads, Google does not suggest that the source of the ads is Check 'N Go. In fact, the opposite is true since every Sponsored Link displayed on Google includes the advertiser's website address as part of its text.

---

[1] Indeed, if he did, he would click the "I'm Feeling Lucky" button and not the "Google Search" button on Google's search page.

## II.    ARGUMENT

### A.    Trademark use is the threshold question in a trademark infringement case.

CNG cannot will out of existence the Lanham Act's requirement that for there to be trademark infringement there must be trademark use. The requirement exists and it is distinct from the likelihood of confusion requirement. The Sixth Circuit's opinion in *Holiday Inns* referred to trademark use as a "threshold showing" that must be made before "argu[ing] that a 'likelihood of confusion' exist[s]," and stated that "use of a protected mark" is a "*prerequisite* to the finding of a Lanham Act Violation." *Holiday Inns*, 86 F.3d at 625-26 (emphasis in original). Thus, if a plaintiff cannot show trademark use, the likelihood of confusion test that normally applies in trademark cases "is irrelevant." *Id.* at 626.

The Sixth Circuit reaffirmed this approach in *Interactive Products Corp. v. a2z Mobile Office Solutions, Inc.*, 326 F.3d 687 (6th Cir. 2003). In that case, the court called trademark use "a preliminary question" and held that when there is no trademark use it is "unnecessary for the district court to examine the eight factors traditionally used to determine likelihood of confusion[.]" *Id.* at 695, 698; s*ee also 1-800 Contacts, Inc. v. WhenU.com, Inc.*, 414 F.3d 400, 412 (2d Cir. 2005) (considering confusion before use "puts the cart before the horse. Not only are 'use,' 'in commerce,' and 'likelihood of confusion' three distinct elements of a trademark infringement claim, but 'use' must be decided as a threshold matter because, while any number of activities may be 'in commerce' or create a likelihood of confusion, no such activity is actionable under the Lanham Act absent the 'use' of a trademark."). Simply put, before considering confusion, a court must first consider whether a party accused of trademark infringement is using a trademark as a trademark for a product or service. If the answer is "yes," only then should the court determine whether that use is likely to cause confusion about the source of the product or service.

Even though the trademark use and likelihood of confusion requirements are separate, CNG peppers its Response with the arguments that Google's practices are confusing and that the Court should consider confusion as part of its trademark use analysis. For example:

- on page 1, CNG argues that allowing CNG's competitors to display ads next to search results relevant to the query "Check N Go" "is particularly confusing";

- on page 4, it devotes a paragraph to describing "[c]onfused consumers";

- on page 5, CNG argues that the question of trademark use "begs the question" of whether Google permits advertising "in a manner likely to cause confusion";

- on page 6, CNG argues it should prevail "precisely because consumers mistakenly believe that the sponsored links appearing on the results page triggered by their search of the trademark are affiliated with that trademark";

- on pages 9-12, CNG discusses case law that focuses on confusion rather than use, making arguments about "actionable confusion," "initial interest confusion," and "confusion as to source";

- on pages 12-14, CNG urges the Court to conduct a "dual analysis" of use and confusion, emphasizing the "difficulty in separating the two inquiries";

- on page 14, CNG argues that Google's motion should fail because CNG has alleged "source confusion";

- on page 19, CNG states that the appropriate way to deal with the issues raised in this case are "under the accepted tests of confusion and fair use" and that the touchstone of any analysis should be whether or not Google displays a "non-confusing result"; and

- on page 20, CNG's concluding sentence proclaims that because CNG "could conceivably prevail on its allegations that this practice results in consumer confusion, Google's motion must be denied."

CNG's constant reference to confusion is improper and ignores trademark law. As the Sixth Circuit held in *Holiday Inns*, confusion is "irrelevant" to the question of whether Google uses CNG's trademarks. 86 F.3d at 626.

In particular, CNG's lengthy discussion of cases regarding the so-called initial interest confusion doctrine is not relevant to the preliminary question of whether Google uses CNG's

trademark as a trademark. *See* Response 9-12 (discussing initial interest confusion cases including *PACCAR Inc. v. Telescan Technologies, L.L.C.*, 319 F.3d 243 (6th Cir. 2003); *Tdata Inc. v. Aircraft Technical Publishers*, 411 F.Supp.2d 901 (S.D. Ohio 2006); *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228 (10th Cir. 2006); and *Brookfield Communications, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036 (9th Cir. 1999)). The courts in these cases were not presented with the issue of whether trademarks were used as trademarks, and they did not decide this issue. Instead, they were faced with the question of whether the use of a mark caused initial interest confusion, *i.e.,* whether the use of a trademark creates "initial customer interest in a product, even if the customer realizes, prior to purchase, that the product was not actually manufactured by the trademark-holder." *Tdata*, 411 F.Supp.2d at 906. As the name of the doctrine suggests, initial interest confusion is a species of confusion and is thus incorporated into the standard likelihood of confusion analysis. *Id*. at 908. As a result, initial interest confusion is "irrelevant" unless a court first finds trademark use. *Interactive Prods. Corp.*, 86 F.3d at 625-26.

B.  **Trademark use requires the use of a trademark to identify source but neither Google nor its advertisers use "Check 'N Go" to identify the source of any product or service.**

Despite its pleas for the Court to ignore the trademark use requirement, CNG concedes that it is "a concept which the Sixth Circuit defines as the use of a trademark 'in a way that identifies the source of a product.'" Response 5-6 (quoting *Interactive Prods. Corp*, 326 F.3d at 695). Using a trademark to identify the source of a product is using a trademark as a trademark; using it in another manner is not. If a defendant is using a "trademark in a 'non-trademark' way—that is, in a way that does not identify the source a product—then trademark and false designation of origin laws do not apply." *Interactive Prods. Corp*., 326 F.3d at 695.

*Interactive Products* not only clearly describes the showing necessary to demonstrate trademark use, it also provides a clear illustration of this principle. In *Interactive Products*, the plaintiff and the defendant sold competing portable computer stands. *Id.* at 692-93. The plaintiff

marketed its portable computer stand under the trademark "Lap Traveler," while the defendant used "laptraveler" in the post-domain path of the uniform resource locator ("URL") of a webpage that advertised its competing portable computer stand.[2]  *Id.*  Despite this use, the court held that the defendant did not use "laptraveler" as a trademark because it did not use the term in a way that suggested that Lap Traveler was the source of the defendant's product.  *Id.* at 698.  It stated that the "post-domain path of a URL . . . does not typically signify source" and that "it is unlikely that the presence of another's trademark in a post-domain path of a URL would ever violate trademark law."  *Id.* at 696, 698.  Further, the court ruled that since there was no "evidence that the post-domain path . . . signifies source, it was unnecessary for the district court to examine the eight factors traditionally used to determine likelihood of confusion between two source-signifying marks."[3]

Google's Motion similarly presents a situation where a trademark is literally used, but is not used to signify source.  Google uses CNG's trademark "Check 'N Go" as a triggering criterion for the display of ads next to a listing of web pages that are relevant to the term "Check 'N Go."  Because this listing naturally contains many listings that are not sponsored by Check 'N Go, this use does not signify that Check 'N Go is the source of the ads.  It only suggests that, like the organic search results they border, they are relevant to that term.  And, indeed the ads are relevant to "Check 'N Go."  As CNG alleges, the ads are for "competitors of Check 'N Go

---

[2] The post-domain path of website is the part of the webpage address that follows the domain name.  In *Interactive Products*, the web page at issue had the URL "www.a2zsolutions.com/desks/floor/laptraveler/dkfl-lthtm," so the domain name was "www.a2zsolutions.com" and the post-domain path was "/desks/floor/laptraveler/dkfl-lthtm."

[3] Contrary to CNG's assertion that the decision "turned on a lack of evidence of confusion, rather than a legal finding of non-use," the court actually based its rulings on two, independent findings.  Response 14.  Immediately following the conclusion emphasized by CNG that there was no evidence of conclusion, the court noted the lack of evidence that the trademark was used to signify source and stated that as a result, "it was unnecessary for the district court . . . .to determine likelihood of confusion."  *Interactive Prods. Corp.*, 326 F.3d at 698.

Online." Complaint ¶ 27.

CNG creates a strawman when it accuses of Google of pursuing a "bright line rule" exempting internet advertisers from the Lanham Act whenever a trademark is used as an "organizational, non-source identifying function." Response 7. Rather, Google asks the Court merely to enforce the rule that if a trademark is used *only* in a way that does not identify the source of a product, then there is no trademark use. If a party employs a trademark to serve a dual purpose of providing a machine-linking function and of identifying the source of a product, then that party can infringe the trademark. For example, the use of a trademark in a domain name serves both as a physical address on the internet and also an indicator that the trademark identifies the source of the website. *Cf. Interactive Prods. Corp.*, 326 F.3d at 696.

CNG also argues that because it has alleged use, the Court must defeat Google's motion. Response 6. While a complaint's factual allegations are accepted as true on a motion for judgment on the pleadings, a "court need not, however, accept as true legal conclusions or unwarranted factual inferences." *Todd v. City of Zanesville Police Dept.*, 2006 WL 1027756, *1 (S.D. Ohio April 19, 2006). Thus, even if CNG plead somewhere in its Complaint that Google uses CNG's trademarks as a trademark, this is a legal conclusion that the Court should not accept at face value. Instead, the Court should consider CNG's factual allegations and determine whether they support the legal conclusion of trademark use. After all, comparing factual allegations to legal requirements is the very purpose of motions to dismiss and motions on the pleadings.

**C.   The Court should follow those cases that are consistent with Sixth Circuit precedent.**

Google acknowledges that courts have split on the issue of whether using trademarks as a trigger for the display of ads constitutes trademark use. But the better reasoned cases—and the cases that follow or are consistent with the controlling precedent in this circuit—hold that

triggering an ad with a trademark is not the same as using a trademark as a trademark.

Importantly, one of the cases that has considered this issue—*Wells Fargo & Co. v. When U.com, Inc.*, 293 F.Supp.2d 734 (E.D. Mich. 2003)—was based on Sixth Circuit precedent, and this case found that triggering an ad with a trademark is not trademark use. CNG attempts to downplay *Wells Fargo* by arguing that the opinion did not reconcile its holding with an opinion that issued nearly a year later[4] and by calling the 38-page opinion "unconsidered." Response 17. But *Wells Fargo* included a lengthy and careful analysis of trademark use, it weighed facts very similar to those at issue here, and it followed the controlling precedent of *Interactive Products* and *Holiday Inns*, as it was required to do.

CNG also attempts to minimize *Wells Fargo* by ignoring certain facts about WhenU.com's SaveNow internet advertising program that are strikingly similar to the facts at issue here. In SaveNow, "if a consumer were to enter into the address box in an open browser window or *conduct a search* using a search engine by typing in the words 'Wells Fargo,' SaveNow would detect that activity and scan the proprietary directory for a match to a WhenU category such as 'finance.mortgage.'" 293 F.Supp.2d at 744 (emphasis added). The program then will display a pop-up ad from that product category. *Id.* at 745-46. WhenU.com's advertisers included Wells Fargo competitors such as Bank of America, Citibank and JPMorgan Chase. *Id.* at 738. The court found that the display of these ads did not constitute trademark use because even though the trademark "Wells Fargo" served as a triggering criterion for competitive ads: "WhenU does not use any of the plaintiffs' trademarks to indicate anything about the source of the products and services it advertises." *Id.* at 762. In other words, *Wells Fargo* found that when a search engine user types in a trademark as a search query and a pop-up

---

[4] CNG states that the *Wells Fargo* court "made no attempt to reconcile its holding with the *GEICO* case[.]" Response 17. This statement overlooks the fact that *Wells Fargo* issued on November 19, 2003, while the "*GEICO* case," *i.e.*, *Government Employees Ins. Co. v. Google, Inc.,* 330 F.Supp.2d 700 (E.D. Va. 2004), did not issue until August 25, 2004.

ad for a company appears, no trademark use occurs because the mere appearance of the ad does not suggest that it is sponsored by the trademark holder.

Earlier this year, a federal court in New York relied, in two separate opinions, on cases involving WhenU.com's advertising program to find that when Google uses a search query to trigger the display of an ad next to relevant search results there is no trademark use. *Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, 425 F.Supp.2d 402 (S.D.N.Y. 2006); *Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, 431 F.Supp.2d 425 (S.D.N.Y. 2006). Because the two *Merck* opinions thoroughly considered the precise issue now before the Court and directly address several of CNG's arguments, they are worthy of detailed consideration.

The first *Merck* decision granted defendants' motion to dismiss trademark claims in connection with search engines because the plaintiff failed to allege trademark use. In that case, plaintiffs alleged that ads for a pharmacy appeared as Sponsored Links when a user conducts a search for the keyword "ZOCOR." *Merck & Co.*, 425 F.Supp.2d at 415. The court ruled that this triggering was not trademark use because "defendants do not 'place' the ZOCOR marks on any good or containers or displays or associated documents, nor do they use them in any way to indicate source or sponsorship. Rather the ZOCOR mark is 'used' only in the sense that a computer user's search of the keyword 'Zocor' will trigger the display of sponsored links to defendants' websites. This internal use of the mark 'Zocor' as a key word to trigger the display of sponsored links is not use of the mark in a trademark sense." *Id.* In making this ruling, the court compared AdWords to WhenU.com's advertising, which the Second Circuit held in *1-800 Contacts* does not constitute trademark use. *Id.* It then explicitly rejected three cases that CNG heavily relies upon in its response. *Id.* at 415 n. 9 (discussing *GEICO; Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*, 2005 WL 832398 (N.D. Cal. March 30, 2005) ("*American Blind*"); and *Playboy Enterprises, Inc. v. Netscape Communications Corp.*, 354 F.3d 1020 (9th Cir. 2004)).

The *Merck* court issued a second ruling on this same issue two months later when it denied Merck's motion for reconsideration. That motion argued that the court ignored another case relied upon by CNG—*Edina Realty v. TheMLSOnline.com*, 2006 WL 737064 (D.Minn. March 20, 2006)—and that the court overlooked differences between Google's keyword advertising and WhenU.com's pop-up advertising. *Merck & Co.*, 431 F.Supp.2d at 426. In rejecting Merck's first argument, the court wrote that "*Edina Realty* does not cause me to change my conclusions on this issue." *Id.* at 426. The court noted that the *Edina Realty* court itself in fact agreed that the first *Merck* decision "applies the controlling law of its circuit." *Id.* at 427 (*quoting Edina Realty, Inc. v. TheMLSOnline.com*, 2006 WL 1314303, at *1 (D.Minn. May 11, 2006)). It went on to explain once again that the use of the trademark Zocor as a keyword trigger does not constitute trademark use:

> Rather, the marks are used only in the sense that a computer user's search of the keyword "Zocor" will trigger the display of sponsored links to defendants' websites. This internal use of the keyword "Zocor" is not use of the mark in the trademark sense; rather, this use is more akin to the product placement marketing strategy employed in retail stores, where, for example, a drug store places its generic products alongside similar national brand products to capitalize on the latter's name recognition. The sponsored link marketing strategy is the electronic equivalent of product placement in a retail store.

*Id.* (internal citations omitted)

The court also tackled the argument—made by Merck and, in the current case, made by CNG—that WhenU.com's pop-up ads are distinguishable from Google's Sponsored Links. The court held that "[t]here is a difference, but not, in my view, a meaningful one for these purposes." *Id.* at 428. It held that for purposes of trademark use analysis, Google's AdWords program is indistinguishable:

> The search engine companies included the keyword "Zocor" in their internal directories of keywords. When a computer user typed in the keyword Zocor, she would be offered, by virtue of the internal search engine processes, sponsored links to defendants' websites, in addition to the actual websites generated by the search engine program using neutral and objective criteria. This internal use of

10
DEFENDANT GOOGLE INC.'S REPLY IN SUPPORT OF ITS RULE 12(C) MOTION FOR JUDGMENT ON ITS COUNTERCLAIM
CASE NO. 1:06cv040

377763.01

> the keyword 'Zocor' is not use of the ZOCOR mark to indicate source or sponsorship. It may be commercial use, in a general sense, but it is not trademark use. Indeed, if anything, keywording is less intrusive than pop-up ads as it involves no aggressive overlaying of an advertisement on top of a trademark owner's webpage.

*Id.* at 428.

The *Merck* court is correct that for purposes of trademark use analysis no meaningful difference exists between Sponsored Links and WhenU.com's pop-up advertising, and that neither qualifies as trademark use. In both situations, a user types in a trademark—either as a search term or as an internet address. And in both situations, the user is then presented with an advertisement that does not use the trademark in the text of the ad. It's also true that Google's Sponsored Links present a more clear-cut case of non-trademark use than WhenU.com's pop-up ads. Not only because Sponsored Links are less intrusive than pop-up ads, but also because Google user who type in a search term that is a trademark do not expect Google to automatically link the user to the trademark owner's webpage. Google simply does not work that way. When a user types a query into Google, Google's proprietary algorithms generate a listing of web pages (in some cases, hundreds of millions of them) that are contextually relevant to that query.[5] It pushes far beyond the bounds of reason to argue that a person would expect that all of these listing are sponsored by the trademark owner. Instead, the user is presented with a selection of relevant links and, then, if the user desires, he may click on a link that interests him.

The cases that CNG relies on regarding trademark-triggered advertising are not

---

[5] This also explains why CNG's analogy to the *Coca-Cola* cases fails. Response 2 n.1 (citing *The Coca-Cola Co. v. Overland, Inc.*, 692 F.2d 1250 (9th Cir. 1982); *The Coca-Cola Co. v. Dorris*, 311 F.Supp. 287 (E.D. Ark. 1970). Ordering a beverage is not like entering a search query into Google. When someone orders a beverage, he expects to be served the beverage that he ordered. But when someone searches for a term on Google, he is not automatically linked to the webpage that is most relevant to their query. Instead, Google provides the user with a listing of all web pages relevant to the query and, presented with these choices, the user can decide which page to navigate to.

11
DEFENDANT GOOGLE INC.'S REPLY IN SUPPORT OF ITS RULE 12(C) MOTION FOR JUDGMENT ON ITS COUNTERCLAIM
CASE NO. 1:06cv040

377763.01

persuasive and not consistent with this circuit's controlling precedent.  Notably, in *Edina Realty*, the court does not apply the trademark use standard applicable in the Sixth Circuit.  Instead, the "use in commerce" considered by court turned on whether the defendant uses the Edina Realty trademark "commercially."  *Edina Realty*, 2006 WL 737064, *3.  The court decided that the defendants use the trademark commercially because it "purchases search terms that include the Edina Realty mark to generate its sponsored link advertisement."  *Id.*  The opinion contained no analysis about whether the defendant uses the mark to identify the source of its products or services and thus is not relevant to the trademark use issue currently before this Court.

Another case relied upon by CNG, *GEICO*, is unpersuasive for two reasons.  First, although *GEICO* focused on Google's AdWords program, it actually considered different facts than those presented by Google's motion for judgment on the pleadings in this case.  A key to the court's finding of trademark use in *GEICO* was that Google's advertisers incorporated the GEICO trademarks into the text of their ads.  330 F.Supp.2d at 704.  In the current case, however, Google's counterclaim focuses only on those instances when the text of the ads does not contain CNG's trademarks, so this complicating element is not presently before the Court.

Furthermore, *GEICO* ruled as it did by illogically distinguishing the cases that held that WhenU.com's advertising program does not use trademarks as trademarks.  *GEICO* held that "a critical distinction" between AdWords and WhenU.com's advertising program was that with WhenU.com advertisers "bid on broad categories of terms that included the trademarks, but did not market the protected marks themselves as keywords to which advertisers could directly purchase rights."  *Id.*  This distinction makes no sense because trademark use does not focus on the reasons why an advertisement appears but instead considers whether a trademark identifies the source of a product.  Whether or not an advertiser triggered its ad because it bid on a broad group of terms that includes trademarks or because it bid on the trademark individually does not make a difference regarding the presentation to the computer user.  In both situations, the user's

12
DEFENDANT GOOGLE INC.'S REPLY IN SUPPORT OF ITS RULE 12(C) MOTION FOR JUDGMENT ON ITS COUNTERCLAIM
CASE NO. 1:06cv040

377763.01

entry of the trademark as a search query or as a domain name triggers an advertisement, and the user has no idea about the details of why the advertiser's ad appeared. In other words, for all intents and purposes, the presentation to the user is the same and, as a result, the law should treat the two programs similarly.

CNG's reliance on the Northern District of California's decision in *American Blind* is also misplaced. That opinion discussed trademark use, but did not decide the issue. Instead it expressly "emphasize[d] that it expresses no opinion as to whether Defendants ultimately will prevail in trying to prove that they are not liable to American Blind on these claims" and denied Google's motion to dismiss only for the purpose of developing "a fuller record." 2005 WL 832398, *7. Moreover, in its discussion of trademark use, *American Blind* incorrectly suggested that the precedent in its circuit, *Playboy Enterprises, Inc. v. Netscape Communications Corp.*, 354 F.3d 1020 (9th Cir. 2004), was relevant to the question of trademark use. *Playboy* focused only on a separate jurisdictional "use in commerce" requirement. In *Playboy*, the Ninth Circuit ruled that there is "[n]o dispute" that "defendants used the marks in commerce," explaining that "[f]ederal jurisdiction over trademark cases rests on the Commerce Clause, sweeps as broadly as possible, and clearly encompasses the circumstances of this case." 354 F.3d at 1024 n. 11. It then noted that the question of trademark use presented in the current case "does not enter into our jurisdictional analysis." *Id.*

Somewhat strangely, despite *American Blind's* recognition that *Playboy* did not consider trademark use, *American Blind* still suggested that trademark use entered into Playboy's analysis. The *American Blind* opinion stated that *Playboy* "concerned only the jurisdictional requirement of use '*in commerce*' and not the separate requirement of trademark 'use.'" 2005 WL 832398, *6 (emphasis in original). But nevertheless *American Blind* speculated that *Playboy* may have made an "implicit, preliminary determination" regarding the second use requirement. *Id.* This speculation makes not sense: when a Court explicitly states that a legal question did not enter

13
DEFENDANT GOOGLE INC.'S REPLY IN SUPPORT OF ITS RULE 12(C) MOTION FOR JUDGMENT ON ITS COUNTERCLAIM
CASE NO. 1:06cv040

377763.01

into its analysis, that Court intends to convey that it did not make a determination, implicit or otherwise, regarding that question. But in any case, neither *Playboy* nor *American Blind* decided the issue of trademark use.

## IV.    CONCLUSION

Google does not use Check 'N Go as a trademark because its display of ads next to search results relevant to the term "Check 'N Go" does not suggest that Check 'N Go is the source of these ads. Instead, as is the case for all listings on a Google search results page, this display suggests only that the ads are relevant to the term. Making this suggestion is not the same as using a trademark as a trademark and, as a result, the Court should grant Google's motion for judgment on its counterclaim.

Dated: July 31, 2006
*Of Counsel:*

Michael H. Page (*pro hac vice*)
Klaus H. Hamm (*pro hac vice*)
Keker & Van Nest LLP
710 Sansome Street
San Francisco, CA 94107
(415) 391-5400

/s/ Kenneth F. Seibel _
Kenneth F. Seibel (0025168)
Jacobs, Kleinman, Seibel and McNally
1014 Vine Street, Suite 2300
Cincinnati, OH 45202
(513) 381-6600

Attorneys for Defendant and Counterclaim-Plaintiff Google Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Barry D. Hunter, Medrith Lee Norman, and Ann Gallagher Robinson, Attorneys for Plaintiff/Counterclaim-Defendant.

/s/ Kenneth F. Seibel
Kenneth F. Seibel (0025168)

14
DEFENDANT GOOGLE INC.'S REPLY IN SUPPORT OF ITS RULE 12(C) MOTION FOR JUDGMENT ON ITS COUNTERCLAIM
CASE NO. 1:06cv040

377763.01