## Westlaw.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3000459 (D.N.J.)
**(Cite as: --- F.Supp.2d ----)**

Briefs and Other Related Documents
Buying For The Home, LLC v. Humble Abode,
LLCD.N.J.,2006.Only the Westlaw citation is
currently available.FOR PUBLICATION
     United States District Court,D. New Jersey.
    BUYING FOR THE HOME, LLC, Plaintiff,
               v.
   HUMBLE ABODE, LLC, et al., Defendants.
     **Civil Action No. 03-cv-2783 (JAP).**

Oct. 20, 2006.

**Background:** Online retailer of bedroom furniture
brought action against competitor alleging
infringement under Lanham Act, violation of New
Jersey's Fair Trade Act, common law trademark
infringement and unfair competition, and defamation
and trade disparagement under Lanham Act and state
law. Competitor counterclaimed alleging
infringement, unfair competition, and false
advertising. Competitor brought motion for summary
judgment on trademark holder's claims and its
counterclaims.

**Holdings:** The District Court, Joel A. Pisano, J., held
that:

(1) fact issue existed as to whether phrase TOTAL
BEDROOM was valid and protectable under
trademark law;

(2) fact issue existed as to whether competitor
purchased sponsored advertisement to be triggered by
search phrase "total bedroom";

(3) email from third party was hearsay;

(4) Lanham Act's "use" requirement was satisfied;

(5) competitor did not make defamatory statements of
fact;

(6) fact issue existed as to whether comparative
advertising was "fair use" of trademark;

(7) fact issue existed as to whether competitor made
false and misleading statements that were likely to
confuse and deceive potential customers; and

(8) alleged infringement of trademark did not support
award of attorney fees under Lanham Act.

Motion granted in part and denied in part.

**[1] Trademarks 382T 🗝0**

382T Trademarks
The elements of a claim of unfair competition under
the Lanham Act are the same as for claims of unfair
competition and trademark infringement under New
Jersey statutory and common law. Lanham Trade-
mark Act, § 43(a), 15 U.S.C.A. § 1125(a); N.J.S.A.
56:4-1.

**[2] Trademarks 382T 🗝0**

382T Trademarks
Under the Lanham Act, a trademark becomes
incontestable after the owner files affidavits stating
that the mark has been registered, it has been in
continuous use for five consecutive years, and there
is no pending proceeding and there has been no
adverse decision concerning the registrant's
ownership or right to registration. Lanham Trade-
Mark Act, § 1 et seq., 15 U.S.C.A. § 1051 et seq.

**[3] Federal Civil Procedure 170A 🗝0**

170A Federal Civil Procedure
Genuine issue of material fact existed as to whether
phrase TOTAL BEDROOM was valid and
protectable under trademark law, precluding
summary judgment on trademark holder's
infringement claim under Lanham Act. Lanham
Trade-mark Act, § 43(a), 15 U.S.C.A. § 1125(a);
Fed.Rules Civ.Proc.Rule 56, 28 U.S.C.A.

**[4] Trademarks 382T 🗝0**

382T Trademarks
Under the Lanham Act, where a mark has not been
federally registered, or, if registered, has not achieved
incontestability, validity depends on proof of
secondary meaning, unless the unregistered mark is
inherently distinctive. Lanham Trade-mark Act, §
43(a), 15 U.S.C.A. § 1125(a).

**[5] Trademarks 382T 🗝0**

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

382T Trademarks
Marks that are suggestive, arbitrary, or fanciful are considered inherently distinctive and are entitled to protection under the Lanham Act. Lanham Trade-mark Act, § 43(a), 15 U.S.C.A. § 1125(a).

**[6] Trademarks 382T 🗝0**

382T Trademarks
A mark that is not inherently distinctive is not entitled to protection under the Lanham Act unless it has attained a secondary meaning; a secondary meaning is said to exist when the mark is interpreted by the consuming public to be not only an identification of the product or services, but also a representation of the origin of those products or services. Lanham Trade-mark Act, § 43(a), 15 U.S.C.A. § 1125(a).

**[7] Trademarks 382T 🗝0**

382T Trademarks
Under the Lanham Act, a mark is considered to be descriptive if it describes the purpose, function or use of the product or service, a desirable characteristic of the product or service, or the nature of the product or service; this is a mark that conveys an immediate idea of the ingredients, qualities or characteristics of the goods or services. Lanham Trade-Mark Act, § 1 et seq., 15 U.S.C.A. § 1051 et seq.

**[8] Trademarks 382T 🗝0**

382T Trademarks
For the purpose of an infringement claim under the Lanham Act, a suggestive mark suggests rather than describes the characteristics of the goods; it requires consumer imagination, thought, or perception to determine what the product is. Lanham Trade-Mark Act, § 1 et seq., 15 U.S.C.A. § 1051 et seq.

**[9] Trademarks 382T 🗝0**

382T Trademarks
A court may take judicial notice of trademark registrations under the Lanham Act. Lanham Trade-Mark Act, § 1 et seq., 15 U.S.C.A. § 1051 et seq.

**[10] Trademarks 382T 🗝0**

382T Trademarks
Evidence was sufficient on summary judgment that would have enabled jury to find that online retailer of bedroom furniture was owner of TOTAL BEDROOM mark, in lawsuit alleging infringement under Lanham Act, where defendant competitor indicated in its statement of undisputed facts that totalbedroom.com website was "owned or operated" by retailer and exhibits submitted by competitor showed screen shots of website using TOTAL BEDROOM mark. Lanham Trade-mark Act, § 43(a), 15 U.S.C.A. § 1125(a); Fed.Rules Civ.Proc.Rule 56, 28 U.S.C.A.

**[11] Federal Civil Procedure 170A 🗝0**

170A Federal Civil Procedure
Genuine issue of material fact existed as to whether competitor purchased sponsored advertisement to be triggered by search phrase "total bedroom," precluding summary judgment on trademark holder's infringement claim under Lanham Act. Lanham Trade-mark Act, § 43(a), 15 U.S.C.A. § 1125(a); Fed.Rules Civ.Proc.Rule 56, 28 U.S.C.A.

**[12] Federal Civil Procedure 170A 🗝0**

170A Federal Civil Procedure
Email from "Frankie and the [particular Internet search engine] AdWords Team," which stated that competitor had not purchased term "total bedroom" from search engine as keyword, and that it was possible that competitor's advertisement appeared during search of phrase "total bedroom" because "bedroom" was keyword that had been purchased by competitor, was hearsay, and could not be considered on motion for summary judgment, in lawsuit brought by online retailer of bedroom furniture alleging infringement under Lanham Act. Lanham Trade-mark Act, § 43(a), 15 U.S.C.A. § 1125(a); Fed.Rules Civ.Proc.Rule 56, 28 U.S.C.A.

**[13] Trademarks 382T 🗝0**

382T Trademarks
Lanham Act's "use" requirement was satisfied on allegations that competitor purchased protected trademark of online retailer of bedroom furniture as keyword on Internet search engine and competitor used that keyword to trigger commercial advertising which included hypertext link to competitor's furniture retailing website; purchase of keyword was commercial transaction that occurred "in commerce," and traded on value of mark of online retailer, and competitor's use was both "in commerce" and "in connection with any goods or services." Lanham Trade-mark Act, § 43(a), 15 U.S.C.A. § 1125(a).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3000459 (D.N.J.)
**(Cite as: --- F.Supp.2d ----)**

**[14] Libel and Slander 237 🗝0**

237 Libel and Slander
To succeed on a claim of defamation under New Jersey law, a plaintiff must show: (1) that defendant made a defamatory statement of fact; (2) concerning the plaintiff; (3) which was false; (4) which was communicated to persons other than the plaintiff; and (5) fault.

**[15] Libel and Slander 237 🗝0**

237 Libel and Slander
Whether the meaning of a statement is susceptible of a defamatory meaning under New Jersey law is a question of law for the court.

**[16] Libel and Slander 237 🗝0**

237 Libel and Slander
Generally, a statement that is communicated to third parties is defamatory under New Jersey law if it is false and tends to lower the subject's reputation in the estimation of the community or to deter third persons from associating with him.

**[17] Libel and Slander 237 🗝0**

237 Libel and Slander
Whether a particular statement is defamatory under New Jersey law depends on its content, verifiability, and context.

**[18] Libel and Slander 237 🗝0**

237 Libel and Slander
An evaluation of "content," for the purpose of a defamation claim under New Jersey law, includes consideration of the statement's literal meaning as well as the fair and natural meaning that reasonable people of ordinary intelligence would give to it.

**[19] Libel and Slander 237 🗝0**

237 Libel and Slander
For the purpose of a defamation claim under New Jersey law, verifiability refers to whether a statement can be proven true or false, and statements that are not verifiable, such as insults and name-calling, even if offensive, are not defamatory; similarly, opinions are not actionable unless they imply false underlying facts.

**[20] Libel and Slander 237 🗝0**

237 Libel and Slander
Context is examined on a defamation claim under New Jersey law because it bears upon the fair and natural meaning of a statement.

**[21] Libel and Slander 237 🗝0**

237 Libel and Slander
Competitor did not make defamatory statements of fact, for purpose of retailer's defamation claim under New Jersey law, where actual statement or its context could not be discerned, and to extent that statement was discernable, it was not defamatory or did not refer to retailer.

**[22] Libel and Slander 237 🗝0**

237 Libel and Slander
Actual naming of the plaintiff is not a necessary element in a defamation action under New Jersey law so long as there is such reference to him that those who read or hear the libel reasonably understand the plaintiff to be the person intended.

**[23] Libel and Slander 237 🗝0**

237 Libel and Slander
The elements of trade libel under New Jersey law are: (1) publication; (2) with malice; (3) of false allegations concerning its property, product or business; and (4) special damages, i.e. pecuniary harm.

**[24] Trademarks 382T 🗝0**

382T Trademarks
Under the Lanham Act, a mark provides protection not only for the product or service to which it is originally applied but also to related items or services. Lanham Trade-Mark Act, § 1 et seq., 15 U.S.C.A. § 1051 et seq.

**[25] Trademarks 382T 🗝0**

382T Trademarks
Common law trademark rights can be acquired when a mark is actually used; such use occurs when the mark is displayed or otherwise made known to prospective purchasers in the ordinary course of business in a manner that associates the designation with the goods, services, or business of the user. Restatement (Third) of Unfair Competition, § 18.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3000459 (D.N.J.)
**(Cite as: --- F.Supp.2d ----)**

**[26] Federal Civil Procedure 170A** 🗝0

170A Federal Civil Procedure
Genuine issue of material fact existed as to whether comparative advertising was "fair use" of trademark, precluding summary judgment on infringement and unfair competition claims under Lanham Act. Lanham Trade-mark Act, § 33(a), 15 U.S.C.A. § 1115(a); Fed.Rules Civ.Proc.Rule 56, 28 U.S.C.A.

**[27] Trademarks 382T** 🗝0

382T Trademarks
Nominative fair use under the Lanham Act occurs when: (1) the alleged infringer uses the trademark holder's mark to describe the trademark holder's product, even if the goal of the accused infringer is to describe his own product; or (2) if the only practical way to refer to something is to use the trademarked term. Lanham Trade-mark Act, § 33(a), 15 U.S.C.A. § 1115(a).

**[28] Trademarks 382T** 🗝0

382T Trademarks
In a nominative fair use case under the Lanham Act, the plaintiff first must prove that confusion is likely due to the defendant's use of the mark; once the plaintiff has met its burden of showing a likelihood of confusion, the burden then shifts to defendant to show that its nominative use of plaintiff's mark is nonetheless fair. Lanham Trade-mark Act, § 33(a), 15 U.S.C.A. § 1115(a).

**[29] Trademarks 382T** 🗝0

382T Trademarks
All of the factors used to consider likelihood of confusion in a traditional trademark infringement case, except for degree of similarity and strength of the mark, may be used in the likelihood of confusion test in a nominative fair use case under the Lanham Act, but it will be up to the district court in each case to determine which factors are appropriate to use under the individual factual circumstances presented; in determining which factors to use, the court should be guided by its ultimate goal of assessing whether consumers are likely to be confused by the use not because of its nominative nature, but rather because of the manner in which the mark is being nominatively employed. Lanham Trade-mark Act, § 33(a), 15 U.S.C.A. § 1115(a).

**[30] Trademarks 382T** 🗝0

382T Trademarks
To prevail on a claim of false advertising under the Lanham Act, a party must prove: (1) the defendant has made false or misleading statements as to his own product or another person's; (2) there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) the deception is material in that it is likely to influence purchasing decisions; (4) the advertised goods traveled in interstate commerce; and (5) there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, et cetera. Lanham Trade-Mark Act, § 1 et seq., 15 U.S.C.A. § 1051 et seq.

**[31] Federal Civil Procedure 170A** 🗝0

170A Federal Civil Procedure
Genuine issue of material fact existed as to whether competitor made false and misleading statements that were likely to confuse and deceive potential customers, precluding summary judgment on trademark holder's false advertising claim under Lanham Act. Lanham Trade-Mark Act, § 1 et seq., 15 U.S.C.A. § 1051 et seq.; Fed.Rules Civ.Proc.Rule 56, 28 U.S.C.A.

**[32] Trademarks 382T** 🗝0

382T Trademarks
The Lanham Act does not contemplate a claim that the filing of a lawsuit constitutes unfair competition. Lanham Trade-mark Act, § 43(a), 15 U.S.C.A. § 1125(a).

**[33] Trademarks 382T** 🗝0

382T Trademarks
Alleged infringement of trademark did not support award of attorney fees under Lanham Act, on basis that case was exceptional, where various issues precluded summary judgment in favor of trademark holder, case presented novel issues of Internet advertising rather than flagrant violations of well-settled trademark law, and competitor had consulted counsel with regard to its use of trademarks at issue and included trademark disclaimers on its website. Trademark Act of 1946, § 35(a), 15 U.S.C.A. § 1117(a).

**[34] Trademarks 382T** 🗝0

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3000459 (D.N.J.)
(Cite as: --- F.Supp.2d ----)

**382T Trademarks**
On a claim for an award reasonable attorney fees under the Lanham Act, a district court must make a finding of culpable conduct on the part of the losing party, such as bad faith, fraud, malice, or knowing infringement, before a case qualifies as "exceptional." Trademark Act of 1946, § 35(a), 15 U.S.C.A. § 1117(a).

**Trademarks 382T ☞1800**

382T Trademarks
    382TXI    Trademarks    and    Trade    Names Adjudicated
        382Tk1800 k. Alphabetical Listing. Most Cited Cases

**Trademarks 382T ☞1800**

382T Trademarks
    382TXI    Trademarks    and    Trade    Names Adjudicated
        382Tk1800 k. Alphabetical Listing. Most Cited Cases
HUMBLE ABODE.

TOTAL BEDROOM.

Richard F. Collier, Jr., Collier & Basil, P.C., Princeton, NJ, for Plaintiff.
Ronald D. Coleman, Bragar, Wexler & Eagel, PC, New York, NY, for Defendants.

**OPINION**
JOEL A. PISANO, District Judge.
*1 Before the Court is Defendants' motion for summary judgment as to all counts in Plaintiff's complaint and as to Counts Two (Trademark Infringement), Three (Unfair Competition) and Four (False Advertising) of defendant Humble Abode, Inc.'s ("Humble") counterclaims and third party claims. Also before the Court is Plaintiff's request that the Court strike Humble's request for attorney fees with respect to Humble's Lanham Act claims. The Court decides these matters without oral argument pursuant to Fed.R.Civ.P. 78. For the reasons discussed below, Defendants' motion for summary judgment is granted in part and denied in part, and Plaintiff's motion to strike Humble's request for attorney fees is granted.

**I. Background**

*A. Plaintiff's Claims*

The parties in this case are competitors in the business of online furniture retailing. Plaintiff/Counterclaim defendant Buying for the Home, Inc.[FN1] ("Buying" or "Plaintiff") is a New Jersey corporation that operates through its website "totalbedroom.com." Defendant Humble is also an online furniture retailer and does business through its website "humbleabode.com." Defendants James Wickersham and Kris Kitterman are the founders and principals of Humble.

Plaintiff brings this action alleging violations of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and New Jersey's Fair Trade Act, N.J.S.A. 56:4-1, as well as common law trademark infringement, common law unfair competition, defamation and trade disparagement. Specifically, Plaintiff asserts that (1) by causing a sponsored ad to appear next to the results on the Google search engine when a computer user enters the search phrase "total bedroom," defendant Humble misappropriated Plaintiff's mark "TOTAL BEDROOM" in connection with the sale of goods and violated Section 43(a) of the Lanham Act in that such use was likely to communicate a false designation of origin of those goods; and (2) Defendants have "made false statements to [Buying's] vendors, suppliers and other third parties with whom [Buying] does business regarding [Buying's] allegedly improper business practices, including ... [Buying's] failure to comply with copyright laws and the Internet policies of third parties." Compl. at ¶ 12. Defendants have moved for summary judgment and seek dismissal of all of these claims. Plaintiff has not cross-moved for summary judgment.

*B. Humble's Counterclaims and Third Party Claims*

Humble has also moved for summary judgment on its counterclaims and third party claims, which allege trademark infringement, unfair competition and false advertising in violation of the Lanham Act and state law against Buying and third party defendant Steve Ross. Humble alleges that Buying undertook aggressive "attacks" against Humble through its various furniture-related websites, including *totalbedroom.com,* and that in doing so, the third party defendants improperly used the mark HUMBLE ABODE as well as the Humble's unique product names, in which Humble claims it has

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3000459 (D.N.J.)
(Cite as: --- F.Supp.2d ----)

Page 6

trademark rights. Although not entirely clear from Humble's papers, it appears that Humble's trademark infringement, unfair competition and false advertising claims under both federal and state law are based upon the following allegations: (1) *totalbedroom.com* offered a "Price Comparison" page that used the mark HUMBLE ABODE as well as Humble's product names and allowed online customers to compare Total Bedroom's prices with Humble Abode's prices; (2) *totalbedroom.com* users could search the *totalbedroom.com* website using Humble Abode product names; (3) *directlyhome.com* uses Humble Abode product names to reference products on their website; (4) *buyingfurniture.com,* a website on which consumers purportedly can share information about "hot deals" on furniture, uses HUMBLE ABODE as well has Humble's product names on its site; (5) *totalbedroom.com* has caused its sponsored advertisement to appear when users of the search engine Google conducted a search for the terms HUMBLE ABODE FURNITURE as well as Humble's product names; (6) when a user of the Yahoo! search engine conducts a search for HUMBLE ABODE SAVINGS or HUMBLE ABODE DISCOUNT, links to *totalbedroom.com, buyingfurniture.com* and *buying-furniture.biz* (a website that, according to Humble, is identical to *buyingfurniture.com)* appear in the top six results returned as a result of the websites' use of the term "humble abode" in their text.

*2 In its request for relief on its claims, Humble seeks, among other things, an award of attorney fees. On an earlier motion by Plaintiff, the Court struck all of Humble's attorney fees requests with the exception of those that relate to its Lanham Act claims. As to those claims, the Court denied Plaintiff's motion without prejudice. Plaintiff now renews his motion and asks the Court to strike the remaining attorney fee request.

## II. Legal Discussion

### A. Summary Judgment Standard

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The substantive law identifies which facts are critical

or "material." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A material fact raises a "genuine" issue "if the evidence is such that a reasonable jury could return a verdict" for the non-moving party. *Id.*

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party makes this showing, the burden shifts to the non-moving party to present evidence that a genuine fact issue compels a trial. *Id.* at 324. In so presenting, the non-moving party may not simply rest on its pleadings, but must offer admissible evidence that establishes a genuine issue of material fact, *id.,* not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party. *Bailey v. United Airlines,* 279 F.3d 194, 198 (3d Cir.2002). The Court shall not "weigh the evidence and determine the truth of the matter," but need determine only whether a genuine issue necessitates a trial. *Anderson,* 477 U.S. at 249. If the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine issue of material fact exists, then the Court must grant summary judgment. *Country Floors, Inc. v. Gepner,* 930 F.2d 1056, 1061-62 (3d Cir.1991).

### B. Defendants' Motion for Summary Judgment on Plaintiff's Claims

### 1. Trademark Claims

[1] Plaintiff has alleged that Defendants' use of the mark TOTAL BEDROOM violated (1) Section 43(a) of the Lanham Act, which prohibits unfair competition through "[f]alse designations of origin," *see* 15 U.S.C. 1125(a); [FN2] and (2) New Jersey statutory and common law prohibiting trademark infringement and unfair competition. Because the elements of a claim of unfair competition under the Lanham Act are the same as for claims of unfair competition and trademark infringement under New Jersey statutory and common law, the Court's analysis below extends to Plaintiff's state law claims as well. *See J & J Snack Foods, Corp. v. Earthgrains Co.,* 220 F.Supp.2d 358, 374 (D.N.J.2002) ("[T]he

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3000459 (D.N.J.)
(Cite as: --- F.Supp.2d ----)

elements for a claim for trademark infringement under the Lanham Act are the same as the elements for a claim of unfair competition under the Lanham Act and for claims of trademark infringement and unfair competition under New Jersey statutory and common law...."); _Harlem Wizards Entertainment Basketball, Inc. v. NBA Properties, Inc._, 952 F.Supp. 1084, 1091 (D.N.J.1997) ("N.J.S.A. 56:4-1 is the statutory equivalent of Section 43(a)(1) of the Lanham Act").

*3 To prove unfair competition under the Lanham Act, a plaintiff must show that: (1) the mark at issue is valid and legally protectable; (2) the mark is owned by the plaintiff; (3) the defendant used the mark in commerce on or in connection with any goods or services or container for goods; and (4) this "use" was in a manner likely to create confusion concerning the origin of the goods or services. 15 U.S.C. § 1125(a); _800-JR Cigar, Inc. v. GoTo.com, Inc._, 437 F.Supp.2d 273, 281-82 (D.N.J.2006) (citing _Fisons Horticulture, Inc. v. Vigoro Industries, Inc._, 30 F.3d 466, 472 (3d Cir.1994)). Defendants argue that Plaintiff's trademark claims must be dismissed because (1) TOTAL BEDROOM is not an protectable trademark; and (2) there is no factual support for Plaintiff's claim of "infringement by search engine."

### a. Validity and Protectability of Trademark

[2][3][4] The threshold issue is whether the phrase TOTAL BEDROOM is valid and protectable under trademark law. Where, as here, a mark has not been federally registered (or, if registered, has not achieved incontestability [FN3]) "validity depends on proof of secondary meaning, unless the unregistered mark is inherently distinctive." _Fisons Horticulture, 30 F.3d at 472._

[5][6] In evaluating the distinctiveness of a mark, the following categories (in ascending order of distinctiveness) are used: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful. _Two Pesos, Inc. v. Taco Cabana, Inc._, 505 U.S. 763, 768, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). Marks that are suggestive, arbitrary, or fanciful are considered inherently distinctive and are entitled to protection. _Jews for Jesus v. Brodsky_, 993 F.Supp. 282, 296 (D.N.J.1998). A mark that is not inherently distinctive is not entitled to protection unless it has attained a secondary meaning. _Id._ A secondary meaning is said to exist when the mark "is interpreted by the consuming public to be not only an

identification of the product or services, but also a representation of the origin of those products or services." _Commerce Nat'l Ins. Serv., Inc. v. Commerce Ins. Agency, Inc._, 214 F.3d 432, 438 (2000) (quoting _Scott Paper Co. v. Scott's Liquid Gold, Inc._, 589 F.2d 1225, 1228 (3d Cir.1978)).

[7] Defendants argue that TOTAL BEDROOM is not a valid and protectable mark because it is merely descriptive and has not acquired a secondary meaning. A mark is considered to be descriptive if it "describe[s] the purpose, function or use of the product [or service], a desirable characteristic of the product [or service], or the nature of the product [or service]." _J & J Snack_, 220 F.Supp.2d at 370. This is a mark that "conveys an immediate idea of the ingredients, qualities or characteristics of the goods [or services]." _Jews for Jesus_, 993 F.Supp. at 297 (alteration in original). In support of their argument that TOTAL BEDROOM is descriptive, Defendants point to the case of _Leejay v. Bed, Bath & Beyond, Inc._, 942 F.Supp. 699 (D.Mass.1996), in which the court found on an application for injunctive relief that the phrase BED & BATH was descriptive for a store that sells items for the bedroom and bathroom.

*4 [8][9] Plaintiff counters that (1) TOTAL BEDROOM is not descriptive as applied to furniture products and Defendants have not cited to one example where the term is used to describe furniture; (2) TOTAL BEDROOM was once registered by a third party [FN4] so it cannot be a descriptive mark; (3) TOTAL BEDROOM is an inherently distinctive suggestive [FN5] mark and, consequently, proof of a secondary meaning is not necessary; [FN6] and (4) in any event, Defendants are not entitled to summary judgment because the characterization of a mark is a factual issue for the jury. In support of its argument that TOTAL BEDROOM is inherently distinctive, Plaintiff has pointed to the fact that the Trademark & Patent Office has registered other marks that include the word "total"-TOTAL WELLNESS, TOTAL HOME SERVICES, TOTAL FITNESS YVES SAINT LAURENT, TOTAL EFFECTS BEAUTIFUL SKIN & WELLNESS, as well as to the prior registration of TOTAL BEDROOM.[FN7] Although not cited to expressly by Plaintiff, it appears that Plaintiff is arguing that because a mark that is merely descriptive will be refused registration under § 2(e)(1) of the Lanham Act, TOTAL BEDROOM cannot be descriptive.

The Third Circuit has expressly stated that "the characterization of a mark is a factual issue for the jury." _Ford Motor Co. v. Summit Motor Prods._, 930

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3000459 (D.N.J.)
**(Cite as: --- F.Supp.2d ----)**

F.2d 277, 292 n. 18 (3d Cir.1991). Because the characterization TOTAL BEDROOM is a fact that is material to this case, the Court's role on this motion is to determine whether a genuine issue exists as to this fact. Said another way, the Court must determine "if the evidence is such that a reasonable jury could return a verdict" for the non-moving party on this particular issue. _Anderson, 477 U.S. at 248._ The court may not "engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.' " _Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir.2004)_ (quoting _Anderson, 477 U.S. at 255)._

As stated above, on a motion for summary judgment the moving party bears the initial burden of showing that no genuine issues of material fact exist. _Celotex Corp., 477 U.S. at 323._ "[W]ith respect to an issue on which the nonmoving party bears the burden of proof ... the burden on the moving party may be discharged by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." _Celotex Corp., 477 U.S. at 325._ In Defendants' brief, after discussion of the applicable trademark law, the entirety of Defendants argument with respect to the distinctiveness issue is set forth in the following two sentences:
For example, BED & BATH was found to be descriptive for a store that sells items for the bedroom and bathroom in _Leejay v. Bed, Bath & Beyond, Inc., 942 F.Supp. 699 (D.Mass.1996)._ TOTAL BEDROOM describes what plaintiff sells, just as BED & BATH describes [what] the store using that mark sells.

**\*5** Pl. Brief at 13.

In those two sentences Defendants have not met their burden of showing an absence of a genuine issue as to the validity or protectability of Plaintiff's mark. Unlike in the present case, the Defendant in _Leejay,_ the case relied upon by Defendants, submitted "a number of examples of retail stores' advertisements where the phrase 'bed and bath' or 'bed & bath' [had been] used to refer to bedroom and bathroom items." _942 F.Supp. at 701._ Defendants here have pointed to no evidence whatsoever in support of their statement that "total bedroom" describes what Plaintiff sells, and, as Plaintiff points out, certainly nothing showing that "total bedroom" has been used or is generally understood to refer to furniture.

Although it is true that a factual issue may be resolved by a court on summary judgment where

there is no more than a mere "scintilla of evidence" supporting a non-moving party's claim, _see Country Floors, Inc. v. Gepner, 930 F.2d 1056, 1061-62 (3d Cir.1991),_ the Court finds that the dearth of evidence supporting Defendant's argument on this motion combined with the limited evidence presented by Plaintiff makes it inappropriate resolve the issue of the characterization of Plaintiff's mark on summary judgment. The Court finds that there exists a genuine issue of material fact as to the validity and protectability of Plaintiff's mark.

### b. Ownership of the Mark

[10] There appears to be little dispute regarding Plaintiff's ownership of the mark, although a single sentence in Defendants' brief baldly states that "[t]here is little support for plaintiff's assertion that it owns a trademark." Pl. Brf. at 15. In its statement of undisputed material facts, however, Defendants state that the website _totalbedroom.com_ is "owned or operated" by Plaintiff. Exhibits submitted by Defendants show screen shots of this website using the mark TOTAL BEDROOM. Consequently, there is sufficient evidence pursuant to which a jury may find that plaintiff is the owner of the mark. _See_ McCarthy on Trademarks § 16:35 (4th ed.) ("Trademark ownership inures to the legal entity who is in fact using the mark as a symbol of origin.").

### c. Use of the Mark

[11] Plaintiff claims that Defendants misappropriated the mark TOTAL BEDROOM by causing an advertisement and a link for Humble's website to appear on the Google search engine when the search phrase "total bedroom" was entered by a user. Defendant argues that this claim should be dismissed because "there is simply no proof that defendants ever actually purchased plaintiff's ... business name as a search term." Pl. Brf. at 15. However, considering the applicable standard on summary judgment, the Court finds that a genuine issue of fact exists in this regard.

According to the deposition testimony of third-party defendant Steve Ross and as shown in certain web page screens shots submitted by Defendant, the sponsored advertisement for Humble Abode did not appear when Ross performed Google searches using the term "total" or the term "bedroom," but the advertisement did appear when he used the phrase "total bedroom" as a search term. Thus, taking into

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
Page 9
--- F.Supp.2d ----, 2006 WL 3000459 (D.N.J.)
**(Cite as: --- F.Supp.2d ----)**

account the fact that the Court must consider all facts and logical inferences in favor of the non-moving party, a fair inference may be drawn that Humble purchased the sponsored advertisement to be triggered by the search phrase "total bedroom."

**\*6** [12] Defendants point to an email from "Frankie and the Google AdWords Team" that states that Defendants have never purchased from Google the term "total bedroom" as a keyword and it was possible that Humble's ad appeared during a search of the phrase "total bedroom" because "bedroom" was a keyword that had been purchased by Humble. However, Plaintiff correctly points out this email is hearsay, and generally may not be considered on a motion for summary judgement. See _Philbin v. Trans. Union Corp.,_ 101 F.3d 957, 961 n. 1 (3d Cir.1996) (noting that a hearsay statement that is not capable of being admissible at trial should not be considered on a summary judgment motion); _Blackburn v. United Parcel Serv.,_ 179 F.3d 81, 95 (3d Cir.1999) (same). Nevertheless, even if the Court were to consider the contents of the email, the Court finds that the letter only creates a genuine issue of material fact and does not itself entitle Defendant to summary judgment.

[13] This does not entirely resolve the issue of Plaintiff's "search engine" claims, however, because as both the Plaintiff and Defendant candidly point out, the law is unsettled regarding whether the purchase of another's protected mark as a search engine keyword can constitute unfair competition or infringement. The Court, therefore, must examine the validity of Plaintiff's legal theory of "infringement by search engine" and whether the facts alleged, if proven, state a claim against Defendants.[FN8]

Plaintiff alleges Defendants purchased advertising linked to the search term TOTAL BEDROOM from the search engine company Google. Google, as well as other search engines, "sell[s] advertising linked to search terms, so that when a consumer enters a particular search term, the results page displays not only a list of Websites generated by the search engine program using neutral and objective criteria, but also links to Websites of paid advertisers (listed as 'Sponsored Links')." _Gov't Employees Ins. Co. v. Google, Inc.,_ 330 F.Supp.2d 700, 702 (E.D.Va.2004). The advertisement and link to Humble Abode's website appeared on the far right of the screen, separate and apart from the search results list, under the heading "Sponsored Links." Humble's advertisement does not display the mark TOTAL BEDROOM.

To be actionable under § 43(a) of the Lanham Act, a defendant's "use" of a plaintiff's mark must be "in commerce" and "on or in connection with any goods or services, or any container for goods." [FN9] 15 U.S.C. 1125(a). In this regard, courts presented with claims similar to those in the present case involving the purchase or sale of trademarks as search engine keywords generally have examined whether the defendant's alleged "use" of the mark constituted a "trademark use" generally, _i.e.,_ commercial use of the mark as a trademark, _e.g., 800-JR Cigar, Inc., v. Goto.com, Inc.,_ Civil Action No. 00-3179, 2006 WL 1971659, \*6-8 (D.N.J. July 13, 2006), or have examined "use" by looking more specifically at the definition of "use in commerce" under the Lanham Act,[FN10] _e.g., Merck & Co. v. MSD Technology, L.P.,_ 425 F.Supp.2d 402, 415-16 (S.D.N.Y.2006). The Third Circuit has not spoken on the issue of whether the purchase and/or sale of keywords that trigger advertising constitutes the type of "use" contemplated by the Lanham Act, and decisions from other courts that have addressed the issue are conflicting. In a recent decision in the Southern District of New York, _Merck & Co. v. MSD Technology,_ plaintiff drug company brought an action against various Canadian entities that operated online pharmacies alleging, _inter alia,_ unfair competition and trademark infringement under federal and state law. The Canadian entities had purchased from the Internet search engine companies Google and Yahoo! the right to have links to their website displayed as "Sponsored Links" when a computed user conducted a search using plaintiff's mark ZOCOR. The court, in granting defendant's motion to dismiss, found that

**\*7** in the search engine context, defendants to do not 'place' the ZOCOR marks on any goods or containers or displays or associated documents, nor do they use them in any way to indicate source or sponsorship. Rather, the ZOCOR mark is "used" only in the sense that the computer user's search of the keyword "Zocor" will trigger the display of the sponsored links to defendants' websites. This internal use of the mark "Zocor" as a key word to trigger the display of sponsored links is not use of the mark in a trademark sense.

_Merck & Co.,_ 425 F.Supp.2d at 415.

Another district court addressing similar claims on similar facts found differently. In _Edina Realty, Inc. v. The MLSonline.com,_ Civ. 04-4371JRTFLN, 2006 WL 737064 (D.Minn. March 20, 2006), the defendant, a direct competitor of plaintiff, had purchased from Google and Yahoo! search terms that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3000459 (D.N.J.)
**(Cite as: --- F.Supp.2d ----)**

were identical or similar to plaintiff's EDINA REALTY trademark. In denying the defendant's motion for summary judgment, the Court found defendants use of the mark constituted a "use in commerce" under the Lanham Act, holding:

While not a conventional "use in commerce," defendant nevertheless uses the Edina Realty mark commercially. Defendant purchases search terms that include the Edina Realty mark to generate its sponsored link advertisement. See *Brookfield Communs ., Inc. v. W. Coast Entm't Corp.,* 174 F.3d 1036, 1064 (9th Cir.1999) (finding Internet metatags to be a use in commerce). Based on the plain meaning of the Lanham Act, the purchase of search terms is a use in commerce.

*Edina Realty,* 2006 WL 737064 at *3.

Similar actions brought against defendants who engage in the sale of the search terms, as opposed to the purchasers of those terms, have likewise reached differing conclusions concerning "use." *Compare Rescuecom Corp. v. Google, Inc.,* No. 5:04-cv-1055, 2006 WL 2811711 (Sept. 28, 2006) (granting Google's motion to dismiss finding that "in the absence of allegations that defendant placed plaintiff's trademark on any goods, displays, containers, or advertisements, or used plaintiff's trademark in any way that indicates source or origin, plaintiff can prove no facts in support of its claim which would demonstrate trademark use") with *800-JR Cigar, Inc., v. Goto.com, Inc.,* Civil Action No. 00-3179, 2006 WL 1971659, *8 (D.N.J. July 13, 2006) (denying summary judgment and finding sufficient evidence to support claim that defendant made "trademark use" of plaintiff's mark where defendant (1) accepted bids on the plaintiff's trademark from the plaintiff's competitors, thereby trading on the value of the marks; (2) ranked paid advertisers before "natural" listings among the search results, thereby acting as a conduit to steer competitors away from plaintiff; and (3) suggested search terms including the plaintiff's trademarks to the plaintiff's competitors); *Google v. American Blind & Wallpaper Factory, Inc.,* No. 03-05340, 2005 WL 832398 (N.D.Cal. Mar.30, 2005) (denying motion to dismiss in light of the unsettled state of the law with respect to actionable "use" of a trademark in the search engine context); *GEICO v. Google, Inc.,* 330 F.Supp.2d 700 (E.D.Va.2004) (denying motion to dismiss finding allegations that defendant allowed advertisers to bid on trademarks as search terms and to pay for advertising linked to trademarks were sufficient to establish trademark use).

**\*8** The Court is mindful of the challenges that sometime arise in applying existing legal principles in the context of newer technologies. As expressed by the *Edina Realty* court, *supra,* Defendants' alleged use of Plaintiff's mark is certainly not a traditional "use in commerce." 2006 WL 737064 at *3. Nonetheless, the Court finds Plaintiff has satisfied the "use" requirement of the Lanham Act in that Defendants' alleged use was "in commerce" and was "in connection with any goods or services." 15 U.S.C. 1125(a)(1). First, the alleged purchase of the keyword was a commercial transaction that occurred "in commerce," trading on the value of Plaintiff's mark. Second, Defendants' alleged use was both "in commerce" and "in connection with any goods or services" in that Plaintiff's mark was allegedly used to trigger commercial advertising which included a link to Defendants' furniture retailing website. Therefore, not only was the alleged use of Plaintiff's mark tied to the promotion of Defendants' goods and retail services, but the mark was used to provide a computer user with direct access (*i.e.,* a link) to Defendants' website through which the user could make furniture purchases. The Court finds that these allegations clearly satisfy the Lanham Act's "use" requirement.

The Court stresses that this finding does not in any way bear upon whether Defendants' alleged use of Plaintiff's mark was unlawful. That can only be determined upon an examination of all of the elements of Plaintiff's claims, including whether the use of the mark was likely to confuse or deceive consumers about the affiliation of Defendants' goods and service with Plaintiff. *See Gov't Emples. Ins. Co. v. Google, Inc.,* 330 F.Supp.2d 700, 704 (E.D.Va.2004) ("Where keyword placement of ... advertising is being sold, the portals and search engines are taking advantage of the drawing power and goodwill of these famous marks. The question is whether this activity is fair competition or whether it is a form of unfair free riding on the fame of well-known marks.") (alteration in original) (quoting J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 25:70.1 (2004)). As Defendants have not challenged the "likelihood of confusion" element of Plaintiff's claims on this motion, neither party has presented arguments or evidence on the issue. For this reason as well as others discussed above, the Court must deny Defendants' motion as it relates to Plaintiff's unfair competition and infringement claims.

*2. Defamation and Trade Disparagement Claims*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3000459 (D.N.J.)

**(Cite as: --- F.Supp.2d ----)**

Defendant also seeks summary judgment as to Plaintiff's defamation and trade disparagement claims, arguing that Plaintiff cannot establish all of the necessary elements of its claims. Plaintiff alleges with respect to its defamation claim that "Defendants, including Wickersham and Kitterman, have made multiple misrepresentations and false statements to various third parties about Buying's business practices." Compl. at 45. With respect to its trade disparagement claim, Plaintiff alleges that these same Defendants "have made multiple, disparaging misrepresentations regarding Buying's business operations to Buy[ing]'s suppliers and vendors with whom it deals in the furniture business." *Id.* at ¶ 51. Specifically, Plaintiff points to the following communications as testified to by Wickersham as his deposition:

**\*9** i) Wickersham sent an email to Google that stated as follows:

Hi. I'm with Humble Abode, LLC. We spend a significant amount on advertising with Google. Recently, a competitor of ours started bidding on our company name through AdWords in order to steal customers. What is Google's advertising policy regarding competition and allowing bidding on trademarked company names as phrases? Thank you. (Certification of Richard Collier at 19a)

ii) Wickersham communicated with Yahoo by email, fax or phone (he did not remember which) asking "what their policy is with regard to trademark infringement." Collier Cert. at 25a. Specifically, he asked about "where competitors might be able to use trademarks to be able to be found or for search purposes or ranking purposes." *Id.* at 26a. Wickersham mentioned the Total Bedroom website in the communication in that he "encouraged [Yahoo] to take a look at it." *Id.* at 27a. He also "let them know that [he] believe[d] we have a situation here, where one of [Yahoo's] advertisers, Steve Ross, is infringing on [Humble's] trademarks." *Id.* at 28a.

iii) Wickersham made a phone call to an unnamed person at a company called Couristan, for whom Bella Ross and Dan Ross (alleged to be third party defendant Steve Ross' mother and brother, respectively) were Humble's account representatives. Wickersham spoke to "Bella's boss" and advised him that "we have a conflict of interest here, and would like new account reps." *Id.* at 29a.

iv) When asked whether he "complain[ed] to anyone

at Legett & Platt about Total Bedroom, Directly Home, essentially, the plaintiff in this case," Wickersham answered in the affirmative. *Id.* at 30a.

v) Wickersham spoke to Humble's new account representative at Leggett & Platt about "who Bella Ross is. If she is an employee of Leggett & Platt or if she's a contractor or, you know, how ... this triangle could happen ... without me knowing that my own supplier's son is competing against me." *Id.* at 34a.

iv) In a conversation with an unnamed person from a company called Elegant Abode, Wickersham "mention[ed] that we have a conflict of interest with [Total Bedroom's] website.

vii) When asked whether he ever spoke to anyone at "San Francisco Market" about Buying for the Home, Wickersham testified that "the name may have come up where we felt we had a conflict of interest here, and the we had asked Leggett & Platt multiple times to get us a new account rep. And we were not at all happy with Bella Ross and Dan Ross seeing our proprietary information with their son and brother being Steve Ross." *Id.* at 66a. He further stated that he "just expressed [his] frustration that [Humble's] account rep's son is competing and appears to be targeting our business."

The above deposition testimony is the only evidence presented by Plaintiff in response to Defendants' motion. As an initial matter, this evidence shows that Wickersham is the only defendant to whom any alleged defamatory statements have been attributed. Therefore, Plaintiff's defamation and disparagement claims shall be dismissed as to all other defendants.

**\*10** With respect to Wickersham, the Court will first address Plaintiff's defamation claim. In response to Defendants' motion, Plaintiff asserts that "merely by introducing Humble's deposition testimony admitting publication of the statements in question, Buying has established a prima facie case of defamation ... [and] Humble's motion seeking dismissal of this claim must be denied ." Pl. Brf. at 8. In so arguing, it appears that Plaintiff misapprehends his burden on a summary judgment motion.

[14][15] To succeed on a claim of defamation, a plaintiff must show "(1) that Defendant made a defamatory statement of fact; (2) concerning the Plaintiff; (3) which was false; (4) which was communicated to persons other than the Plaintiff; and (5) fault." *Mayflower Transit, L.L.C. v. Prince*, 314 F.Supp.2d 362, 372 (D.N.J.2004) (citing *Taj Mahal*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

_Travel, Inc. v. Delta Airlines, Inc.,_ 164 F.3d 186 (3d Cir.1998)). As to the first element, "[w]hether the meaning of a statement is susceptible of a defamatory meaning is a question of law for the court." _Higgins v. Pascack Valley Hosp.,_ 158 N.J. 404, 426, 730 A.2d 327 (1999) (quoting _Ward v. Zelikovsky,_ 136 N.J. 516, 529, 643 A.2d 972 (1994)). Therefore, the Court must first determine whether the statements described by the deposition testimony above can be considered defamatory statements of fact.

[16][17][18][19][20] Generally, a statement that is communicated to third parties is defamatory if it is false and "tends to lower the subject's reputation in the estimation of the community or to deter third persons from associating with him." _Lynch v. New Jersey Educ. Ass'n,_ 161 N.J. 152, 164-65, 735 A.2d 1129 (1999). Whether a particular statement is defamatory depends on its "content, verifiability, and context." _Id._ at 167, 735 A.2d 1129. An evaluation of "content" includes consideration of the statement's literal meaning as well as "the fair and natural meaning that reasonable people of ordinary intelligence would give to it." _Id._ Verifiability refers to whether a statement can be proven true or false, and statements that are not verifiable, such as insults and name-calling, even if offensive, are not defamatory. _Id._ Similarly, opinions are not actionable unless they imply false underlying facts. _Id._ The last component, context, is examined because it bears upon the "fair and natural meaning" of a statement. _Id._ at 168, 735 A.2d 1129.

[21] Examining Wickersham's deposition testimony excerpts listed above, the Court finds that all but the first one require very little discussion. Plaintiff has simply not established that the communications described in excerpts numbered ii through vii above are "defamatory statements of fact." In many cases the deposition testimony pointed to by Plaintiff is not specific enough to discern the actual statement or its context. To the extent that a statement may discernable, it is not defamatory and/or does not refer to Plaintiff.

[22] The first excerpt listed requires just slightly more discussion. It describes an email sent to Google in which Wickersham refers to "a competitor" who is attempting to "steal customers" by bidding on Humble's company name through Adwords. On its face, this email does not refer by name to Plaintiff or its website. It is true, as Plaintiff argues, that the actual naming of Plaintiff is not a necessary element in a defamation action, so long as "there is such reference to him that those who read or hear the libel

reasonably understand the plaintiff to be the person intended." _Dijkstra v. Westerink,_ 168 N.J.Super. 128, 401 A.2d 1118 (App.Div.1979). However, Plaintiff has produced no evidence from which the Court can conclude that the person who received this message reasonably understood it to refer to Plaintiff. First, Plaintiff does not establish who the actual recipient is.[FN11] The most that can be inferred from the deposition testimony is that the email was sent to "Google." Second, although Plaintiff argues that "Google" can identify Plaintiff by checking its Adwords records of recent bidding, Plaintiff has not established that it was the only party bidding on the phrase "humble abode" through Adwords.

*11 Additionally, Plaintiff has not even attempted to provide any evidence to establish that any of the statements by Wickersham were false. Having failed to make a sufficient showing as to all of the elements of its claim, Plaintiff cannot defeat Defendant's motion for summary judgment. As the Supreme Court has stated

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

_Celotex Corp. v. Catrett,_ 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

[23] Plaintiff's trade disparagement claim fails as well. The elements of trade libel are: (1) publication; (2) with malice; (3) of false allegations concerning its property, product or business, and (4) special damages, _i.e._ pecuniary harm. _Mayflower Transit,_ 314 F.Supp.2d at 378. _See also Patel v. Soriano,_ 369 N.J.Super. 192, 247, 848 A.2d 803 (App.Div.2004) (proof of damages is essential in an action for trade libel). Plaintiff has made no attempt to provide any evidence of malice, falsity or damages. Accordingly, Defendants' motion shall be granted with respect to Plaintiff's defamation and trade disparagement claims.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3000459 (D.N.J.)
**(Cite as: --- F.Supp.2d ----)**

*C. Humble's Motion for Summary Judgment on Its Counterclaims and Third Party Claims a. Infringement and Unfair Competition*

In its pleading, Humble asserts that Buying and third party defendant Ross [FN12] engaged in unfair competition under the Lanham Act, and unfair competition, including trademark infringement under state law. As discussed earlier, the threshold issue on a claim for trademark infringement or unfair competition is whether there exists a valid and protectable mark. HUMBLE ABODE is registered as a service mark and is entitled to a presumption of validity. 15 U.S.C. 1115(a). Buying has not pointed to evidence overcoming this presumption, but argues that Humble's registration is irrelevant to the present case because this case "involves the sale of goods, not services." Pl. Brf. at 22.

[24] While a service mark and a trademark are separate designations, they are similar in many ways. The purpose of a trademark is to distinguish one party's goods from those made by another, and a service mark is used to distinguish services in the same manner. In either case the marks are used to indicate the distinctive source of the goods or services. The services involved in this case involve the online retailing of bedroom furniture. Moreover, a mark provides protection not only for the product or service to which it is originally applied but also to related items or services. *See Boston Athletic Ass'n v. Sullivan,* 867 F.2d 22, 27 (1 st Cir.1989). Consequently, the Court is unpersuaded by Buying's argument with respect to the validity of Humble's mark.

*12 [25] Humble also claims to have trademark rights in over 90 "unique, proprietary and arbitrary product names." Buying argues that the marks are not valid trademarks because they have not been physically affixed to any goods. However, in establishing common law trademark rights, the old rule requiring physical affixation has given way to a more open-ended approach. *See 2 McCarthy on Trademarks and Unfair Competition § 16:24* (4th ed.). Under the modern rule as set forth in Restatement (Third) of Unfair Competition, common law trademark rights can be acquired when a mark is "actually used." Restatement § 18. Such use occurs when the mark "is displayed or otherwise made known to prospective purchasers in the ordinary course of business in a manner that associates the designation with the goods, services, or business of the user." *Id.*

With the limited evidence presented by Humble, the Court is unable to conclude that Humble has established that its unregistered product names are valid and protectable marks. Particularly as to the test articulated above, the evidence in this case is unclear as to how Humble actually used its product names. The only evidence in the record regarding these product names is from the Certification of James Wickersham, which states that "as a result of its investment in the development and promotion of its website, Humble Abode also has trademark rights in numerous product names for its bedroom furniture including but not limited to the following trademarks for furniture items: ACCOLADE, ALABASTER, ... [listing product names]." [FN13] Wickersham Cert. at ¶ 5 (incorporating by reference ¶ 16 of Humble's Counterclaims and Cross-Claims). Also, Humble's Rule 56.1 statement, in a point undisputed by Buying, states that "[a]t the time this suit was filed, Humble Abode utilized various product names for the bedroom furniture it sells, including but not limited to the following name for furniture items: ACCOLADE, ALABASTER, ... [listing product names]." Statement of Material Facts at ¶ 3. Of course, Wickersham stating that Humble "has trademark rights" in its product names does not make it so, but the certification does, at a minimum, establish that Humble used certain product names. However, nowhere does Humble provide evidence of how the product names are used, where they appeared, if and how they were communicated to prospective purchases, or even to what kinds of items they refer. Without this information, the Court is unable to perform any analysis as to the protectability of Humble's furniture names and, even more generally, cannot conduct an analysis of Humble's claims as to these product names. This precludes summary judgment in favor of Humble on any of Humble's claims with respect to these product names. The remainder of the Court's discussion, therefore, will focus on the HUMBLE ABODE mark.

*i. Buying's Use of Humble's Mark HUMBLE ABODE*

Humble provides several screenshots of Buying's web pages that use the mark HUMBLE ABODE. For example, a page from *totalbedroom.com* states:
*13 In addition to offering the lowest prices anywhere, we have begun to educate our visitors as to how retailers like Humble Abode sell the same product for much more under a different name. After doing a thorough evaluation of every coupon code and sale ever offered at Humbleabode.com it is clear

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3000459 (D.N.J.)
**(Cite as: --- F.Supp.2d ----)**

that the Total Bedroom price is always significantly cheaper. For comparison we have listed the Humble Abode product names, to learn more or order, click the product picture below.

Answer at Ex. A and B. Directly below this paragraph is a disclaimer: "Humble Abode and product names are trademarks of HumbleAbode.com LLC. All other trademarks are the property of the respective trademark owners." *Id.*

Also from *totalbedroom.com,* as found on a page providing product detail for one of their beds, is the following: "Total Bedroom has found the same bed renamed. In an effort to clarify the market for furniture shoppers, we decided to include a comparison to humbleabode.com who sells this as the Montana Wood and Iron Bed." *Id.* at Ex. C.

The following appeared on *buyingfurniture.com:* "If you are considering a purchase at Humble Abode (humbleabode.com) please read the below bed deal to see how to save $100's on: [listing product names] To see what these beds are called by Fashion Bed Group (the manufacturer) simply Price Compare Humble Abode by clicking on this link." *Id.* at Ex. H.

A screen shot shows that a search run on the Google search engine for the terms "humble abode furniture" resulted in the appearance of a sponsored advertisement for *totalbedroom.com.* The advertisement states: "Save on Humble Abode. Find many of the Humble Abode.com beds at a significant discount." It also provides a link to *totalbedroom.com. Id.* at Ex. I.

Humble also provides several screen shots of searches apparently performed on the Yahoo! search engine using various search phrases that included the words "Humble Abode." Appearing at or near the top of the natural results list *(i.e.,* apparently unsponsored) are websites purportedly affiliated with Buying. The summaries shown on the search engine show that the term "Humble Abode" appears on these websites.

### *ii. Fair Use*

[26] Buying argues that Humble's Lanham Act and state law claims are barred by the affirmative defense of "fair use" in the form of comparative advertising. "In general, the law is that it is neither trademark infringement nor unfair competition to truthfully compare competing products in advertising, and in

doing so, to identify by trademark, the competitor's goods." 4 McCarthy on Trademarks and Unfair Competition § 25:52 (4th ed.). As noted by the Third Circuit, "[t]he use of a competitor's trademark for purposes of comparative advertising is not trademark infringement 'so long as it does not contain misrepresentations or create a reasonable likelihood that purchasers will be confused as to the source, identity, or sponsorship of the advertiser's product.' " *G.D. Searle & Co. v. Hudson Pharmaceutical Corp., 715 F.2d 837, 841 (3d Cir.1983)* (quoting *SSP Agricultural, Etc. v. Orchard-Rite Ltd., 592 F.2d 1096, 1103 (9th Cir.1979)*).

*\*14* In fact, comparative advertising has been recognized as a useful tool for consumers in making purchasing decisions. *See, e.g., August Storck K.G. v. Nabisco, Inc., 59 F.3d 616 (1995)* ("A use of a rival's mark that does not engender confusion about origin or quality is therefore permissible. The use is not just permissible in the sense that one firm is entitled to do everything within legal bounds to undermine a rival; it is beneficial to consumers. They learn at a glance what kind of product is for sale and how it differs from a known benchmark."). Indeed, the Federal Trade Commission encourages the use of comparative advertising and has expressly recognized its benefits:

Comparative advertising, when truthful and nondeceptive, is a source of important information to consumers and assists them in making rational purchase decisions. Comparative advertising encourages product improvement and innovation, and can lead to lower prices in the marketplace.

16 C.F.R. § 14.15(c).

[27] In the context of a trademark infringement claim, the comparative advertising defense raised by Buying falls under the umbrella of "nominative fair use." Nominative fair use occurs when (1) the alleged infringer uses the trademark holder's mark to describe the trademark holder's product, even if the goal of the accused infringer is to describe his own product; or (2) "if the only practical way to refer to something is to use the trademarked term." *Century 21 Real Estate Corp. v. Lendingtree, Inc., 425 F.3d 211, 214 (3d Cir.2005).* Consequently, "[i]t must be recognized at the outset that 'fair use' presents a fact pattern different from that of a normal infringement suit." *Id. at 217.*

[28] In *Century 21 Real Estate Corp. v. Lending Tree,* Third Circuit adopted a two-part approach for nominative fair use cases. First, the plaintiff must

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3000459 (D.N.J.)
**(Cite as: --- F.Supp.2d ----)**

prove that "confusion is likely due to the defendant's use of the mark." *425 F.3d at 222.* Once the plaintiff has met its burden of showing a likelihood of confusion, "the burden then shifts to defendant to show that its nominative use of plaintiff's mark is nonetheless fair." *Id.*
051 Extra cent-Y found within cent-Y markup.
The "likelihood of confusion" test in the nominative fair use context is a variation of the multi-factor test used in traditional trademark infringement cases that assesses what have become known as the *"Lapp factors." See Scott Paper Co. v. Scott's Liquid Gold, Inc., 589 F.2d 1225 (3d Cir.1978); Interpace Corp. v. Lapp, Inc., 721 F.2d 460, 463 (3d Cir.1983). These factors are as follows:*
(1) degree of similarity between the owner's mark and the alleged infringing mark;
(2) strength of the owner's mark;
(3) price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase;
(4) length of time the defendant has used the mark without evidence of actual confusion;
(5) intent of the defendant in adopting the mark;
(6) evidence of actual confusion;
*15 (7) whether the goods, though not competing, are marketed through the same channels of trade and advertised through the same media;
(8) the extent to which the targets of the parties' sales efforts are the same;
(9) the relationship of the goods in the minds of consumers because of the similarity of function; and
(10) other facts suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market or that he is likely to expand into that market.

*Century 21 Real Estate,* 425 F.3d at 224.

[29] Not all of these factors are to be applied in a nominative fair use case. *Id.* ("In the context of a nominative use of a mark ... certain *Lapp* factors are either unworkable or not suited or helpful as indicators of confusion."). Specifically, the Third Circuit has stated that the first two factors-the degree of similarity and the strength of the mark-are not useful or appropriate in a nominative fair use case. *Id.* at 225. All of the other *Lapp* factors may be used, but it will be up to the district court in each case to determine which factors are appropriate to use under the individual factual circumstances presented. *Id.* In determining which factors to use, the court should be guided by its ultimate goal of "assess[ing] whether consumers are likely to be confused by the use *not* because of its nominative nature, but rather because

of the manner in which the mark is being nominatively employed." *Id.* at 226 (emphasis in original).

With this in mind, the Court finds the following factors to be relevant in the present case: (1) price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (2) length of time the defendant has used the mark without evidence of actual confusion; (3) intent of the defendant in adopting the mark; and (4) evidence of actual confusion. However, despite the fact that consumer confusion (or the prevention thereof) is at the heart of any infringement or unfair competition claim, Humble has not addressed this issue or any of the *Lapp* factors on this motion.

As to the first factor, Buying argues that Internet consumers tend to be fairly sophisticated and therefore less likely to become confused. As to the second and fourth factors, Buying claims to have used Humble's mark for three years and Humble has provided no evidence of actual confusion. Last, the parties do not dispute that Buying consulted counsel with respect to using Humble's mark and, as a result, *totalbedroom.com* contains a trademark acknowledgement drafted by counsel. This relates to the third factor and tends to negate any intent on the part of Buying to confuse consumers. Given this evidence, and the lack of any evidence from Humble regarding the likelihood of consumer confusion, the Court cannot conclude that Humble is entitled to judgment as a matter of law on its infringement and unfair competition claims.

### b. False Advertising

*16 [30][31] To prevail on a claim of false advertising under the Lanham Act, a party must prove: "1) that the defendant has made false or misleading statements as to his own product [or another's]; 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) that the deception is material in that it is likely to influence purchasing decisions; 4) that the advertised goods traveled in interstate commerce; and 5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc." *Ditri v. Coldwell Banker Residential Affiliates, Inc., 954 F.2d 869, 872 (3d Cir.1992)* (alteration in original). Humble argues that "the entire enterprise of *Totalbedroom.com* and its affiliated websites amounted to false and misleading statements likely to confuse and deceive potential

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3000459 (D.N.J.)
**(Cite as: --- F.Supp.2d ----)**

customers as to the source of the furniture they were purchasing." Def. Brf. at 28. Humble's two paragraph argument with respect to its false advertising claim gets no more specific as to exactly what statements were false and misleading or why. The limited evidence presented on this motion certainly does not lead the Court to conclude as a matter of law that the "entire enterprise" of *totalbedroom.com* and its affiliates were false and misleading, particularly in light of the unrebutted defense of fair use raised by Buying.

Moreover, Humble has adduced no evidence of actual deception or confusion or even evidence of the "tendency" that consumers may be mislead. Accordingly, the Court cannot find Humble is entitled to judgment as a matter of law on its false advertising claim.

### c. Unfair Competition by Filing Lawsuit

[32] Humble argues that Plaintiff's filing of this lawsuit constitutes unfair competition under the Lanham Act and state law. Although some states have recognized this legal theory, *see, e.g., Microsoft Corp. v. Action Software,* 136 F.Supp.2d 735, 739 (N.D.Ohio 2001) ("Ohio is one of the first states to recognize that lawsuits implemented with the design to gain an unfair advantage over a competing business are a basis for a common law suit for unfair competition"), Humble points to no decision that would indicate that it is a viable theory under New Jersey law. As to federal law, the Lanham Act prohibits false designations of origin or misleading descriptions of goods or services which are likely to cause confusion, and therefore does not contemplate such a claim. 15 U.S.C. § 1125(a). *See also IMCS, Inc. v. D.P. Tech. Corp.,* 264 F.Supp.2d 193, 197 (E.D.Pa.2003) (noting that, with respect to a related patent infringement suit, "a lawsuit that alleges unfair competition must be based on marketplace statements or misconduct and cannot be based merely on the filing of a lawsuit to enforce a presumptively valid patent"). To the extent Humble seeks to state a Lanham Act claim based upon the filing of the lawsuit, that claim fails.

Moreover, even if Humble's legal theory were valid, the Court finds it would not be entitled to summary judgment. Humble simply has not made a showing that, as a matter of law, Buying brought the suit in bad faith or for an improper purpose. Additionally, in response to Humble's arguments Buying has raised the defense of reliance on counsel, which raises an issue of fact precluding summary judgment.

### D. Request to Strike Humble's Demand for Attorney Fees

**\*17** [33] In its Letter Order dated February 14, 2006, the Court granted in part Buying's motion to strike Humble's demands for attorney fees but denied without prejudice Buying's motion to the extent Humble's demands were based on the Lanham Act. Now that Humble has presented its case in seeking summary judgment, Buying has renewed its motion.[FN14] See Pl. Brf. at 34. The Court will grant the motion and strike Humble's demand for attorney fees.

[34] Section 35(a) of the Lanham Act, which sets forth the available remedies for trademark violations, provides in relevant part that "the court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). The Third Circuit has held that an "exceptional" case under § 35(a) must involve culpable conduct on the part of the losing party. *See SecuraComm Consulting, Inc. v. Securacom Inc.,* 224 F.3d 273, 280 (3d Cir.2000). Specifically, "a district court must make a finding of culpable conduct on the part of the losing party, such as bad faith, fraud, malice, or knowing infringement, before a case qualifies as 'exceptional.' " *Id.* (quoting *Ferrero U.S.A., Inc. v. Ozak Trading, Inc.,* 952 F.2d 44, 47 (3d Cir.1991)).

Humble has taken the opportunity to present its case to the Court through its summary judgment motion. Various issues discussed herein preclude summary judgment in favor of Humble with respect to the Lanham Act claims raised by either party. However, even if Humble ultimately prevails on the Lanham Act claims in this case (*i.e.,* defeats Plaintiff's claims and/or prevails on its own), nothing in the facts presented to the Court would warrant a finding that Buying's conduct rose to the level of bad faith, fraud, malice, knowing infringement or the like. First, the case presents novel issues of Internet advertising rather than flagrant violations of well-settled trademark law. Indeed, the law in this area has continued to evolve from the day this case was filed. Second, there is no dispute that Buying consulted counsel with regard to its use of Humble's marks and included trademark disclaimers on its website, which would tend to negate a finding on intentional infringement or bad faith. In short, Humble has not established that this is an exceptional case under § 35. Buying's motion to strike shall be granted.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3000459 (D.N.J.)
**(Cite as: --- F.Supp.2d ----)**

### III. Conclusion

For the reasons set forth above, Defendants' motion for summary judgment is granted in part and denied in part. Buying's motion to strike Humble's request for attorney fees is granted. An appropriate order accompanies this Opinion.

FN1. Plaintiff states that its designation of Buying as an "LLC" in the caption of this case was inadvertent.

FN2. Section 43(a) of the Lanham Act states in the relevant part:
(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which–
(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person....
15 U.S.C. § 1125.

FN3. A trademark becomes incontestable "after the owner files affidavits stating that the mark has been registered, that it has been in continuous use for five consecutive years, and that there is no pending proceeding and there has been no adverse decision concerning the registrant's ownership or right to registration." *Fisons,* 30 F.3d at 472 n. 7.

FN4. Plaintiff points out that TOTAL BEDROOM was registered as a service mark in 1994 by a third party, which registration was subsequently cancelled for failure to file a certification of continued use.

FN5. A suggestive mark "suggest[s] rather than describe[s] the characteristics of the goods." *A.J. Canfield v. Honickman,* 808 F.2d 291, 296 (3d. Cir.1986). It requires

"consumer 'imagination, thought, or perception' to determine what the product is." *J & J Snack* 149 F.Supp.2d at 147 (quoting *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.,* 237 F.3d 198, 222 (3d Cir.2000)).

FN6. Indeed, Plaintiff has failed to provide any proofs on this issue.

FN7. The court may take judicial notice of the registrations. *Island Software & Computer Serv., Inc. v. Microsoft Corp.,* 413 F.3d 257, 261 (2d Cir.2005).

FN8. As discussed further below, Defendant has asserted similar counterclaims against Plaintiff based on Plaintiff's alleged purchase of Humble's mark as an Internet advertising keyword. The analysis, therefore, extends accordingly.

FN9. The relevant portion of Section 43(a) of the Lanham Act: "Any person who, *on or in connection with any goods or services, or any container for goods, uses in commerce* any word, term, name, symbol, or device...." 15 U.S.C. 1125(a) (emphasis supplied).

FN10. Under the Lanham Act,
[t]he term "use in commerce" means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. For purposes of this Act, a mark shall be deemed to be in use in commerce–
(1) on goods when–
(A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and
(B) the goods are sold or transported in commerce, and
(2) on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State or in the United States and a foreign country and the person rendering the services is engaged in commerce in connection with the services.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3000459 (D.N.J.)
**(Cite as: --- F.Supp.2d ----)**

15 U.S.C § 1127.

FN11. A copy of the email is not part of the record on this motion.

FN12. While Humble has asserted these claims against Steve Ross in its pleading, its summary judgment motion appears to be directed solely to Buying's conduct. The motion makes no attempt to explain the role of Ross with respect to the alleged acts or the basis upon which he may be liable. Therefore, Humble's motion is denied as to Ross, and the remainder of this Opinion will address Humble's motion as if directed at Buying only.

FN13. For the purposes of this opinion, it is not necessary to set forth the entire list of product names.

FN14. Humble has not submitted opposition to Plaintiff's request to strike.

D.N.J.,2006.
Buying For The Home, LLC v. Humble Abode, LLC
--- F.Supp.2d ----, 2006 WL 3000459 (D.N.J.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 1042420 (Trial Motion, Memorandum and Affidavit) Brief in Opposition to Motion for Summary Judgment (Mar. 13, 2006) Original Image of this Document (PDF)
• 2006 WL 653858 (Trial Motion, Memorandum and Affidavit) Brief in Support of Defendant's Motion for Summary Judgment (Feb. 23, 2006)
• 3:03cv02783 (Docket) (Jun. 9, 2003)
• 2:03cv02783 (Docket) (Jun. 9, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.