## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

CNG FINANCIAL CORPORATION          :
                                   :    Case No.  1:06-cv-040
          Plaintiff/Counterclaim-  :
          Defendant,               :    Chief Judge Sandra S. Beckwith
                                   :    Magistrate Timothy S. Black
   vs.                             :
                                   :    **RESPONSE TO GOOGLE'S**
GOOGLE INC.                        :    **MOTION TO STRIKE**
                                   :
          Defendant/Counterclaim-  :
          Plaintiff.               :


For its Response to Google's Motion to Strike Evidence Submitted by CNG in Opposition to Google's Motion for Summary Judgment, CNG Financial Corporation ("CNG") states as follows:

## I.    INTRODUCTION

In denying Google's Motion for Judgment on the Pleadings, this Court recognized that Google's defenses to CNG's claims in this case could only be determined on a fully developed factual record.  Now, at summary judgment and through its Motion to Strike, rather than introducing its own evidence to controvert CNG's factual showings, Google simply asks this Court to disregard the facts adduced by CNG.  Google's Motion is based on a complete and total mischaracterization of CNG's summary judgment evidence, and it should be denied.

## II.    ARGUMENT

**A.    The Declaration of Angela Horger is admissible, as the original documents she relied upon are available for examination.**

While Google asks this Court to accept its counsel's unverified assertions about the contents of "99 million" natural listings claimed to appear in response to a Google search of "Check N Go," it asserts that this Court should disregard CNG's verified showings as to what

Dockets.Justia.com

those listings really show.  Even assuming *arguendo* that the best evidence rule is properly applied in the context of a summary judgment declaration, Google's argument ignores the exceptions to the best evidence rule

Angela Horger's Declaration serves as a summary of Google results pages and corresponding landing sites too numerous to practically be attached to CNG's opposition papers. Fed. R. Evid. 1006 provides that where the contents of voluminous writings cannot conveniently be examined in court, the writings may be presented in the form of a summary.  The only stipulation outlined in the rule is that the originals must be made available for examination or copying by other parties, and that the Court may order they be produced in court.[1]  CNG affirmatively states that the originals are available to Google for examination and/or copying at a reasonable time and place, and to this Court, and that the Declaration is thus admissible as a summary.

**B.    Exhibits E through G to the Declaration of Barry Hunter are admissible as accurate depictions of the sponsored links' text.**

There are essentially two problems with Google's argument to exclude Exhibits E through G: (1) CNG did not add to, delete from, or otherwise alter the appearance of any of the results pages—CNG simply tendered the pages in the form that they printed[2] and (2) the alleged

---

[1] The Sixth Circuit has interpreted Fed. R. Evid. 1006 as imposing five requirements: "(1) the underlying documents must be so voluminous that they cannot be conveniently examined in court, (2) the proponent of the summary must have made the documents available for examination or copying at a reasonable time and place, (3) the underlying documents must be admissible in evidence, (4) the summary must be accurate and nonprejudicial, and (5) the summary must be properly introduced through the testimony of a witness who supervised its preparation." *U.S. v. Modena*, 302 F.3d 626, 633 (6th Cir. 2002).  In addition to the voluminous nature of the documents, Google does not dispute the admissibility of the underlying search results pages; CNG has stated it will make the documents available to Google; the Declaration is accurate and factual; and Ms. Horger supervised the preparation of the summary.

[2] True to form, Google asks this Court to strike CNG's evidence based on its counsel's unverified assertions that the results pages attached to the Hunter Declaration do not accurately reflect their appearance on a computer screen. However, undersigned counsel again represents to this Court that the results pages were tendered precisely as they printed—without any manipulation or alteration.  Indeed, given that Google's own printouts of its results pages did not include the shading that it now asserts renders CNG's exhibits untrustworthy, it appears that the problem lies with the methods used by Google in shading the sponsored links.

inaccuracies do not affect CNG's stated evidentiary purpose in attaching the pages—to reflect the textual content of the sponsored links.[3]  Google complains that purported inaccuracies in the results pages tendered by CNG obscures Google's efforts to distinguish between its organic search results and sponsored links.  Google does so erroneously, however, because in attaching the results pages CNG is not attempting to illustrate the possibility of user confusion as a consequence of the layout or appearance of the results pages.  Concededly, at some point, someone will have to look at Google's results pages in order to determine the ultimate issue of likelihood of confusion based on such layout or appearance.  However, the parties have not yet reached that point in the litigation.  Instead, CNG now refers to the results pages merely to illustrate for this Court what the advertisers to whom Google sells CNG's trademark are saying in their sponsored links.  *See* CNG's Opposition, pg. 4 n.6 (citing Exhibits E, F, and G, for the proposition that competitors advertise under generic descriptors and sometimes employ names specifically designed to confuse users searching for Check N Go).  Thus, any supposed flaws in the appearance of the results pages are irrelevant to what CNG asserts with their admission.

## C.    Jerry Williams is entitled to make inferences and form lay opinions based on his personal factual knowledge.

Google makes several objections to portions of Mr. Williams' declaration.  As noted by Google, these objections to Mr. Williams' testimony essentially repeat the same arguments:  that the testimony lacks foundation, that the testimony is based on hearsay, and/or that Mr. Williams submits improper lay opinion.

---

[3] This is relevant, *inter alia*, not only to address Google's bland assertions that the content of the sponsored links obviates confusion but also to support the Claims for Relief in CNG's Complaint (Second and Third Claims for Relief) that Google has contributed to the infringement of its trademark by Google's sponsored link advertisers—claims which Google's summary judgment reply memorandum remarkably overlooks. *See* Google's Reply Brief, p. 12 ("CNG is suing only Google, and it is suing Google for direct infringement").

CNG responds generally that Mr. Williams is a entitled as a lay witness to present an opinion based on his personal knowledge and perception. Fed. R. Evid. 602 merely requires that a witness must only testify to matters of which he/she has personal knowledge—a standard requiring a low threshold of proof at trial let alone at summary judgment. *See U.S. v. Franklin*, 415 F.3d 537, 549 (6th Cir. 2005) (further stating that testimony should not be excluded under Rule 602 unless "no reasonable juror could believe that the witness had the ability and opportunity to perceive'" events to which he or she is testifying). Mr. Williams, as the head of CNG's internet lending group, has had extensive opportunity to observe the payday lending industry in general, and the impact of internet competitors trading on CNG's mark in particular. Thus, the foundation for his factual assertions regarding various aspects of the industry, its customers, and its competitors, is his considerable first-hand experience. It is based on this experience that Mr. Williams can make the factual statements regarding: (1) the substantial investment CNG makes in its brand promotion [Williams Decl. ¶ 3], (2) the low brand recognition among most other payday lenders [Williams Decl. ¶ 5(a)], (3) the use by such lenders of generic names and/or various names [Williams Decl. ¶ 5(b)], (4) the structure of such lenders' websites [Williams Decl. ¶ 5(b)], (5) the existence of many lead generators/aggregators in the payday lending business that offer other companies' loans [Williams Decl. ¶ 5(c)], and (6) the large number of impulse buyers in the industry [Williams Decl. ¶ 5(d). This evidence goes to the question of whether consumers are *likely to be* confused when they reach the results page as well as when they reach the underlying webpages ("landing sites"). It is not offered, as Google misleadingly asserts, as some eleventh hour effort by CNG to tender evidence of *actual* confusion.

Similarly, Fed. R. Evid. 701 basically requires that any testimony given by a lay witness be limited to those opinions or inferences based on that witness' perception, that it be helpful to a better understanding of a fact in issue, and that it not be based on any specialized knowledge. Mr. Williams' declaration is offered by CNG primarily to provide this Court with factual testimony about CNG's expenditures in terms of its brand promotion, the contrasting lack of brand recognition among the lenders purchasing sponsored links from Google, the existence of lead generators/aggregators in the payday lending business, and the general mind-set of the average payday lending customer. Again, this testimony is based on Mr. Williams' personal knowledge gained from his executive status in the payday lending industry, and on reasonable inferences drawn from that experience. Google's repeated assertion that Mr. Williams' testimony is based on inadmissible hearsay is unfounded. Simply because Mr. Williams has been in contact with many customers, colleagues, and others in the payday lending industry, and has gathered knowledge and drawn inferences as a result of that contact, does not mean any assertions based on that experience are hearsay. To the contrary, courts have recognized that such inferential assessments are simply another form of personal knowledge, not hearsay. *See, e.g., Agfa-Gevarert, A.G. v. A.B. Dick Co.*, 879 F.2d 1518, 1523 (7th Cir. 1989) (business executives' assessments of product's quality were personal knowledge even where based on what they had been told by customers and engineers). The same applies to Google's allegations that Mr. Williams' deductions about the reactions of customers to various features of sponsored links is improper argument. *See, e.g., Ty, Inc. v. Softbelly's Inc.*, 353 F.3d 528, 534 (7th Cir. 2003) (noting that "experienced businessmen know a great deal about what consumers think; that is personal knowledge," and that experienced businessman in toy industry could testify, based on personal knowledge, about whether consumers thought toy name was generic term).

Google also objects to Exhibits 1 and 2 to Mr. Williams' declaration. Because this objection is essentially identical to the one Google makes to Exhibits E through G to the declaration of Barry D. Hunter, CNG respectfully refers this Court to section B, *supra*, of this response.

**D.    The Declaration of Stephen Schaller addresses specialized regulatory knowledge and will assist this Court in understanding the evidence.**

Contrary to Google's own conclusory statements, Mr. Schaller offers more in his declaration than "legal conclusions he would like this Court to reach." Instead, Mr. Schaller provides specialized knowledge about factual information which the Court will need to consider in reaching its own conclusions as to the legality of the sponsored link advertisers' conduct.

First, as to Google's challenges as to the summary nature of Mr. Schaller's declaration, (including his failure to identify the statutes and regulations in question), it is important that this Court be apprised that CNG timely identified Mr. Schaller as an expert witness pursuant to Rule 26, and that Google took his deposition several months ago. A copy of the deposition transcript, in which Mr. Schaller goes into great detail describing the bases for his opinions and the statutes and regulations that he claims Google's advertisers are violating, is attached as Exhibit A. As with CNG's survey, the fact that Google challenges the admissibility of this evidence but fails to offer its own contrary evidence is telling.

Second, while CNG certainly does not suggest that Mr. Schaller's opinion as to the meaning of the governing law should supersede this Court's domain, his declaration does far more than simply state his opinion of the law. The legal determination in this case depends on a factual inquiry into whether or not the advertisers in question are offering loans to residents of various states and whether or not those lenders are licensed in those states. Mr. Schaller's expertise, based on his responsibilities for CNG's regulatory compliance, enables him to assist

this Court in addressing: (1) whether the sponsored link advertisers are actually offering loans to residents in various jurisdictions; (2) the actual name under which these sponsored link operators are offering their loans in those jurisdictions; and (3) whether these operators have obtained licenses with the regulatory bodies that govern payday lending in these various jurisdictions (which requires knowledge of the actual names under which the lenders are operating in those states). If, as CNG argues without refutation by Google, applicable law requires these advertisers to obtain payday lending licenses before offering loans to residents of a given state (which this Court can determine from the parties' arguments), then Mr. Schaller's testimony on whether these lenders are, in fact, offering loans to residents of various states without obtaining a license from those states goes to a relevant issue in the case. Moreover, it is evidence that only someone with Mr. Schaller's background and knowledge could present; and it is evidence that will assist this Court in reaching its conclusions on the evidence. *See, e.g., Flanagan v. Altria Group, Inc.*, 423 F. Supp. 2d 697, 700-701 (E.D. Mich. 2005) (expert's understanding of the issue helpful to the court where he had acquired specialized knowledge about a complex regulatory matter); *Century Indemnity Co. v. Aero-Motive Co.*, 254 F. Supp. 2d 670, 677 (W.D. Mich. 2003) (expert's testimony was admissible where it pertained to issues of fact and was based on experience not possessed by ordinary person). As such Mr. Schaller's declaration testimony is plainly relevant to understanding the evidence, and it should thus be admitted. [4]

## E. The expert report of Dr. Mazis is admissible as to trademark use as well as confusion

Because Google now repeats in this Motion to Strike its objection to Dr. Mazis' expert report as laid out in its summary judgment papers, CNG responds briefly to Google's argument

---

[4] Also as to relevance, this evidence, at the minimum, goes to Google's claim that CNG is not harmed when consumers are confused into associating illegally operating sponsored link advertisers with Check N Go.

that a party cannot use a consumer survey as evidence for both trademark use and confusion. Google cites *Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Productions*, 71 F. Supp. 2d 755 (N.D. Ohio 1999), for the proposition that "survey evidence about a likelihood of confusion is not evidence that a defendant used a plaintiff's trademark as a trademark." The *Rock & Roll* court, however, did not at all reach such a conclusion. The court's focus was its finding that the *trademark holder* had not shown it had a protectable trademark—in other words, it was the trademark holder's use of the trademark that was the primary issue. Thus, any confusion as to the source of the goods at issue was in essence irrelevant. *Id.* at 762 (before relying on a survey as evidence of confusion, marks at issue must first be found entitled to protection). The court in no way suggested that a survey could not be relied on to show both that the defendant had made a trademark use of the plaintiff's trademark, and that such use created a likelihood of confusion.

The Sixth Circuit has determined that the presence or absence of trademark use is determined by whether consumers consider the defendant's use of the trademark to signify the source of a product or service. Neither the Sixth Circuit nor any other Court has delineated the ways that proof must be adduced on this issue. As such, a survey participant's belief as to the source of the sponsored links which appear in response to their search of the term "check n go" is plainly probative to the trademark use issue in this case.

## III.    CONCLUSION

For the foregoing reasons, Google's Motion to Strike should be denied.

Respectfully submitted,


/s/ Ann G. Schoen
Ann G. Schoen (OH Bar #0064234)
Frost Brown Todd, LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, OH  45202-4182
Tel.:  (513) 651-6800
Fax:  (513) 651-6981

Barry D. Hunter
Medrith Lee Norman
Frost Brown Todd LLC
250 West Main Street, Suite 2700
Lexington, Kentucky 40507
(859) 231-0000
(859) 231-0011-fax

Attorneys for CNG FINANCIAL
CORPORATION

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed with the Clerk of the Courts and that notification of such filing has been delivered via U.S. mail and electronic mail to the following, this 18th day of May, 2007:

> Kenneth F. Seibel, Esq.
> Jacobs, Kleinman, Seibel & McNally
> 2300 Kroger Building
> 1014 Vine Street
> Cincinnati, OH  45202
>
> Michael H. Page, Esq.
> Klaus H. Hamm, Esq.
> Keker & Van Nest LLP
> 710 Sansome Street
> San Francisco, CA  94107

> /s/ Ann G. Schoen
> Attorney for Plaintiff/Counter Defendant

LEXLibrary 0102393.0533475 334787v1

**EXHIBIT A**

**DEPOSITION TRANSCRIPT OF STEPHEN SCHALLER, ESQ.**

**FILED UNDER SEAL**