UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| CNG FINANCIAL CORPORATION,<br><br>    Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>GOOGLE INC.,<br><br>    Defendant/Counterclaim-Plaintiff. | Case No. 1:06cv040<br><br>Chief Judge Sandra S. Beckwith<br>Magistrate Timothy S. Black<br><br>**GOOGLE'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE EVIDENCE SUBMITTED BY CNG IN OPPOSITION TO GOOGLE'S MOTION FOR SUMMARY JUDGMENT** |

      Although CNG styles its pleading as a response to Google's motion to strike, it is nothing of the sort. Instead, it is in primary part a transparent attempt at a surreply to Google's motion for summary judgment, filed without authority or leave. That portion of CNG's brief should be stricken. As for the arguments in CNG's brief that do relate to the motion to strike, they fail, as set forth herein.

      **I.**    **CNG's surreply is procedurally improper and substantively baseless.**

      Section E of CNG's response to Google's motion to strike addresses issues not raised in Google's motion. Instead, it is an improper surreply in support of CNG's opposition to Google's motion for summary judgment and in violation of Civil Local Rule 7.2(a)(2)'s prohibition of briefing beyond a reply "except upon leave of court for good cause shown." Thus, the Court should not consider the arguments CNG raises.

      CNG offers this surreply under the cover of "responding" to Google's objection to the expert report of Dr. Mazis. The main problem with this approach is that Google's motion to strike does not contain any objections to the Mazis expert report. Instead, Google's motion states only that Google has *already* objected to that evidence in its summary judgment briefing. Moreover, CNG already has addressed Google's objections with six pages of argument in its opposition to Google's motion for summary judgment, so it has had its bite at the apple.

A second problem with CNG's approach is that the argument it slips into its brief does not even address Google's objections to the Mazis expert report, even though that is supposedly why CNG makes its argument. Instead, CNG offers a new surreply to Google's legal argument that confusion survey evidence is not relevant to the question of trademark use.

Not only is CNG's surreply procedurally improper, it is also wrong on the substance. CNG attempts to counter Google's argument that *Rock & Roll Hall of Fame and Museum, Inc. v. Gentile Productions*, 71 F. Supp. 2d 755 (N.D. Ohio 1999), held that confusion survey evidence is not relevant to the question of trademark use, claiming that the opinion instead focused on determining whether a trademark holder's purported mark was protectable. CNG overlooks an entire section of the opinion. In a section entitled "whether defendants have used plaintiffs' building design or words as a trademark," the court found that defendants had not.[1] In reaching this conclusion, the court discussed plaintiffs' survey, which plaintiffs claimed demonstrated use because it purportedly demonstrated a likelihood of confusion. The *Rock & Hall of Fame* court rejected this argument, holding that "the Court does not find that the survey shows that consumers believed the building is a trademark used by defendants."[2] It then, two sentences later, concluded "there is no evidence that defendants' [sic] used plaintiffs' building design as a trademark."[3] Google thus stands by the argument that CNG goes out of its way to challenge: "survey evidence about a likelihood of confusion is not evidence that a defendant used a plaintiff's trademark as a trademark." If the Court considers the argument improperly raised by CNG in surreply, it should reject it.

## II. The Declaration of Stephen Schaller offers unsubstantiated legal conclusions and nothing more.

Mr. Schaller's declaration states "[i]t is my opinion that many of the advertisers whose sponsored links appear on Google's result pages in response to an internet user search of the 'Check N Go' trademark *are violating the usury laws and other consumer protection laws* that

---

[1] *Rock & Roll Hall of Fame and Museum*, 71 F. Supp. 2d at 763-64.

[2] *Id.* at 763.

[3] *Id.*

govern their activities[.]"[4] However CNG tries to spin it—for example, by characterizing the declaration as "specialized knowledge about factual information"[5]—this is *expressly* a legal conclusion. As the only two cases cited by *CNG* explain, the declaration is thus inadmissible. One case admits a declaration because it "offers expert opinion *short of legal conclusions*"[6] and the other concludes that it "will not permit [declarant] to give legal conclusions and will not consider any opinions constituting a legal conclusion in deciding the instant motions for summary judgment."[7]

Aside from his legal conclusion, Mr. Schaller's declaration provides little else. The remainder of the declaration describes in extremely summary fashion that "individuals" applied for "payday loans" through "sponsored link websites," and that Mr. Schaller checked "regulatory records" in various "jurisdictions" in reaching his legal conclusion. It does not provide further detail; indeed Mr. Schaller does not even state the laws that he claims the lenders violate. While the affidavit described in the *Flanagan* case relied upon by CNG contained "297 footnotes, referring to hundreds of exhibits,"[8] Mr. Schaller's declaration does not state a single, specific fact.

CNG's belated submission of Mr. Schaller's hundred-plus page deposition transcript cannot save Mr. Schaller's declaration. Local Civil Rule 7.2(d) forbids CNG from submitting evidence in support of its summary judgment opposition after filing its opposition, and Rule 7.2(e) requires parties to submit "only essential portions of transcripts" rather than dumping them in their entirety. Moreover, CNG had ample time to submit evidence with its opposition brief— on top of the 21 days provided by the Local Civil Rules, CNG asked for and received an extension. More important than CNG's procedural violation is the fact that no matter what the transcript contains, it cannot change the words of Mr. Schaller's declaration or its improper legal

---

[4] Declaration of Stephen Schaller, Esq., In Support Of Plaintiff, CNG Financial Corporation's Opposition To Google, Inc.'s Motion For Summary Judgment, ¶ 3 (emphasis added).

[5] Response To Google's Motion To Strike ("Response"), 6.

[6] *Flanagan v. Altria Group, Inc.*, 423 F. Supp. 2d 697, 702 (E.D. Mich. 2005) (emphasis added).

[7] *Century Indemnity Co. v. Aero-Motive Co.*, 254 F. Supp. 2d 670, 677 (W.D. Mich. 2003).

[8] *Flanagan*, 423 F. Supp. 2d at 698.

conclusions. Mr. Schaller's declaration is nothing more than a legal conclusion of CNG's own counsel with no citations to any evidence or law, and the Court should strike it.[9]

Finally, Google fails to see why CNG's competitors' compliance with state banking laws has any bearing on the trademark infringement issue before the court. But in the unlikely event that the Court believes a connection exists between usury and trademark laws, Google requests that the Court take judicial notice of the complaint filed in *California v. Check 'N Go of California, Inc.*, CGC-07-462779, filed in the Superior Court of the State of California, County of San Francisco. In contrast to Mr. Schaller's declaration, this complaint—filed less than a week after Mr. Schaller signed his declaration—contains detailed allegations explaining why CNG violates California's usury and consumer protection laws and as is not licensed to provide short term loans in California.[10]

### III. The Declaration of Jerry Williams proffers expert testimony in lay witness clothing.

In 2000, Congress amended the Federal Rules of Evidence to prevent exactly what CNG attempts here: proffering a would-be expert witness in lay witness clothing. The 2000 amendment to Federal Rule of Evidence 701 added the requirement that a lay witness cannot testify about inferences "based on scientific, technical, or other specialized knowledge within the scope of Rule 702."[11] The Advisory Committee notes explain that the subsection is intended to "eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing" and to ensure "that a party will not evade the expert witness disclosure requirements set forth in Fed.R.Civ.P. 26 … by

---

[9] Alternatively, if we are to support our motions with the legal opinions of our own lawyers, Google's counsel will happily submit a declaration stating that "we win." We expect the Court will give that declaration shrift as short as that afforded Mr. Schaller's.

[10] Google attaches the complaint as Exhibit A to this brief for the Court's convenience. It also can be accessed at http://www.sfgov.org/site/uploadedfiles/cityattorney/PAYDAY-PRESSKIT.PDF.

[11] Rule 701 states: "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, *and* (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." (Emphasis added.)

simply calling an expert witness in the guise of a layperson."[12]  Thus, for example, the Sixth Circuit has ruled that, under this amendment to Rule 701, inferences based on "knowledge and familiarity with computers and the particular forensic software well beyond that of the average layperson" cannot be introduced pursuant to Rule 701.[13]

Despite the clarity of Rule 701, CNG attempts to introduce the opinion of one its employees—whom it has never designated or qualified as an expert—about why participants in the payday loan industry *other than CNG* supposedly engage in particular business tactics and how consumers react to those tactics.  These hypotheses are necessarily based on specialized knowledge, as they are based on a "knowledge and familiarity" of the payday lending industry "well beyond that of the average layperson."  Yet CNG argues otherwise by trying to make an impossible distinction between "specialized knowledge" and "personal knowledge gained from … executive status in the payday lending industry, and on reasonable inferences drawn from that experience."[14]  Indeed, CNG's explanation practically tracks the type of testimony expressly prohibited by Rule 701, *i.e.*, "inferences … based on …. specialized knowledge."  As a result, Mr. Williams' testimony about its competitors' and their customers' thoughts and motivations should be stricken.

Although CNG argues that Mr. Williams' statements are based on his personal knowledge, this claim stretches credibility.  For example, Mr. Williams purports to know why CNG's competitors have designed their websites in a particular way and that CNG's prospective customers "click on the sponsored links in the belief that the [sic] are reaching a Check N Go webpage."[15]  But Mr. Williams does not explain how he knows these things and, because this information has to do with the mindset of CNG's competitors and their customers,  it is unclear how he could learn this information simply by working at CNG.  If he received this information

---

[12] Fed. R. Evid. 701, Advisory Committee Notes for the 2000 Amendments.

[13] *United States v. Ganier*, 468 F.3d 920, 926 (6th Cir. 2006); *see also In re Knerr*, 2007 WL 269833, *3 (Bnkr. N.D. Ohio 2007) (excluding lay witness opinion testimony based on an independent investigation and years of experience in law enforcement).

[14] Response, 5.

[15] Given this testimony, CNG's claim that it has not attempted to tender evidence of actual confusion is false.

from conversations with others, the testimony is hearsay and should be excluded.[16] And contrary to CNG's assertion, a party cannot get around the hearsay rule by simply announcing that the hearsay is within the declarant's personal knowledge.[17]

### IV. The Declaration of Angela P. Horger is not admissible under the exception to the Best Evidence Rule allowing for summaries of voluminous writings.

CNG argues that it submitted Ms. Horger's summary declaration because the 100 pages it summarizes are "too numerous to practically be attached to CNG's opposition papers," while *at the same time* it attached hundreds of pages of evidence (the 102-page Schaller deposition transcript and exhibits thereto) to its response brief. Ms. Horger's declaration states that she reviewed 1,000 "genuine (organic) listings that appear on the Google results pages generated by my search of the term 'Check N Go'."[18] Google lists ten search results per search result page, which means Ms. Horger reviewed 100 search results pages—pages which CNG could have easily included with its opposition papers. CNG's brief argues that Ms. Horger's declaration also summarizes 1,000 landing sites, but Ms. Horger's declaration describes only a review of "Google results pages." Because Ms. Horger's declaration summarizes 100 web pages and nothing more, and CNG's own actions demonstrate that submitting many, many more pages is not inconvenient, CNG may not rely on the exception to the Best Evidence Rule that allows for summaries of "voluminous writings … which cannot conveniently be examined in court."[19]

Moreover, CNG has ignored the proper procedure for invoking the exception to the Best Evidence Rule allowing for such summaries. As the very case cited by CNG explains, a party attempting to use this exception cannot simply state that it will make records available, but instead "must identify its exhibits as [being offered pursuant to Rule 1006], provide a list or description of the documents supporting the exhibit and state when and where they may be

---

[16] *See Interactive Products Corp. v. a2z Mobile Office Solutions, Inc.*, 195 F. Supp. 2d 1024, 1033 (S.D. Ohio 2001) (excluding hearsay evidence offered to prove a likelihood of confusion).

[17] *See Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007) (statement "based solely upon information that he received from elsewhere … is … inadmissible hearsay," and is also based on belief rather than on personal knowledge).

[18] Declaration of Angela P. Horger In Support Of Plaintiff, CNG Financial Corporation's Opposition To Google, Inc.'s Motion For Summary Judgment, ¶ 2.

[19] Fed. R. Evid. 1006.

reviewed."[20]  CNG has taken none of these steps.  Instead it submitted Ms. Horger's declaration without mentioning Rule 1006 and, even now, it has not stated when and where they may be reviewed.  As a result, Google did not have the opportunity to review CNG's evidence while briefing its motion for summary judgment.

Finally, although CNG suggests otherwise, the Best Evidence Rule applies to evidence submitted in opposition to a motion for summary judgment.  Federal Rule of Civil Procedure 56(e) states that affidavits submitted with summary judgment briefing "shall set forth such facts as would be admissible in evidence" and the Best Evidence Rule is a rule about admissibility, not about how much weight to give evidence.  As a result, Rule 56(e) encompasses the Best Evidence Rule.

**V.      Exhibits E through G to the Declaration of Barry D. Hunter are untrustworthy.**

Rather than argue that Exhibits E through G to Mr. Hunter's declaration accurately represent the appearance of a Google webpage, CNG blames its printer.  The undeniable fact is that CNG's "evidence" badly distorts the appearance of Google's web pages, and the distortions benefit CNG.  As set forth in Google's objections, CNG has taken numerous steps to eliminate the distinction between search results and Sponsored Links that Google creates in order to avoid consumer confusion.[21]  Altering evidence, even if inadvertently or by not adjusting printing settings, renders it untrustworthy, and untrustworthy evidence is inadmissible.[22]  Moreover, as Google's evidence demonstrates, it is possible to print a Google web page without distorting it.

CNG tries to get around its submission of untrustworthy evidence by arguing the distortions it created are not relevant.  In making this argument it states "at some point, someone will have to look at Google's results pages in order to determine the ultimate issue of likelihood of confusion based on such layout or appearance.  However, the parties have not yet reached that

---

[20] *United States v. Modena*, 302 F.3d 626, 633 (6th Cir. 2002) (quoting *Air Safety, Inc. v. Roman Catholic Archbishop of Boston*, 94 F.3d 1, 8 (1st Cir. 1996).

[21] Moreover, CNG appears to have deleted or redacted a significant amount of text from Exhibit F, as bits and pieces of otherwise erased text appear beneath several of the search results.

[22] *United States v. Jackson*, 208 F.3d 633, 638 (7th Cir. 2000)

point in the litigation."[23]  What?  Google moved for summary judgment based, in part, on its evidence that the layout and appearance of its results pages do not create a likelihood of confusion.  CNG opposes this motion with evidence that distorts the layout and appearance of these pages, while arguing in its opposition to Google's motion for summary judgment that "consumers do not understand the difference between sponsored links and paid search results"[24] and that "Google places the Sponsored Links in the very location where many internet consumers expect to find the 'correct' answer to their search queries."[25]  The issue of whether Google's web pages create confusion is squarely before the Court.  In any case—and, not surprisingly, considering the erosion of confidence in the judicial process it would create—CNG cites no authority to support its supposed rule that altered evidence is admissible as proof on some issues but not on others.

Finally, some pages contained in Exhibit G in no way resemble a Google search results page, and could not possibly be printouts of these pages as CNG asserts.  Instead, Exhibit G contains pages that appear to be printouts from an "OnHandCash.com" website, but even that is not entirely clear because CNG has partially erased the website address at the bottom of the page.

Dated:  May 24, 2007.

Of Counsel:

Michael H. Page (pro hac vice)
Klaus H. Hamm (pro hac vice)
Keker & Van Nest LLP
710 Sansome Street
San Francisco, CA 94107
Telephone:  (415) 391-5400

/s/ Klaus H. Hamm
Kenneth F. Seibel (0025168)
Jacobs, Kleinman, Seibel and McNally
1014 Vine Street, Suite 2300
Cincinnati, OH 45202
Telephone:  (513) 281-6600

Attorneys for Defendant and Counterclaim-Plaintiff Google Inc.

---

[23] Response, 3.

[24] CNG Financial Corporation's Memorandum In Opposition To Google's Motion For Summary Judgment, 3 n.4.

[25] *Id.* at 13 n. 21.