UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| CNG FINANCIAL CORPORATION,<br><br>　　　Plaintiff/Counterclaim-Defendant,<br><br>　　v.<br><br>GOOGLE INC.,<br><br>　　　Defendant/Counterclaim-Plaintiff. | Case No. 1:06cv040<br><br>Chief Judge Sandra S. Beckwith<br>Magistrate Timothy S. Black<br><br>**GOOGLE INC.'S MOTION FOR LEAVE TO FILE ADDITIONAL AUTHORITY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |

　　　Defendant Google Inc. moves for leave to file additional authority in support of its Motion for Summary Judgment. The case, *FragranceNet.com, Inc. v. FragranceX.com, Inc.*, Case No. 06-CV-2255 (E.D. N.Y. June 12, 2007), is attached. The court denied plaintiff's motion to file an amended complaint stating claims based on the theory that triggering a Sponsored Link with a trademark violates the Lanham Act, holding that the proposed claims were futile. Among other things, the analysis emphasized that because "it is not unlawful to strategically place billboards or even store locations next to billboards or store locations of competitors," it is not unlawful to do the equivalent with targeted search engine advertising.

Dated: July 2, 2007

*Of Counsel:*
/s/ *Klaus H. Hamm*
Michael H. Page (*pro hac vice*)
Klaus H. Hamm (*pro hac vice*)
Keker & Van Nest LLP
710 Sansome Street
San Francisco, CA 94107
(415) 391-5400

　　　　　　　　　　　　　Kenneth F. Seibel (0025168)
　　　　　　　　　　　　　Jacobs, Kleinman, Seibel and McNally
　　　　　　　　　　　　　1014 Vine Street, Suite 2300
　　　　　　　　　　　　　Cincinatti, OH 45202
　　　　　　　　　　　　　(513) 281-6600

Attorneys for Defendant Google Inc.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

N° 06-CV-2225 (JFB) (AKT)

FRAGRANCENET.COM, INC.,

Plaintiff,

VERSUS

FRAGRANCEX.COM, INC., AND JOHN DOES 1-20,

Defendants.

MEMORANDUM AND ORDER
June 12, 2007

JOSEPH F. BIANCO, District Judge:

Plaintiff FragranceNet.com seeks leave to file a Third Amended Complaint pursuant to Fed. R. Civ. P. 15(a) to add state and federal claims based on FragranceX.com, Inc.'s ("defendant") alleged misuse of plaintiff's trademark (1) as a keyword to prompt defendant's appearance as a sponsored link in Google's search engine and (2) by inclusion of plaintiff's trademark in defendant's website metatags. Defendant opposes the amendment on futility grounds, arguing that the allegations cannot survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss. For the reasons that follow, plaintiff's motion to amend the complaint is denied as futile.

I. STANDARD

Federal Rule of Civil Procedure 15(a) allows a party to amend its pleadings by leave of the court, and further directs that "leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Indeed, "it is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Absent "undue delay, bad faith, or dilatory motive on the part of movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, *etc.* – the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also McCarthy*, 482 F.3d

at 200 ("A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party. However, '[o]utright refusal to grant the leave without any justifying reason for the denial is an abuse of discretion.'") (quoting *Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002)) (internal citation omitted).

Here, defendant does not argue that it would be unduly prejudiced or that there was undue delay in seeking amendment; rather, defendant asserts that the proposed amendment would be futile. "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (citing *Dougherty v. N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002)). Dismissal pursuant to Rule 12(b)(6) is warranted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004) (internal quotations omitted). Thus, the appropriate inquiry is "not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust. Co.*, 375 F.3d 168, 177 (2d Cir. 2004) (internal quotation marks omitted). In analyzing whether the proposed amendment is futile, the Court accepts all factual allegations set forth in the proposed amended complaint as true and draws all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enterp.*, 448 F.3d 518, 521 (2d Cir. 2006) (setting forth the standard for reviewing a motion to dismiss for failure to state a claim); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005) (same).

## II. DISCUSSION

Plaintiff's Proposed Third Amended Complaint alleges new claims for (1) federal trademark infringement pursuant to 15 U.S.C. § 1125(a) (Count II), (2) trademark dilution pursuant to 15 U.S.C. § 1125(c)(1) (Count III), (3) passing off pursuant to 15 U.S.C. § 1125(a) (Count IV), (4) common law trademark infringement (Count V), (5) violations of N.Y. Gen. Bus. Law § 133 (Count VI), (6) state law dilution in violation of N.Y. Gen. Bus. § 360-l (Count VII), (7) injury to business reputation (Count VIII)[1], (8) common law unfair competition and misappropriation (Count IX), (9) common law passing off (Count X), and (10) unjust enrichment (Count XI). Each of these claims arises from the alleged use of plaintiff's trademark by defendant as a keyword in search engines that triggers a "Sponsored Link"[2] and as a website metatag.[3] Defendant

---

[1] A claim of injury to business reputation and a claim of dilution are essentially equivalent – both constitute violations of N.Y. Gen. Bus. Law § 360-l and require the same elements of proof. *See* N.Y. Gen. Bus. Law. §360-l (2007); *Savin Corp. v. Savin Group*, 391 F.3d 439, 455 (2d Cir. 2004).

[2] A "Sponsored Link" is a form of advertising whereby a company bids on a keyword in order to trigger the appearance of that company's website next to the search results screen that appears based on a search of that keyword. (Proposed Third Am. Compl. ¶ 24.) *See also Merck & Co.*, 425 F. Supp. 2d 402, 408 (S.D.N.Y. 2006) ("Google, Yahoo, and others 'sell advertising linked to search terms, so that when a consumer enters a particular search term, the results page displays not only a list of Websites generated by the search engine program using neutral and objective criteria, but also links to Websites of paid

2

asserts that courts within the Second Circuit do not recognize Lanham Act "use" based on such allegations. Plaintiff concedes that, though most courts in other circuits allow a trademark infringement claim based on such use, district courts in this Circuit have not allowed these types of trademark infringement claims to go forward. Plaintiff contends, however, that the courts in this Circuit that have decided this issue were wrong or that such cases are factually distinguishable. (Pl.'s Mem at 8.) As discussed below, the Court disagrees with plaintiff and finds that such allegations cannot support claims sounding in the law of trademark infringement or unfair competition.

In order to prevail on a claim of trademark infringement pursuant to 15 U.S.C. § 1125(a), a plaintiff must establish that "(1) it has a valid mark that is entitled to protection under the Lanham Act; and that (2) the defendant *used the mark*, (3) in commerce, (4) 'in connection with the sale . . . or advertising of goods or services,' (5) without the plaintiff's consent." *1-800 Contacts, Inc. v. WhenU.com*, 414 F.3d 400 (2d Cir. 2005), *cert denied*, 126 S. Ct. 749 (2005) (quoting 15 U.S.C. § 1114(1)(a)) (emphasis added). Similarly, claims of dilution under 15 U.S.C. § 1125(c) require that a plaintiff show that "the defendant is making commercial use of the mark in commerce." *Savin Corp.*, 391 F.3d at 449; *Rescuecom Corp. v. Google, Inc.*, 456 F. Supp. 2d 393, 404 (N.D.N.Y. 2006) (dismissing dilution claim where plaintiff could prove no set of facts showing trademark "use" within the meaning of the Lanham Act) (citing *U-Haul Intern. Inc. v. WhenU.com, Inc.*, 279 F. Supp. 2d 723, 729 (E.D. Va. 2003) (entering judgment as a matter of law for the defendant on the plaintiff's claim of trademark dilution because the plaintiff was "unable to show that WhenU was using U-Haul's marks as defined in the Lanham Act")). Furthermore, "[t]he elements necessary to prevail on common law causes of action for trademark infringement and unfair competition mirror Lanham Act claims." *Info. Superhighway, Inc. v. Talk Amer., Inc.*, 395 F. Supp. 2d 44, 56 (S.D.N.Y. 2005) (citing *TCPIP Holding Co. v. Haar Communs. Inc.*, No. 99-CV-1825 (RCC), 2004 U.S. Dist. LEXIS 13543, at *18 (S.D.N.Y. July 19, 2004); *see also Pirone v. MacMillan, Inc.*, 894 F.2d 579, 582 (2d Cir. 1990) (requiring plaintiffs to establish same elements to prevail on a statutory or common law trademark infringement claim); *Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgmt., Inc.*, No. 04-CV-2293 (JFB) (SMG), 2007 WL 74304, at *13 n.18 (E.D.N.Y. Jan. 8, 2007) ("'To prevail on a claim for unfair competition under New York common law, a plaintiff must couple its evidence supporting liability under the Lanham Act with additional evidence demonstrating the defendant's bad faith.'") (quoting *Omicron Capital, LLC v. Omicron Capital, LLC*, 433 F. Supp. 2d 382, 395 (S.D.N.Y. 2006)); *Pfizer, Inc. v. Y2K Shipping & Trading, Inc.*, No. 00-CV-5204 (SJ), 2004 WL 896952, at *7 (E.D.N.Y. Mar. 26, 2004) ("The same analysis is used for common law trademark infringement and

---

advertisers (listed as 'Sponsored Links').'") (quoting *Gov't Employees Ins. Co. v. Google, Inc.*, 330 F. Supp. 2d 700, 702 (E.D. Va. 2004)), *motion for reconsideration denied by, Merck & Co. v. Mediplan Health Consulting, Inc.*, 431 F. Supp. 2d 425 (S.D.N.Y. 2006).

[3] Metatags are codes, invisible to the average user, that are used to provide Internet search engines with information about the content of a website which then provides the basis for ranking and displaying the web site in the results of a search that is conducted for a word or term contained in a metatag. (Proposed Third Am. Compl. ¶ 23.)

3

unfair competition cases as is used under federal law."). Likewise, "[t]he elements of palming off under New York common law are identical to the standards applied to Section 43(a) claims of the Lanham Act." *Marvullo v. Gruner + Jahr AG & Co*, No. 98-CV-5000 (RLC), 2001 U.S. Dist. LEXIS 266, at *22 (S.D.N.Y. Jan. 17, 2001); *C.V. Starr & Co. v. Am. Int'l Group Inc.*, No. 06-CV-2157 (HB), 2006 U.S. Dist. LEXIS 65605, at *11 n.8 (S.D.N.Y. Sept. 14, 2006) ("[A] claim for 'passing off' (also known as 'palming off') under New York law is governed by the same standards as a claim for unfair competition under the Lanham Act.").[4]

In *1-800 Contacts, Inc. v. WhenU.com*, the Second Circuit addressed whether 1-800 Contacts, Inc.'s ("1-800") trademark was infringed in violation of the Lanham Act, where defendant caused pop-up ads of 1-800's competitors to appear on the desktops of computer users who downloaded defendant's software, when those computer users accessed 1-800's website. 414 F.3d at 401. The Court reversed the district court's entry of a preliminary injunction and remanded for dismissal of plaintiff's trademark infringement claim, holding that plaintiff could not establish that its trademarks were "used" within the meaning of the Lanham Act. *Id.* at 403. In *1-800 Contacts*, defendant had placed 1-800's website address, not its trademark, in the directory that triggered the delivery of pop-up ads when a user accessed 1-800's website. *Id.* at 404. The Second Circuit recognized that "in order for [defendant] to capitalize on the fame and recognition of 1-800's trademark – the improper motive both 1-800 and the district

---

[4] Contrary to plaintiff's assertion, the "use" requirement applies to all of plaintiff's claims, including the claims asserted under New York law. As stated above, "[t]he standard for trademark infringement under the Lanham Act is similar to the standard for analogous state law claims." *Merck & Co.*, 425 F. Supp. 2d at 410 n.6 (S.D.N.Y. 2006). Although the Second Circuit has cautioned that "it is not clear that [N.Y. Gen. Bus. Law § 360-l] is coextensive with [the Trademark Dilution Revision Act of 2006]," the "use" requirement exists for plaintiff's proposed state law claims and is analyzed in the same manner as under the federal claims. *Starbucks Corp. v. Wolfe's Borough Coffee*, 477 F.3d 765, 766 (2d Cir. 2007) (per curiam). Specifically, though N.Y. Gen. Bus. § 360-l does not explicitly state "use in commerce," that statute requires infringement of a mark to receive injunctive relief for injury to business reputation or dilution. *See* N.Y. Gen. Bus. Law. § 360-l ("Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark."). Infringement of a mark under state law requires use of the trademark, and the definition of "use" under N.Y. Gen. Bus. Law § 360 mirrors the definition of "use" in the Lanham Act. *Compare* N.Y. Gen. Bus. Law § 360(h) *with* 15 U.S.C. § 1127; *see also Beverage Mktg. USA v. S. Beach Bev. Co.*, 799 N.Y.S.2d 242, 244 (N.Y. App. Div. 2005) ("A party asserting a claim for unfair competition predicated upon trademark infringement or dilution in violation of General Business Law §§ 360-k and 360-l must show that the defendant's use of the trademark is likely to cause confusion or mistake about the source of the allegedly infringing product."). In addition, N.Y. Gen. Bus. Law § 133 explicitly requires use. *See* N.Y. Gen. Bus. Law § 133 ("No person, firm, or corporation shall, with intent to deceive or mislead the public, assume, adopt or use."). Accordingly, because each of plaintiff's claims are premised on the alleged use of plaintiff's mark, all of plaintiff's state claims relating to defendant's alleged use of plaintiff's mark in keywords and metatags are examined under the same analysis applied under the Lanham Act and, thus, are similarly futile for the reasons discussed *infra*.

4

court ascrib[ed] to [defendant] – [defendant] would have needed to put the actual trademark on the [directory] list." *Id.* at 409. However, the Court noted, "[t]his observation . . . is not intended to suggest that inclusion of a trademark in the directory would necessarily be an infringing 'use.' We express no view on this distinct issue."[5] *Id.* at 409 n.11. However, in addressing 1-800's argument that the pop-up ads were likely to confuse computer users, the Court concluded:

> [T]his rationale puts the cart before the horse. Not only are "use," "in commerce," and "liklihood of confusion" three distinct elements of a trademark infringement claim, but "use" must be decided as a threshold matter because, while any number of activities may be "in commerce" or create a likelihood of confusion, no such activity is actionable under the Lanham Act absent the "use" of a trademark.

*Id.* at 412. The Court then explained:

> A company's internal utilization of a trademark in a way that does not communicate it to the public is analogous to a individual's private thoughts about a trademark. Such conduct simply does not violate the Lanham Act, which is concerned with the use of trademarks in connection with the sale of goods or services in a manner likely to lead to consumer confusion as to the source of such goods or services.

*Id.* at 409. The Lanham Act provides that, in connection with goods, a trademark is "used in commerce" when the trademark "is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale." 15 U.S.C. § 1127(1). In connection with services, a trademark is "used in commerce" when the trademark "is used or displayed in the sale or advertising of services and the services rendered in commerce." 15 U.S.C. § 1127(2). Thus, "'trademark use' . . . is[] one indicating source or origin." *Pirone*, 894 F.2d at 583.

Though plaintiff is correct that *1-800 Contacts* addressed Lanham Act "use" in a factual scenario different from the facts of the instant case, the reasoning of *1-800 Contacts* supports a conclusion that no Lanham Act "use" exists for the use of a trademark in a keyword or metatag.[6] It would be inconsistent

---

[5] The Court also distinguished the use of pop-up ads from the Ninth Circuit's decisions in *Brookfield Commc'n., Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036 (9th Cir. 1999), where the court held that defendant's use of a trademark in metatags constituted a "use in commerce" under the Lanham Act, and *Playboy Enters., Inc. v. Netscape Commc'n Corp.*, 354 F.3d 1020, 1024 (9th Cir. 2004), where the court held that an infringement claim could be based on defendant's insertion of unidentified banner ads on Internet user's search-results pages. *Id.* at 411. However, the Second Circuit noted, "in distinguishing cases such as *Brookfield*, [and] *Playboy*, we do not necessarily endorse their holdings." *1-800 Contacts*, 414 F.3d at 411 n.15.

[6] As recognized by plaintiff, in *1-800 Contacts*, the Court took great care to distinguish its facts from cases in other circuits that addressed Lanham Act use in the context of keywords and metatags, but the Court specifically declined to address whether such keyword and metatag use would constitute Lanham Act use.

5

with the reasoning set forth in *1-800 Contacts* to conclude that the use of trademarks in keywords and metags constitutes Lanham Act "use" where, as here, defendant does not place the trademark on any product, good or service nor is it used in any way that would indicate source or origin. Here, the use of plaintiff's trademark is strictly internal and, because such use is not communicated to the public, the use does not indicate source or origin of the mark.

In plaintiff's reply papers and at oral argument, plaintiff emphasized that this case should be analyzed under a theory of "passing off" and that the district courts within the Second Circuit that have addressed the issue have overlooked this theory. Passing off, which is also referred to as "palming off," is a situation in which "'A' sells its product under 'B's' name."[7] *Waldman Publ'g Corp. v. Landoll, Inc.*, 43 F.3d 775, 780 (2d Cir. 1994). However, contrary to plaintiff's assertion, this is not a case of "passing off." Plaintiff does not allege that defendant is selling its product under plaintiff's name, nor does plaintiff allege that defendant is *substituting* its website in response to a request for plaintiff's website; rather, according to the complaint and the exhibits attached thereto, a link to defendant's website appears both within the search results screen and "immediately proximate to the search results screen" upon a request for plaintiff's website. (Proposed Third Am. Compl. ¶¶ 23-24.) Thus, an individual is not only confronted with plaintiff's website, which appears first in the list of results, but also the website of defendant, among others. (Proposed Third Am. Compl. Ex. D.) In fact, counsel provided an insightful analogy at oral argument, relating to the commonly cited Coca-Cola/Pepsi "passing off" example used by courts and described *supra* in footnote 7. That is, the allegations in the instant case are comparable to a situation where an individual requests Coca-Cola and, rather than being handed a Coca-Cola (or a Pepsi, as would occur in a situation of "passing off"), the individual is presented with a menu of choices that includes not just Coca-Cola as requested, but also soft drinks made by Coca-Cola's competitors. Contrary to plaintiff's assertion, such a scenario does not constitute "passing-off." The competing products are not being sold under Coca-Cola's name, nor is the

---

[7] *See also* 4 McCarthy on Trademarks and Unfair Competition § 25:3 (4th Edition) which describes "palming off" as follows:

> A kind of conduct properly designated "palming off" is a seller knowingly substituting brand A in response to a request or order for brand B. Such "substitution" has often been characterized as "palming off."
>
> * * *
>
> Such substitution can be achieved by merely sending one product in response to an order for another, or can be achieved by placing a confusingly similar trademark on the substitution, or by other methods which misrepresent source to the buyer. Such direct "substitution" is illustrated in the many COCA-COLA cases where a restaurant's substitution of another product in response to a request for COKE or COCA-COLA has been labeled palming off, passing off or substitution. Similarly, the re-filling of genuine COCA-COLA bottles with a non-genuine cola-like beverage is another form of passing off.

(internal footnotes omitted).

individual being handed a non-Coca-Cola product under the guise that it is Coca-Cola; rather, the individual is simply being shown alternatives. Thus, no goods are being sold under "false pretenses." *See DaimlerChrysler AG v. Bloom*, 315 F.3d 932, 937 (8th Cir. 2003) ("[T]he primary flaw in [plaintiff's] argument is that it never identifies any good or service that [defendant] sold under false pretenses. As such, [plaintiff] cannot prevail on a passing off claim, even if asserted.").

In fact, the Court finds that the situation presented in the instant case is even further removed from a "passing off" situation than the menu of choices example. In *Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc.*, 202 F.3d 489, 493 (2d Cir. 2000), the Second Circuit explained:

> For consumers to buy things or gather information on the Internet, they need an easy way to find particular companies or brand names. The most common method of locating an unknown domain name is simply to type in the company name or logo with the suffix .com. If this proves unsuccessful, then Internet users turn to a device called a search engine. A search engine will find all web pages on the Internet with a particular word or phrase. Given the current state of search engine technology, that search will often produce a list of hundreds of web sites through which the user must sort in order to find what he or she is looking for. As a result, companies strongly prefer that their domain name be comprised of the company or brand trademark and the suffix .com.

(internal footnotes omitted). The menu of choices example refers more closely to a situation in which an internet user types FragranceNet.com into the web address space and, rather than being immediately taken to FragranceNet.com, is presented with a list of choices. This is not the allegation in the instant case. Here, plaintiff alleges that a search of plaintiff's mark using a search engine produces a list of choices. Thus, the "Sponsored link" is not triggered by typing FragranceNet.com into the *web address line*, but rather is only triggered when the user performs a *keyword search in the search engine*. Though, as the Second Circuit noted, "there are many people who use a search engine before typing in a company plus .com," *Sporty's Farm LLC*, 202 F.3d at 493 n.4, this does not mean that companies must be prohibited from internally using trademarks so that a search of a trademark in a search engine only produces a single result. In the world outside the Internet, individuals in search of a company or product are not blinded to competitive products. In other words, it is not unlawful to strategically place billboards or even store locations next to billboards or store locations of competitors. For example, an individual in search of a McDonald's restaurant will often be confronted with a Burger King restaurant. As long as Burger King did not mislead the consumer under false pretenses to its location, the mere fact that it decided to place itself in close proximity to a McDonald's, in an effort to potentially draw customers in search of fast food, is not "passing off." When these same marketing strategies are performed on the Internet, such strategies are not transformed into a "passing off" situation simply because the strategy is electronic.

Though the Court assumes "likelihood of

7

confusion" for purposes of this motion,[8] such confusion cannot be attributed to defendant's actions for purposes of trademark infringement liability where defendant is not "using" plaintiff's mark. Plaintiff has not alleged claims based on defendant's display of plaintiff's mark or claims based on similarity of the marks and resulting consumer confusion between the parties' respective marks; rather, plaintiff's claim is based exclusively on defendant's internal use of plaintiff's mark to obtain a display position in search results proximate to links to plaintiff's website.[9] "The owner of the mark acquires the right to prevent his goods from being confused with those of others and to prevent his own trade from being diverted to competitors through their use of misleading marks. 'There are no rights in a trade-mark beyond these.'" *Pirone*, 894 F.2d at 581 (quoting *Industrial Rayon Corp. v. Dutchess Underwear Corp.*, 92 F.2d 33, 35 (2d Cir. 1937)). With the technological development of the Internet, the landscape for the advertisement of goods and services has changed dramatically; however, internal uses of trademarks in cyberspace are not converted into Lanham Act "uses" merely because of the advancements in the effectiveness and scope of advertising that has come with development of the Internet.

Also relying on the Second Circuit's

---

[8] Defendant also asserts that plaintiff's claims are futile because plaintiff cannot establish likelihood of confusion. The Proposed Third Amended Complaint alleges, among other things, that "Defendant's infringing conduct has caused confusion among persons familiar with [plaintiff's] services," the "use of [the trademark] in metatags underlying Defendant's Web site to attract search engines to its Web site when an Internet keyword search is run for 'fragrance net' or other variations of [plaintiff's] mark is likely to cause confusion among members of the relevant consuming public." (Prop. Third. Am. Compl. ¶¶ 35-36.) In *Polaroid Corp. v. Polarad Elecs Corp.*, 287 F.2d 492 (2d Cir. 1961), the Second Circuit set out the test for determining whether likelihood of confusion exists as a factual matter. "However, an application of the so-called *Polaroid* factors on [a] motion to dismiss would be inappropriate because it would involve premature factfinding." *Eliya, Inc. v. Kohl's Dep't Stores*, No. 06-CV-195 (GEL), 2006 U.S. Dist. LEXIS 66637, at *10 n.2 (S.D.N.Y. Sept. 13, 2006); *see also Merck & Co.*, 425 F. Supp. 2d at 412 ("The likelihood of confusion test is a fact-intensive analysis that ordinarily does not lend itself to a motion to dismiss"); *Hearts on Fire Co., LLC v. L C Int'l Corp.*, No. 04-CV-2536 (LTS), 2004 U.S. Dist. Lexis 14828, at *12 (S.D.N.Y. July 30, 2004) ("[P]roof of a likelihood of confusion requires an analysis of the *Polaroid* factors, resolution of which would constitute premature fact finding inappropriate upon a motion to dismiss."). Plaintiff has clearly alleged likelihood of confusion and the Court must take such allegations as true for purposes of this motion.

[9] Interestingly, plaintiff's Proposed Third Amended Complaint alleges that "Defendant has failed and refused to use a negative match, a well-known and commonly used mechanism, to avoid having Defendant's Web site appear as a Sponsored Link when consumers run an Internet keyword search for 'Fragrance Net' or other variations of Plaintiff's mark." (Proposed Third Am. Compl. ¶ 27.) Though use of the mark to create a "negative match" would produce search results different from the use of plaintiff's mark to create a match, the "use" of plaintiff's mark in both instances is the same. Thus, it can be said that plaintiff attempts to have it both ways - plaintiff seeks to have defendant "use" plaintiff's mark to the extent it *prevents* defendant's website from appearing as a result of a search, but also argues that such "use" of the mark is Lanham Act use to the extent it *causes* defendant's website to appear upon conducting a search.

decision in *1-800 Contacts, Inc.*, three other courts within this Circuit have held that the purchase of a trademark as a "Sponsored Link" is not "use" within the meaning of the Lanham Act. In the first of these cases, *Merck & Co.*, 425 F. Supp. 2d 402, Judge Chin held that the trademark ZOCOR was not "used in commerce" when it was purchased by defendants, Canadian online pharmacies, as a keyword for "Sponsored Links" from internet search engines Google and Yahoo!. Specifically, the Court found that the use at issue in the search engine context – that is, use of the trademark to trigger defendants' websites as "Sponsored Links" – does not involve "placement" of the trademark "on any goods or containers or displays or associated documents" or use "to indicate source or sponsorship" and thus, is "not use of the mark in a trademark sense." *Merck & Co.*, 425 F. Supp. 2d at 415. As the court noted, this conclusion was consistent with the Second Circuit's recognition in *1-800 Contacts*, that "'[a] company's internal utilization of a trademark in a way that does not communicate it to the public is analogous to an individual's private thoughts about a trademark.'" *Id.* (quoting *1-800 Contacts*, 414 F.3d at 409). In denying plaintiff's motion for reconsideration, Judge Chin further explained:

> In *1-800 Contacts*, the Second Circuit emphasized that commercial use is not the equivalent of "use in commerce" for trademark purposes. It observed that, "while any number of activities may be 'in commerce' or create a likelihood of confusion, no such activity is actionable under the Lanham Act absent the 'use' of a trademark." 414 F.3d at 412. Trademark use "ordinarily" involves placing a trademark on goods or services to indicate that the goods or services emanate from or are authorized by the owner of the mark. *Id.* at 408.

> Here, in the search engine context, defendants do not "place" the ZOCOR marks on goods, containers, displays, or associated documents, nor do they use the marks to indicate source or sponsorship. Rather, the marks are used only in the sense that a computer user's search of the keyword "Zocor" will trigger the display of sponsored links to defendants' websites. This internal use of the keyword "Zocor" is not use of the mark in the trademark sense; rather, this use is more akin to the product placement marketing strategy employed in retail stores, where, for example, a drug store places its generic products alongside similar national brand products to capitalize on the latter's name recognition. *See id.* at 411. The sponsored link marketing strategy is the electronic equivalent of product placement in a retail store.[10]

---

[10] Judge Chin also noted that "defendants actually sell Zocor, albeit Zocor manufactured by Merck's Canadian affiliates. Hence, there was nothing improper – in the trademark sense – with their purchase of sponsored links tied to searches of the keyword 'Zocor.'" *Id.* Unlike in *Merck & Co.*, because plaintiff's mark is used as a website name and *plaintiff* does not sell any actual products bearing the mark, *defendant* does not actually sell any product bearing the mark at issue on its website; rather, when an individual types in plaintiff's trademark, according to plaintiff, that individual is looking for plaintiff's website. The Court finds that this minor distinction does not support a claim that defendant is using the plaintiff's trademark in the trademark sense because the use of the trademark as a metatag and

9

*Merck & Co.*, 431 F. Supp. 2d at 428 (citing *1-800 Contacts*, 414 F.3d at 408-412).

Similarly, in *Rescuecom Corp.*, the court held that the use of a trademark as a keyword was not "use" within the meaning of the Lanham Act. 456 F. Supp. 2d at 403. Specifically, after distinguishing *Playboy Enters.*, 354 F. 3d at 1024, *Brookfield Communications*, 174 F.3d at 1036, and *Bihari v. Gross*, 119 F. Supp. 2d 309 (S.D.N.Y. 2000), the court concluded that, "in the absence of allegations that defendant placed plaintiff's trademark on any goods, displays, containers, or advertisements, or used plaintiff's trademark in any way that indicates source or origin, plaintiff can prove no facts in support of its claim which demonstrate trademark use." *Id.* at 403. Plaintiff attempts to distinguish *Rescuecom* from the instant case because, in *Rescuecom*, the claims were alleged against Google, the party that *sold* the keyword, where as here, the claims are alleged against the party that *bought* the keyword. (Pl.'s Mem. at 11.) Plaintiff fails to explain how such a distinction changes the analysis and, in any event, the Court finds that it is a distinction without a difference as the issue is whether the trademark is placed on any goods or containers or used in such a way as to indicate source or sponsorship. In other words, the Court fails to see how the analysis in connection with *the sale* of a trademark as a keyword would be different from *the purchase* of a trademark as a keyword.

Most recently, on May 9, 2007, Magistrate Judge Reyes held that the use of a plaintiff's trademark as a metatag and the purchase of plaintiff's trademark for a Yahoo! search algorithm were not "uses" within the meaning of the Lanham Act and granted defendant's motion to dismiss plaintiff's claims of trademark infringement, unfair competition and dilution under the Lanham Act and common law unfair competition. *Site Pro-1, Inc. v. Better Metal, LLC*, No. 06-CV-6508 (ILG) (RER), 2007 U.S. Dist. LEXIS 34107, at *14 (E.D.N.Y. May 9, 2007). In so holding, the court recognized that "courts in other circuits have generally sustained such claims," but recognized that "courts in this Circuit . . . have largely rejected such claims." *Id.* at *6-*7 (collecting cases). Persuaded by the reasoning in *Merck & Co.* and *Rescuecom*, "as well as by the underlying rationale of *1-800 Contacts*," the court determined that "[t]he key question is whether the defendant placed plaintiff's trademark on any goods, displays, containers, or advertisements, or used plaintiff's trademark in any way that indicates source or origin." *Id.* at *13. Because the complaint contained no such allegation, the court held that Lanham Act "use" was not alleged. *Id.* ("Indeed, the search results submitted as an exhibit to the complaint make clear that [defendant] did not place plaintiff's . . . trademark on any of its goods, or any advertisements or displays associated with the sale of its good. Neither the link to [defendant's] website nor the surrounding text mentions [plaintiff] or [plaintiff's] trademark. The same is true with respect to [defendant's] metadata, which is not displayed to consumers.").

---

as a keyword is exclusively internal and does not appear on defendant's "goods or containers or displays or associated documents" and defendant's appearance as a result of searches of plaintiff's mark does not "in any way indicate source or sponsorship." *Merck & Co.*, 425 F. Supp. 2d at 415; *see e.g., Rescuecom.*, 456 F. Supp. 2d at 403 n.6 (dismissing trademark infringement and false designation of origin claims where plaintiff's competitors did not sell goods or services that used the mark at issue).

10

In *Hamzik v. Zale Corp./Delaware*, No. 06-CV-1300 (TJM), 2007 U.S. Dist. LEXIS 28981, at *8 (N.D.N.Y. Apr. 19, 2007), the Court agreed with the reasoning in *Rescuecom* and *Merck*, but denied the motion to dismiss, because a search of plaintiff's trademark not only returned defendant's website among the search results, but plaintiff's trademark also appeared next to defendant's name, demonstrating that plaintiff's trademark could be displayed in a way indicating an association with defendant. *Id.* at *3 ("Thus, unlike *Rescuecom* and *Merck & Co.*, in this case there may be facts demonstrating that Plaintiff's trademark does appear on the displays associated with [defendant's] goods or documents associates with the goods or their sale."). Here, there is no allegation that links to defendant's website appear in a way that contains plaintiff's trademark.

Plaintiff would have this Court reject the holdings in *Merck & Co.*, *Rescuecom* and *Site Pro-1, Inc.*, and rely instead on the conclusions reached in other circuits. *See e.g., Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1249 (10th Cir. 2006) (affirming denial of judgment as a matter of law on Lanham Act claims based on the use of trademarks in metatags); *Promatek Indus., LTD v. Equitrac Corp.*, 300 F.3d 808, 814 (7th Cir. 2002) (affirming district court's grant of a preliminary injunction where plaintiff alleged Lanham Act claim based on defendant's use of the mark in metatags); *Brookfield Commc'ns., Inc.*, 174 F.3d at 1066 (holding that defendant's use of trademarks in metatags constituted trademark infringement); *J.G. Wentworth, S.S.C. Ltd. P'ship v. Settlement Funding LLC*, No. 06-CV-0597 (TNO), 2007 U.S. Dist. LEXIS 288, at *17 (E.D. Pa. Jan. 4, 2007) (concluding that use of a mark in keywords and metatags is Lanham Act "use"); *Buying for the Home, LLC v. Humble Abode, LLC*, 459 F. Supp. 2d 310, 323 (D. N.J. 2006) (holding that purchase of keyword is Lanham Act use); *Edina Realty, Inc. v. TheMLSonline.com*, No. 04-CV-4371 (JRT), 2006 U.S. Dist. LEXIS 13775, at *9-*10 (D. Minn. Mar. 20, 2006) (same). Several of these cases conflate the issue of "use" and "likelihood of confusion." Such analysis is in stark contrast to the Second Circuit's instruction in *1-800 Contacts* that "use" and "likelihood of confusion" are two distinct elements of a Lanham Act claim and that to consider "likelihood of confusion" without first independently analyzing the "use" element, "puts the cart before the horse." *1-800 Contacts*, 414 F.3d at 412. Furthermore, the reasoning of these opinions is inconsistent with *1-800 Contacts* holding that "internal utilization of a trademark in a way that does not communicate it to the public" does not violate the Lanham Act. 414 F.3d at 409.

Thus, this Court agrees with the sound reasoning of the courts in *Merck & Co.*, *Rescuecom* and *Site Pro-1, Inc.* and reaches the same conclusion. Accordingly, the Court finds that plaintiff's proposed claims, based on defendant's alleged use of plaintiff's trademark as a keyword in Google and as a metatag on its website, cannot survive a motion to dismiss. Therefore, plaintiff's motion to amend the complaint is denied, as the proposed amendments would be futile.[11]

---

[11] Defendants also assert that all of plaintiff's claims are futile on the basis that plaintiff's alleged trademark is generic or highly descriptive as a matter of law, and thus, not protectable. *See, e.g., CES Publ'g Corp. v. St. Regis Publ'ns, Inc.*, 531 F.2d 11 (2d Cir. 1975) (holding that "Consumer Electronics" was generic and not protectable as a matter of law); *McSpadden v. Caron*, No. 03-CV-6285 (CJS), 2004 WL

### III. CONCLUSION

For the foregoing reasons, plaintiff's motion to amend the complaint is denied as futile.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: June 12, 2007
Central Islip, New York

\* \* \*

The attorneys for plaintiff are Robert L. Sherman, Esq., and Rebecca Myers, Esq., Paul, Hastings, Janofsky & Walker LLP, 75 East 55th Street, New York, New York 10022. The attorney for defendant is David Rabinowitz, Esq., Moses & Singer LLP, 405 Lexington Ave., New York, New York 10174.

---

2108394 at *13 (W.D.N.Y. Sept. 20, 2004) (finding "usamedicine.com" merely descriptive); *InterState Net Bank v. NetB@nk, Inc.*, 221 F. Supp. 2d 513 (D.N.J. 2002) (finding "NETBANK" generic); *Allied Maint. Corp. v. Allied Mech. Trades, Inc.*, 369 N.E.2d 1162, 1166 (N.Y. 1977) ("[O]nly those trade names which are truly of distinctive quality or which have acquired a secondary meaning in the mind of the public should be entitled to protection under the anti-dilution statute."); *see also Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976) ("[N]o matter how much money and effort the user of a generic term has poured into promoting the sale of its merchandise and what success it has achieved in securing public identification, it cannot deprive competing manufacturers of the product of the right to call an article by its name."). Because plaintiff's claims are futile for the reasons stated above on the issue of use, the Court declines to address whether the plaintiff's mark is protectable.