UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| CNG FINANCIAL CORPORATION,<br><br>    Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>GOOGLE INC.,<br><br>    Defendant/Counterclaim-Plaintiff. | Case No. 1:06cv040<br><br>Chief Judge Sandra S. Beckwith<br>Magistrate Timothy S. Black |

## GOOGLE INC.'S MOTION TO EXCLUDE

## TESTIMONY OF PLAINTIFF'S EXPERT MICHAEL MAZIS

**TABLE OF CONTENTS**

Page

I. NOTICE OF MOTION ..................................................................................................1

II. INTRODUCTION ..........................................................................................................1

III. FACTS ............................................................................................................................2

IV. ARGUMENT ..................................................................................................................4

    A. A survey that does not test its hypothesis produces meaningless results and should be excluded. ..............................................................................................4

    B. Mazis' survey does not test an issue relevant to this litigation, and must be excluded. ..................................................................................................6

V. CONCLUSION ...............................................................................................................9

# TABLE OF AUTHORITIES

## FEDERAL CASES

*AutomobileZone, Inc. v. Tandy Corp*,
 373 F.3d 786 (6th Cir. 2004) .................................................................................. 5

*Cumberland Packing Corp. v. Monsanto Co.*
 32 F. Supp. 2d 561 (E.D. N.Y. 1999) .................................................................. 5, 6

*Daubert v. Merrell Dow Pharms. Inc.*
 509 U.S. 579 (1993) ............................................................................................... 4

*Hill's Pet Nutrition, Inc. v. Nutro Products, Inc.*
 258 F. Supp. 2d 1197 (D. Kan. 2003) .................................................................... 6

*Johnson v. Manitowoc Boom Trucks, Inc.*
 484 F.3d 426 (6th Cir. 2007) ................................................................................. 4

*Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*
 452 F. Supp. 2d 772 (W.D. Mich. 2006) ............................................................... 4

*Major League Baseball Properties, Inc. v. Sed Non Elet Denarius, Ltd.*
 817 F. Supp. 1103 (S.D. N.Y. 1993) ..................................................................... 5

*Simon Property Group, L.P. v. mySimon, Inc.*
 104 F. Supp. 2d 1033 (S.D. Ind. 2000) .............................................................. 5, 8

*Toys "R" Us, Inc. v. Canarsie Kiddie Shop, Inc.*
 559 F. Supp. 1189 (E.D. N.Y. 1983) ..................................................................... 5

*U.S. v. Langan*
 263 F.3d 613 (6th Cir. 2001) ................................................................................. 4

## STATE CASES

*Government Employees Insurance Co. v. Google Inc.*
 2005 WL 1903128 (E.D. Va. 2005) ...................................................................... 8

*Powerhouse Marks LLC v. Chi Hsin Impex, Inc.*
 2006 WL 897254 (E.D. Mich. 2006) .................................................................... 5

## MISCELLANEOUS

Shari Seidman Diamond, Reference Guide on Survey Research, *Reference Manual on Scientific Evidence*, 229, 237 ..................................................................4

Federal Rule of Civil Procedure 26(a)(2) ..................................................................2

Federal Rules of Evidence and Local Rules 7.1 ..................................................................1

398589.01

I.     NOTICE OF MOTION

Defendant and Counterclaim-Plaintiff Google Inc. hereby moves to exclude testimony of plaintiff's expert Dr. Michael Mazis. Google brings this motion pursuant to the Federal Rules of Evidence and Local Rules 7.1 and 7.2. This motion is based upon the Memorandum of Points and Authorities set forth below, the Declaration of Klaus H. Hamm ("Hamm Decl.") filed herewith, all pleadings, papers and files in this action, and any other factors that this Court may wish to consider.

II.    INTRODUCTION

Three times during his deposition, CNG's expert on trademark confusion, Dr. Michael Mazis, admitted that his expert report does not consider whether Google's triggering of Sponsored Links with CNG's trademark "Check 'n Go" causes consumers to be confused about whether CNG is the source of those links. This admission, while warranted, is staggering and means that Mazis' report does not touch upon issues relevant to this case. CNG's theory in this action is that when Google triggers ads with CNG's trademarks, it causes confusion about the source of those ads in violation of the Lanham Act. Yet somehow Mazis' survey (which is the subject of his expert report) failed to test whether this theory is true: When asked at deposition if "the variable that you were purporting to measure in this study is the use of 'Check 'n Go' as a search term," Mazis responded "No." Hamm Decl. Ex. A (Mazis Depo.) 19:16-19. Later, when asked: "The purpose of your test wasn't to find out whether the use of the trademark as a search term caused confusion," Mazis again responded "No." Id. at 57:18-21. Finally, he testified that "the survey ... wasn't designed to sort out the impact of different keywords." Id. at 106:14-17.

The reason Mazis had to admit that he did not test confusion caused by use of CNG's trademark as a search term was that his survey did not have a control to isolate this potential cause of confusion. Instead, his survey controlled for—and thus tested—whether consumers are more likely to think that CNG is the source of ads for payday lending services than ads for life insurance, an issue that is neither controversial nor relevant in this case.

Mazis' report and his anticipated testimony about it thus have nothing to do with the

1

issues in this case, and they should be excluded under Federal Rule of Evidence 702 because they will not "assist the trier of fact to understand the evidence or to determine a fact in issue." CNG has sued Google because it alleges that Google's "sale of the Check 'N Go Mark as a keyword ... is likely to cause confusion." Complaint ¶ 35. Data showing that consumers are more likely to think that CNG is the source of ads for payday lending services than for unrelated services does not help to prove this allegation. First, this data is not surprising given that CNG provides payday lending services and every survey respondent knew this fact before taking the survey. More importantly, CNG's competitors may advertise their services without implicating the Lanham Act, even if some people are confused by the ads. Only if the ads' use of CNG's trademark causes confusion does the Lanham Act come into play. As Mazis himself repeatedly acknowledges, his comparison of consumer reactions to ads for payday lending services with consumer reactions to ads for life insurance provide no information regarding any confusion caused by the use of CNG's trademark as a keyword trigger.

### III.    FACTS

CNG offers payday lending services under the name Check 'n Go. The first paragraph of its complaint alleges that this action "aris[es] from Google's practice of selling CNG's federally registered 'Check 'N Go' service mark and other similar names and phrases as keyword search terms to advertisers on Google's search engine website." Complaint ¶ 1. To support this claim, CNG has submitted, pursuant to Federal Rule of Civil Procedure 26(a)(2), the Expert Report of Michael B. Mazis, Ph.D., which describes a likelihood of confusion survey performed under Mazis' supervision for purposes of this litigation. Hamm Decl. Ex. B (Mazis Report). In accordance with CNG's theory of trademark infringement, the stated objective of Mazis' survey is to test for confusion "caused by Google's 'AdWords' policy, which permits competitors of Check 'n Go to select the term 'Check 'n Go' as a keyword trigger for advertisements that appear as sponsored links on the Google search results page." *Id.* ¶ 10.

Mazis' report acknowledges that, when testing a cause and its effects, a control is

398589.01

necessary in order to make "causal inferences about the effect of a trademark ... become clear and unambiguous," *Id.* ¶ 15 (quoting "Reference Guide on Survey Research"), and in deposition he explained that the purpose of a control "is to ferret out or remove what's called noise ... so that the researcher can know with greater certainty that the variable that's being isolated actually caused a certain result." Hamm Decl. Ex. A (Mazis Depo.) 19:9-15.

While Mazis used a control, it did not isolate the effect of using CNG's trademark as a keyword trigger. Interviewers instructed participants in both the control and test cell group to type "CHECK N GO" into the search box of a Google page and to click on the search button. Hamm Decl. Ex. B (Mazis Report) ¶ 14 and Ex. D thereto. The factor that varied was that the survey returned different sets of Sponsored Links adjacent to the natural search results. *Id.* The results that appeared to the test group included ads for payday lending services, while the control group members saw ads for penny stock investing and for life insurance. *Id.* Mazis' report explained that the purpose of this control "was to determine whether the presence of a sponsored link for companies offering payday loans (such as, 'Payday Check to Go') was a key reason for consumers' responses or whether 'noise' was the likely cause of consumers' responses." *Id.* ¶ 15.

In deposition, despite initially making the contradictory claim that his survey tested "the effect of 'Check 'N Go' being the search term," Hamm Decl. Ex. A (Mazis Depo.) 7:9-11, in later questioning Mazis repeatedly admitted that he did not in fact do so:

- When asked if he did anything to determine whether the confusion would be the same if the search term were "payday loans," Mazis responded "No. That would be a different study." *Id.* at 18:11-19.

- When asked if "the variable that you were purporting to measure in this study is the use of 'Check 'n Go' as a search term," Mazis responded "No." *Id.* at 19:16-19.

- Later, when asked: "The purpose of your test wasn't to find out whether the use of the trademark as a search term caused confusion," Mazis again responded "No." *Id.* at 57:18-21.

- Finally, he testified that: "The 'Check 'n Go' is constant in the test group and the control group. So the survey was not designed to – It didn't vary the keyword, so it didn't – it

3

wasn't designed to sort out the impact of different keywords." *Id.* at 106:12-17.

Instead of testing confusion caused by the use of a trademark as a search term, Mazis attempted to test whether certain ad text caused confusion. As Mazis conceded, the survey "was only designed to say, given a certain keyword and given sponsored links, what is the impact of competitive search results versus noncompetitive sponsored links." *Id.* at 106:17-20.

## IV. ARGUMENT

Federal Rule of Evidence 702 requires the trial court to act as a gatekeeper to the admission of expert opinion testimony, including surveys offered as evidence in trademark cases. To do this the court must proceed in two steps, considering both the relevance and the reliability of the proffered expert's testimony. *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426 (6th Cir. 2007).

### A. A survey that does not test its hypothesis produces meaningless results and should be excluded.

The Supreme Court characterizes the relevance requirement for expert testimony as the "fit" between the testimony and an issue in the case. *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 591 (1993). As a result, a district court must "consider whether the proposed scientific evidence fits the issue to which the expert is testifying" and "may admit the evidence only if such testimony will assist the trier of fact in understanding the evidence or in determining a fact at issue." *U.S. v. Langan*, 263 F.3d 613, 623 (6th Cir. 2001). The party advancing the expert testimony bears the burden of showing that it is relevant to advancing a claim or defense. *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 452 F. Supp. 2d 772, 778 (W.D. Mich. 2006).

The mere fact that a trademark survey is prepared by an expert for a particular litigation does not make the survey relevant to that litigation. Instead, as the *Reference Manual on Scientific Evidence* provides, because "surveys do not always achieve their stated goals ... the content and execution of a survey must be scrutinized even if the survey was designed to provide relevant data." Shari Seidman Diamond, Reference Guide on Survey Research, *Reference Manual on Scientific Evidence*, 229, 237 (Federal Judicial Center 2d ed.). Simply put, a

4

trademark "survey should be excluded if ... the court finds the survey irrelevant."[1] *Powerhouse Marks LLC v. Chi Hsin Impex, Inc.*, 2006 WL 897254, *3 (E.D. Mich. 2006) (excluding confusion survey that did not consider views of relevant population). Thus when considering the issue of consumer confusion in *AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786 (6th Cir. 2004), the Sixth Circuit refused to consider a survey that provides no "evidence of actual confusion." It rejected the survey "[e]ven on the undeserved assumption that" it was "methodologically sound" because it tested the strength of the asserted mark and "[n]o aspect of the study actually tested whether randomly chosen survey participants were confused[.]" *Id.* at 799.

The use of a proper control can make or break the relevance of a survey intended to test a causal proposition. In scientific experiments—including trademark surveys—controls are used to isolate the effect of the element that one is testing from all other influences. While surveys designed to describe consumer beliefs do not necessarily require a control, surveys designed to test cause and effect—such as how a trademark influences consumers perceptions of a product—need a control to avoid "rendering the data meaningless and having no evidentiary value." *Major League Baseball Properties, Inc. v. Sed Non Elet Denarius, Ltd.*, 817 F.Supp. 1103, 1124 (S.D. N.Y. 1993), *vacated pursuant to settlement,* 859 F.Supp. 80 (S.D. N.Y. 1994). Indeed, the *Reference Manual on Scientific Evidence* devotes a chapter to this topic, entitled "If the Survey Was Designed to Test a Causal Proposition, Did the Survey Include an Appropriate Control Group or Question?" As one district court framed this issue: "In a test of a causal proposition the appropriate use of controls is crucial." *Cumberland Packing Corp. v. Monsanto Co.*, 32 F.Supp.2d 561, 574 (E.D. N.Y. 1999). This makes sense because while a test group may detect

---

[1] Although courts often admit flawed surveys and then ignore them, sometimes it is just not "fair" to treat a survey's fundamental flaws as "going only to the weight of the evidence," when the problems are "so basic as to strip the proposed survey of any significant probative value." *Simon Property Group, L.P.. v. mySimon, Inc.*, 104 F. Supp. 2d 1033, 1041 (S.D. Ind. 2000). Indeed, in a bench trial, admitting an irrelevant survey and then ignoring it signals a violation of the Federal Rules of Evidence because when that happens it must "be assumed that the judge either admitted the evidence knowing it to be improper or, having mistakenly thought the evidence to be admissible, later discovered his mistake and disregarded that evidence." *Toys "R" Us, Inc. v. Canarsie Kiddie Shop, Inc.*, 559 F. Supp. 1189, 1202 (E.D. N.Y. 1983) (excluding trademark survey).

5

confusion, only with a control group can a researcher isolate and identify the source of that confusion.

Of course, simply having a control is not enough. Because the point of a control is to isolate and provide meaningful data about a particular cause, to make a survey relevant to a case, the control must focus on a cause that is relevant in that case. Put simply, controls "must sufficiently account for factors legally irrelevant to the requisite confusion[.]" *Id.* at 574-75. If the controls fail to do so, then the survey is not relevant. The court in *Cumberland Packing* considered a survey that included four controls. None tested the correct variable. The survey attempted to measure confusion caused by similar trade dress, but failed to control for the fact that the two products at issue had similar names, which also could have been a source of confusion. As a result the court excluded the survey, stating that "[g]iven the inadequacy of the controls, one cannot determine from the data the extent of the relevant type of confusion ..." *Id.* at 575; *see also Hill's Pet Nutrition, Inc. v. Nutro Prods., Inc.*, 258 F.Supp. 2d 1197, 1210 (D. Kan. 2003) (excluding survey because, among other things, it "was conducted without appropriate controls").

**B.    Mazis' survey does not test an issue relevant to this litigation, and must be excluded.**

Mazis' survey is not relevant to this litigation because, by failing to utilize a proper control, it does not consider whether Google's use of CNG's mark as a keyword trigger causes consumer confusion. Instead, both the test group and the control group were shown stimuli that contained CNG's mark as a keyword trigger, making it impossible for the survey to provide information about confusion caused by the keyword trigger. The test group and control stimuli varied only insofar as the test group was shown ads for CNG's payday lending competitors, while the control group was shown ads for penny stocks and life insurance. Neither set of ads contained CNG's trademark; the only place the trademark appeared was as a search term and this appearance was exactly the same for both the test and control samples. As a result, the survey tested whether consumers are more likely to think that CNG is the source of ads for payday

6

lending services than it is of ads for penny stocks or life insurance. Not surprisingly, consumers are more likely to think that CNG—which is, after all, a payday lending company—is the source of ads promoting payday lending services. This result is especially unsurprising because only people who already knew that CNG was a payday lending company were allowed to take the survey. Hamm Decl. Ex. B (Mazis Report) ¶ 11 (universe of survey consists of people who, *inter alia*, "would consider taking out a payday loan or cash advance from Check 'N Go").

In its opposition to Google's motion for summary judgment, CNG tried to justify its flawed approach by arguing that "CNG only challenges Googles' right to permit its *competitors* to utilize its trademark to trigger sponsored links on the Check N Go search pages" and that as a result it made sense to compare confusion caused by competitive ads that do not contain CNG's trademark with confusion caused by non-competitive ads that also do not contain CNG's trademark. CNG's Opp'n to Summary Judgment at 23 (emphasis in original). CNG is flat wrong because although more people were confused by the competitive ads than by the non-competitive ads, the survey does not provide any information about whether the CNG trademark as a trigger for the ads caused this confusion.

Although Mazis never admits point blank that he tested the wrong issue, he repeatedly concedes that he did not test whether Google's use of CNG's trademark as a keyword trigger for ads causes confusion. The report itself explains that "the purposes of using a control cell was to determine whether the presence of a sponsored link for companies offering payday loans (such as, 'Payday Check to Go') was a key reason for consumers' responses or whether 'noise' was the likely cause of consumers' responses." Hamm Decl. Ex. B (Mazis Report) ¶ 15. As Google's expert Dr. Itamar Simonson states, "the stated 'purpose' of the control was completely misguided; this purpose would have made sense only if CNG were claiming that Google should not allow competitors with Check 'N Go to advertise on any webpage with search results."[2]

---

[2] Google expects CNG will repeat its argument that because Google's expert criticized CNG's survey but did not conduct one himself, CNG's survey must be relevant and inadmissible. This is a fallacy. Taken to its logical extreme, this argument means that if Dr. Mazis had considered and proven that "clowns are funny" this study would be relevant to the issue of trademark confusion if Google's expert criticized this

7

Hamm Decl. Ex. C (Simonson Report) ¶ 22. In fact, as detailed in the above fact section, Mazis repeatedly conceded that his survey did not attempt to "find out whether the use of the trademark as a search term caused confusion." Hamm Decl. Ex. A (Mazis Depo.) 57:18-21.

Mazis' failure to design a control that would have allowed him to consider the relevant issue in this case is baffling given the facts that designing a relevant control would have been straightforward and that Mazis knew that a federal district court already insisted upon such a control in a very similar case. First, Mazis acknowledged that he could have controlled for confusion caused by the use of CNG's trademark as a keyword trigger, stating that "certainly technically it could have been done[.]" Hamm Decl. Ex. A (Mazis Depo) 57:3-4. Simonson explained, in more detail, how to design a proper control:

> to determine whether respondents would have been as likely to click on the presented sponsored links after entering a search term other than "Check 'n Go," the Mazis Survey could have simply asked a control group to enter a generic search term such as "payday loans," "cash checks," or "cash advance." If the percentage of respondents in that control group (presented with the same sponsored links and asked the same questions), who indicated they would click on one of the sponsored links, were similar to the corresponding percentage in the "test group" (i.e., the group that entered the term "Check 'n Go"), then we would conclude that the search term did not create confusion.

Hamm Decl. Ex. C (Simonson Report) ¶ 25.

Mazis' error is also surprising given that he had *Government Employees Insurance Co. v. Google Inc.*, 2005 WL 1903128 (E.D. Va. 2005) ("GEICO"), to guide him. That opinion focused on two issues: (1) whether "advertisements that do not reference GEICO's trademark in their text or headings violate the Lanham Act, even though Google's advertising program enables these ads to appear when a user searches on GEICO's trademarks" and (2) "whether advertisements that appear when a user searches on GEICO's trademarks and do reference those marks in their hearings or text violate the Lanham Act." *Id.* at *1 The first issue is essentially the same issue Mazis set out to test regarding the CNG marks. Regarding that first issue, the *GEICO*

---

study but did not offer his own. Indeed, courts often rely on criticism of an expert, without more, to reject a survey. *See, e.g., Simon Property Group*, 104 F. Supp. 2d 1033 (relying on criticism of Itamar Simonson to reject proposed survey about trademark confusion on the Internet.).

court held that the submitted trademark survey did not provide any evidence "to establish that advertisements that do not reference GEICO's trademarks in their text or headings violate the Lanham Act, even though Google's advertising program enables those ads to appear when a user searches on GEICO's trademarks." *Id.* One of the key reasons why the survey did not measure anything relevant to the case was, like the test and control stimuli in the present case, the control and test stimuli in *GEICO* both used "GEICO" as a search term. The court thus held that the survey did not measure the relevant confusion because "the control retained the use of 'GEICO' as a keyword, which itself was alleged to be a source of confusion." *Id.* at *5. Mazis was aware that the court considered this failing a "threshold" problem. Nevertheless, Mazis repeated the error. He explained that he ignored the opinion because he felt it was wrong: "I don't know what the judge meant here because it's just – it just – it's just not correct. You know, it just – Sometimes we see those statements in opinions and we wonder where they came from. And this is one of those ... that particular statement just—is just—is incorrect. The judge just misspoke." Hamm Decl. Ex. A (Mazis Depo.) 54:20-55:7.

As explained above, the judge in *GEICO* got it right. A control that does not isolate the cause that the researcher wants to examine is useless. Mazis admits that he did not isolate or examine the causal effect of triggering ads with CNG's trademark. Because this is the only possible way that Google uses CNG's mark to cause confusion, Mazis' testimony cannot provide any relevant information in this case and must be excluded.

## V.   CONCLUSION

For the foregoing reasons, the Court should grant Google's motion to exclude Mazis' testimony.

Dated: July 13, 2007

*Of Counsel:*
/s/ *Klaus H. Hamm*
Michael H. Page (*pro hac vice*)
Klaus H. Hamm (*pro hac vice*)
Keker & Van Nest LLP
710 Sansome Street
San Francisco, CA 94107
(415) 391-5400

Kenneth F. Seibel (0025168)
Jacobs, Kleinman, Seibel and McNally
1014 Vine Street, Suite 2300
Cincinnati, OH 45202
(513) 281-6600

Attorneys for Defendant Google Inc.

398589.01

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was electronically filed with the Clerk of the Courts using the CM/ECF system which will send notification of such filing to the following, this 13th day of July, 2007:

Ann Gallagher Robinson
Frost Brown Todd LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, OH 45202-4182
arobinson@fbtlaw.com


Barry D. Hunter
Frost Brown Todd LLC
250 West Main Street, Suite 2700
Lexington, KY 40507
bhunter@fbtlaw.com


/s/ Klaus H. Hamm
Attorney for Defendant/Counter Plaintiff

399085.01