UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| CNG FINANCIAL CORPORATION,<br><br>Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>GOOGLE INC.,<br><br>Defendant/Counterclaim-Plaintiff. | Case No. 1:06cv040<br><br>Chief Judge Sandra S. Beckwith<br>Magistrate Timothy S. Black<br><br>**GOOGLE INC.'S MOTION TO EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERT STEPHEN SCHALLER** |

## I. NOTICE OF MOTION

Defendant and Counterclaim-Plaintiff Google Inc. hereby moves to exclude testimony of plaintiff's "expert" Stephen Schaller. Google brings this motion pursuant to the Federal Rules of Evidence and Local Rules 7.1 and 7.2. This motion is based upon the Memorandum of Points and Authorities set forth below, the Declaration of Klaus H. Hamm ("Hamm Decl.") filed in support of Google's motion to exclude Mr. Schaller's testimony, all pleadings, papers and files in this action, and any other factors that this Court may wish to consider.

## II. INTRODUCTION

By seeking to have Stephen Schaller testify about whether CNG and its competitors comply with various lending and consumer protection laws, CNG attempts to have **its own general counsel**, rather than this Court, determine the law. This effort is improper and the Court should not permit Schaller to testify as an expert. Moreover, the laws that CNG wants to put at issue through Schaller's testimony have nothing to do with any issues in this case. CNG would have Schaller testify about state lending laws throughout the country. On the other hand, none of the claims CNG assert in this case have anything to do with state lending laws. Federal Rule of Evidence 702 forbids experts from providing irrelevant testimony (and Rule 402 forbids anyone

1

from doing so). As a result, the Court should not let Schaller testify as an expert in this case.

### III.   FACTS

On December 15, 2006, CNG disclosed that it intended to proffer the testimony of its in-house general counsel Stephen Schaller "about the regulations governing the practices of the advertisers whose 'Sponsored Link' advertisements are triggered by their use of CNG's trademarks as AdWords Keywords." Hamm Decl. Ex. A (CNG's Rule 26(a)(2) disclosure). Because Schaller is neither a third party expert nor a CNG employee whose duties "regularly involve giving expert testimony," Rule 26(a)(2) did not require CNG to provide an expert report detailing his proposed testimony, and CNG did not provide one. In an interrogatory that Google subsequently served on CNG seeking "in detail, any expert opinion [CNG] intend[s] to present at trial through the testimony of Stephen Schaller," CNG responded:

> Mr. Schaller is expected to testify about the regulatory framework in which Check 'n Go Online operates, and the steps followed by Check 'n Go Online in complying with those governing laws. He will testify, *inter alia*: (1) that Check 'n Go Online makes single-installment consumer loans ("payday loans") only to those borrowers who reside in a state in which Check 'n Go Online holds a payday loan license and that such payday loans comply with the interest-rate and consumer-protection provisions of the borrower's state of residence; and (2) that Check 'n Go Online brokers multi-installment consumer loans ("installment loans") only if the lender making such installment loans is a federally-insured bank, which has the authority under federal banking law to "export" the interest rate laws of the bank's home state to other states - regardless of the state in which the borrower resides. Check 'n Go Online asserts that all, or nearly all, of the advertisers whose Sponsored Links appear on Google's search pages in response to an internet user's search of the "Check 'n Go" trademark are violating the usury laws and other consumer protection laws of the borrower's home state because they (1) do not hold a payday loan license in the state in which the borrower resides and (2) are not a federally-insured financial institution and, hence, lack the authority to displace the interest rate laws of the borrower's state of residence with the interest rate laws of another state.

Hamm Decl. Ex. B (CNG's Interrogatory Responses).

### IV.   ARGUMENT

Federal Rule of Evidence 702 allows expert testimony only if "it will assist the trier of fact to understand the evidence or to determine a fact in issue." As the Court of Appeal for the D.C. Circuit noted, "Expert testimony that consists of legal conclusions cannot properly assist

2

the trier of fact in either respect..." *Burkhart v. Washington Metropolitan Area Transit Authority*, 112 F.3d 1207, 1212 (D.C. Cir. 1997). Thus, like most federal circuit courts of appeal in this country, the Sixth Circuit has held that expert testimony consisting of legal opinions are not admissible under Rule 702. *See Torres v. County of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985); *see also Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 99-100 (1st Cir. 1997) (collecting cases); *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994) ("It is the responsibility of the court, not testifying witnesses to define legal terms."); *Taylor Pipeline Constr., Inc. v. Directional Road Boring, Inc.*, 438 F.Supp.2d 696, 706 (E.D. Tex. 2006) (Rule 702 does not permit "expert witnesses to offer legal opinions"). While it is sometimes "difficult to determine whether a legal conclusion is implicated in the testimony" and thus excludable, this determination is simplified when the expert explicitly seeks to explain the law. *Torres*, 758 F.2d at 150-51. When an expert wants to testify that "certain conduct was 'unlawful,'" there is absolutely no question that the testimony is impermissible. *Id.* at 151.

Almost all of the expert opinion that CNG intends to present at trial through Schaller's testimony is explicitly a legal opinion and must be excluded. Among other things, CNG would like Schaller to testify about:

- "about the regulatory framework in which Check 'n Go Online operates";

- that CNG's single-installment "payday loans comply with the interest-rate and consumer-protection provisions of the borrower's state of residence";

- "that Check 'n Go Online brokers multi-installment consumer loans ('installment loans') only if the lender making such installment loans is a federally-insured bank, which has the authority under federal banking law to 'export' the interest rate laws of the bank's home state to other states";

- and that "all, or nearly all, of the advertisers whose Sponsored Links appear on Google's search pages in response to an internet user's search of the "Check 'n Go" trademark are violating the usury laws and other consumer protection laws of the borrower's home state because they (1) do not hold a payday loan license in the state in which the borrower resides and (2) are not a federally-insured financial institution and, hence, lack the authority to displace the interest rate laws of the borrower's state of residence with the interest rate laws of another state."

Hamm Decl. Ex. B (CNG's Interrogatory Responses). In other words, CNG would like Schaller

3

to testify that CNG operates legally and that its competitors operate illegally. These are legal conclusions that should be made by the court (if they should be made at all in this case), and not by an expert.

In any case, none of Schaller's proposed testimony—which focuses exclusively on banking regulations—is relevant to the issues in this trademark infringement action. CNG perceives that its competitors have an advantage in the marketplace because they supposedly do not comply with applicable lending and consumer protection laws.[1] At deposition, Schaller testified:

> What concerns me when I punch in Check 'n Go to the Google Web site and -- and read the list of sponsored links -- what concerns me is that I look at those sponsored links, and I see that these are people who are in a competitive -- a competitive advantage to us because they are offering a product that I believe is illegal.
>
> And because its illegal, it's largely unregulated. And it is -- it tends to put us at a competitive disadvantage in that these unregulated loans exceed our loan caps, can be made free from many of the restrictions that we have to comply with and -- and so frankly, one of the things that -- that I -- I really believe is that -- is that these -- these -- these Web sites are particularly pernicious not only because they're trading on our mark but also because they're illegal. And that illegality puts us -- puts us at a competitive disadvantage. That's what really burns me.

Hamm Decl. Ex. C (Schaller Depo.) 84:9-85:2. As much this supposed state of affairs "burns" CNG's general counsel, that does not mean that it has anything to do with the legal or factual issues properly within the scope of CNG's trademark infringement suit against Google.

Trademark infringement law and state lending laws are entirely different topics, and not once has CNG adequately explained their connection or cited any case law that suggests that lending laws have a place when determining whether trademark infringement has taken place. In its opposition to Google's motion for summary judgment, CNG argued that the supposed illegality of its competitors is evidence that the competitors satisfied the Lanham Act's

---

[1] Ironically, in a recently filed lawsuit, the State of California has made the same allegations about CNG—that CNG violates the state's lending and consumer protection laws—that CNG makes about its competitors. Hamm Decl. Ex. D (Complaint in *People of the State of California v. Check 'N Go of California, Inc.*).

4

requirement that Google uses CNG's trademark. CNG's Opposition to Google's Motion for Summary Judgment at 13. CNG makes this argument by taking a line from this Court's ruling on Google's Motion for Judgment on the Pleadings completely out of context. That opinion states that the question of use turns on "whether an Internet search engine, by taking commercial advantage of the drawing power and goodwill of famous marks in this manner is engaging in fair competition presenting web users with useful alternatives, or whether such activity is a form of unfair free riding on the fame of well-known marks." Order (D.I. 35) at 36 (internal quotations omitted). Seizing on this line, CNG argued that because its competitors are supposedly operating in violation of state lending laws, they are not engaging in fair competition. But "fair competition" in the context of the Lanham Act's use requirement is limited to the issue of whether a party is making unauthorized use of a mark in a way that identifies "the source of a product." *Interactive Prods. Corp. v. a2z Mobile Office Solutions, Inc.*, 326 F.3d 687, 695 (6th Cir. 2003). Thus, just because CNG says that its competitors are somehow doing something that is not fair, that does not mean its allegations have anything to do with the Lanham Act.

As explained above, this Court should exclude Schaller from testifying under Rule 702 for two reasons: much of his proposed testimony amounts to legal conclusions and all of his proposed testimony relates to an issue irrelevant in this case.

## V.     CONCLUSION

For the foregoing reasons, the Court should exclude Schaller from testifying as an expert witness.

Dated: July 13, 2007

*Of Counsel:*
/s/ Klaus H. Hamm
Michael H. Page (*pro hac vice*)
Klaus H. Hamm (*pro hac vice*)
Keker & Van Nest LLP
710 Sansome Street
San Francisco, CA 94107
(415) 391-5400

Kenneth F. Seibel (0025168)
Jacobs, Kleinman, Seibel and McNally
1014 Vine Street, Suite 2300
Cincinnati, OH 45202
(513) 281-6600

Attorneys for Defendant Google Inc.

5

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was electronically filed with the Clerk of the Courts using the CM/ECF system which will send notification of such filing to the following, this 13th day of July, 2007:

Ann Gallagher Robinson
Frost Brown Todd LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, OH 45202-4182
arobinson@fbtlaw.com


Barry D. Hunter
Frost Brown Todd LLC
250 West Main Street, Suite 2700
Lexington, KY 40507
bhunter@fbtlaw.com


/s/ Klaus H. Hamm
Attorney for Defendant/Counter Plaintiff

399085.01