UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| CNG FINANCIAL CORPORATION : | | Case No. 1:06-cv-040 |
| Plaintiff/Counterclaim-Defendant, : | | Chief Judge Sandra S. Beckwith<br>Magistrate Timothy S. Black |
| vs. : | | **CNG FINANCIAL CORPORATION'S OPPOSITION TO GOOGLE'S MOTION TO EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERT MICHAEL MAZIS** |
| GOOGLE INC. : | | |
| Defendant/Counterclaim-Plaintiff. : | | |

For its Opposition to the Defendant Google, Inc. ("Google")'s Motion to Exclude Testimony of Plaintiff's Expert Michael Mazis, CNG Financial Corporation ("CNG") states as follows:

## INTRODUCTION

The common theme—the only theme, really—running through Google's motion to exclude the testimony of CNG's expert is that Dr. Mazis "tested the wrong issue," and that his testimony is therefore irrelevant. Google's Motion to Exclude Testimony of Plaintiff's Expert Michael Mazis ("Google's Motion to Exclude Mazis") at 7. Google's self-proclaimed characterization of the correct issue is "whether Google's use of CNG's mark as a keyword trigger causes consumer confusion," and the sole means of testing this issue, according to Google, is to utilize a generic search term as a control. However, contrary to what Google asserts in its Motion, CNG's complaint in this case is not solely about the use of its trademark as an AdWords keyword; it is about the confusion being engendered by the appearance of competitor's sponsored links when a consumer searches the Check N Go trademark on Google's

search engine.[1] Google's own survey expert has acknowledged this point. Hunter Decl., ¶ 2, Exhibit A (Simonson depo., pp. 129:17-129:22). In other words, this Court should not view consumer confusion in a vacuum. Part of the issue is, and always has been, that the sponsored links triggered by the use of Check N Go as a keyword are coined by CNG's questionable competitors, and are by design vague, imprecise, and thus confusing. Thus, and as explained more fully below, Google's assertion that the survey control must isolate the confusion engendered by the use of the keyword from the confusion engendered by the appearance of the sponsored links misapprehends CNG's claim in this case.

Moreover, Google's characterization of Dr. Mazis' survey as simply testing whether payday loan sponsored links generate more confusion than insurance or penny stock sponsored links is nothing more than rhetorical flourish.[2] The survey was designed to see if the appearance of competitors' sponsored links in response to the use of Check N Go as a keyword generate a material amount of confusion. The control was designed to deduct from these results the potential effect of "noise" and other causes for confusion—for example, the ability to show *any* sponsored links on the generated Check N Go results page—about which CNG does not complain.[3] Dr. Mazis wanted to test the confusion generated by Google's practice of selling CNG's trademark to CNG's *competitors*, and his survey was designed to and did accomplish that objective. His testimony will therefore assist this court in its understanding of the issue of

---

[1] See CNG's Complaint, ¶ 29 ("By the operation and design of its AdWords Program, Google causes consumers who specifically intend and desire to find a Check 'N Go website to be directed, instead, to a search result page containing links to the websites of competitors of Check 'N Go Online and the Check 'N Go Companies.").

[2] Essentially any survey with a control can be similarly trivialized as "merely showing" that one type of practice (the test group) causes more confusion than another type of practice (the control group). For example, if 75% of respondents given a new aspirin product reported getting significantly better relief from headache symptoms than they do from aspirin while 10% of respondents given a placebo reported the same thing, you could trivialize the test as "merely showing" that the new product was better than sugar water at relieving headache symptoms. In fact, what this study really showed was that a net 65% of the respondents reported that the new pill was very effective at curing headaches.

[3] Google does not dispute that this is the appropriate purpose of a survey control.

2

consumer confusion generated by Google's sale of CNG's trademark to CNG's competitors, and should not be excluded.

Finally, it is notable that Google's latest Motion simply repeats the same challenge to Dr. Mazis' survey that it asserted at summary judgment—without ever addressing or purporting to refute the detailed point-by-point response to that challenge set forth in CNG's prior filed summary judgment opposition papers. CNG suggests that the failure by Google's able counsel to squarely address these points, which are largely repeated in this opposition, serves to underscore their validity.

## ARGUMENT

A. **That Google does not agree with CNG's premise on what this case is about does not make it irrelevant under the federal rules or *Daubert*—Dr. Mazis' opinion will assist this Court in understanding the evidence and in determining a fact in issue.**

As an initial matter, it is important to remember that this case will be tried by this Court, not by a jury. Sixth Circuit courts, as well as those in other jurisdictions, have emphasized that the so-called "gatekeeper" function of Fed. R. Evid. 702 is less significant in the context of a bench trial. *See, e.g., Deal v. Hamilton Co. Bd. of Educ.*, 392 F.3d 840, 852 (6th Cir. 2004) ("The 'gatekeeper' doctrine was designed to protect juries and is largely irrelevant in the context of a bench trial."); *Whirlpool Props., Inc. v. LG Elecs. U.S.A., Inc.*, No. 1:03-cv-414, 2006 WL 62846, at *1 n.1 (W.D. Mich. Jan. 10, 2006) ("The Sixth Circuit recognizes that the gatekeeping function is less critical in the context of a bench trial."); *see also U.S. v. Brown*, 415 F.3d 1257, 1268 (11th Cir. 2005) ("[The traditional barriers to opinion testimony] are even more relaxed in a bench trial situation, where the judge is serving as factfinder…There is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself."); *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000) ("most of the safeguards provided for in *Daubert* are

not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury").

Nevertheless, even if the gatekeeper doctrine applies here in full force, CNG respectfully submits that the testimony of Dr. Mazis will do much more, and certainly no less, than assist this Court in its understanding of the issue of consumer confusion. In its efforts to exclude the testimony of Dr. Mazis, Google's only argument is that Dr. Mazis' opinion is not relevant.[4] Examining relevance in the context of the admission of expert testimony includes analyzing whether the testimony "fits" the facts of the case and whether the testimony addresses a subject matter on which the factfinder can be assisted by an expert. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993); *see also Ullman v. Auto-Owners Mut. Ins. Co.*, No. 2:05-cv-1000, 2007 WL 1858146, at *3 (S.D. Ohio June 26, 2007) ("The second prong of the gate-keeping role requires an analysis of whether the expert's reasoning or methodology can be properly applied to the facts at issue, that is, whether the opinion is relevant to the facts at issue."). In *Daubert*, the Supreme Court notes that relevant evidence is defined elsewhere in the Federal Rules of Evidence as "that which has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." 509 U.S. at 587 (quoting Fed. R. Evid. 402). The Court goes on to provide that "[t]he Rules' basic standard of relevance thus is a liberal one." *Id.*

Google asserts that Dr. Mazis' "survey is not relevant to this litigation because…it does not consider whether Google's use of CNG's mark as a keyword trigger causes consumer confusion." Google's Motion to Exclude Mazis at 6. As discussed above, Google's narrow definition of what is and is not relevant confusion fails to encompass that confusion created by

---

[4] Google does not address, and thus apparently does not object to, the qualifications of Dr. Mazis, the sufficiency of his facts or data, or the reliability of his methods, the other factors contemplated by Fed. R. Evid. 702.

4

the use of CNG's mark as a keyword triggering competitive and confusingly similar sponsored links.[5] Consideration of the confusion created in the actual context of the sponsored links generated when inputting the Check N Go keyword will certainly assist this Court in determining a factual dispute in this case—the likelihood of consumer confusion when competitive sponsored links are triggered by the input of Check N Go as a search term.

Google's dispute with Dr. Mazis' factual bases for his opinion, if to be credited by this court at all, goes only to the evidentiary weight afforded his opinion, not its admissibility. *See, e.g., Daubert*, 509 U.S. at 595-96 (gatekeeper analysis should focus on "principles and methodology, not on the conclusions they generate"); *AHP Subsidiary Holding Co. v. Stuart Hale Co.*, 1 F.3d 611, 618 (7th Cir. 1993) ("[w]hile there will be occasions when the proffered survey is so flawed as to be completely unhelpful to the trier of fact and therefore inadmissible, *such situations will be rare*").[6] A court's gatekeeper role under the federal rules is not meant to

---

[5] As "support" for its mischaracterization of Dr. Mazis' survey and the relevance of what it tested, Google attempts to distort Dr. Mazis' deposition testimony, quoting him entirely out of context as stating that he didn't test the confusion engendered by the use of Check N Go as an AdWords keyword. However, what Dr. Mazis was explaining was that his test was for confusion generated not just by the entry of Check N Go as a keyword, but also by competitive sponsored links appearing in response to the entry of the Check N Go keyword, as illustrated in this exchange during Dr. Mazis' deposition:
    Q.    The purpose of the study was to try to measure the effect of "Check 'n Go" as a search term, correct? As opposed to in the text of ads? Isn't that what you said earlier?
    A.    Yes, in part. Right.
    Q.    Well, then, what's the other part?
    A.    Well, the other part has to do with—It's when you—when "Check 'n Go" is placed in the search window, when the sponsored link—when the results page come up and there's sponsored links on there, the question is to what extent are people confused as to the source of those sponsored links. So, I mean, there's two elements. One is entering "Check 'n Go" in the search window or search box, and the second is the sponsored links, the competitive sponsored links.
Hunter Decl., ¶ 3, Exhibit B (Mazis depo., p. 17:6-17:22).

[6] *See also Prudential Ins. Co. v. Gibraltar Fin. Corp.*, 694 F.2d 1150, 1156 (9th Cir. 1982) ("Technical unreliability goes to the weight accorded a survey, not its admissibility."); *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 452 F. Supp. 2d 772, 778 (W.D. Mich. 2006) ("…flaws in survey methodology go to the evidentiary weight of the survey rather than its admissibility"); *Whirlpool Props.*, 2006 WL 62846, at *8 (same); McCarthy § 32:170 (improper survey may be excludable "in extreme case…But the majority rule is that while technical deficiencies can reduce a survey's weight, they will not prevent the survey from being admitted into evidence."). Google also cites

replace the adversary system. Indeed, given the liberal thrust of the federal rules, especially in the context of a bench trial, Google's objections to Dr. Mazis' testimony are more suitable for demonstration during its cross-examination of Dr. Mazis and through presentation of its own contrary evidence.[7] Simply because Google disagrees with CNG's determination of the facts pertinent to the determination of consumer confusion in the context of this case does not render the opinion of CNG's expert irrelevant or unhelpful to this Court in its role as factfinder.

**B.  Because CNG's complaint in this case is not solely about the use of its trademark as an AdWords keyword—but also about the appearance of the sponsored links triggered by a Google search of that trademark—Dr. Mazis did not need to select a survey control which would isolate the effects of the one from the other.**

As explained above, Dr. Mazis tested, on a control group, whether the respondents believed that sponsored links advertising the services of insurance companies and stock brokers which appeared in response to their Google search of Check N Go were sponsored by Check N Go. Dr. Mazis then netted out, from the confusion results reported from his test group (the legally relevant confusion), the confusion results reported from his control group (the legally irrelevant confusion). The difference yielded the net confusion rate.

Google argues that a more proper control would have been to test for the amount of confusion experienced by respondents searching for generic keywords such as "payday loans." Of course, Google can cite to no case in which a survey is excluded simply because a more

---

to *AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786 (6th Cir. 2004), for the proposition that Sixth Circuit courts will exclude a survey that provides "no evidence of actual confusion." In *AutoZone*, however, the survey at issue was conducted to consider the strength of the mark, not confusion. The court, considering the survey in the context of its examination of the eight factors relevant for likelihood of confusion, found that the survey did not provide evidence of actual confusion, not a surprising finding considering the survey was not designed to so provide.

[7] *See, e.g., Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

effective control might have been selected.[8]  Even surveys with *no controls*, like the survey that Google unsuccessfully challenged in the *American Blind* case for having failed to isolate the confusion caused by the use of the keyword from the confusion caused by the appearance of sponsored links (precisely the same wrongheaded challenge it levels here) have routinely been admitted.[9]  Moreover, in any event, Google's suggested control makes no sense in this case.

The basis for Google's argument here is a sentence in Judge Brinkema's opinion in *Government Employees Insurance Co. v. Google, Inc.*, 2005 WL 1903128, at *5 (E.D. Va.) ("*GEICO*"), discussing what Judge Brinkema concluded, *after admitting the survey at trial*, were methodological flaws in GEICO's survey in that case.  *Id.* ("As a threshold matter, the control retained the use of "GEICO" as a keyword, which itself was alleged to be a source of confusion").  However, critical distinctions between the facts before Judge Brinkema and the facts of this case make her observations about the control in that case wholly inapplicable here.

In the *GEICO* survey, unlike in Dr. Mazis's survey, respondents were shown search pages with the term GEICO appearing in the title of the sponsored links.  Thus, it was difficult to determine whether the reported confusion resulted from the use of GEICO as a keyword or,

---

[8] Google cites no case, and CNG has not uncovered any, where a survey was wholly excluded for utilizing a flawed control.  To the contrary, courts have often admitted surveys despite having an arguably flawed control, *see Merisant Co. v. McNeil Nutritionals, LLC*, 2007 U.S. Dist. LEXIS 27681, at *25-*32 (E.D. Pa. April 12, 2007) (party's alleged "improper" choice of control "go to the weight to be accorded to the survey rather than to its admissibility").  The two cases Google cites as examples of courts that excluded a survey on the basis of inadequate survey controls—*Cumberland Packing Corp. v. Monsanto Co.*, 32 F. Supp. 2d 561, 574 (E.D.N.Y. 1999) and *Hill's Pet Nutrition, Inc. v. Nutro Prods., Inc.*, 258 F. Supp. 2d 1197, 1210 (D. Kan. 2003)—did not actually do so.  The courts in both were ruling on plaintiffs' motion for a preliminary injunction, and considered the surveys in analyzing evidence of actual confusion.  In *Cumberland Packing*, the court found the survey "unpersuasive" based on its improper universe, unrealistic market conditions, and problems with the control.  In *Hill's Pet Nutrition*, considering a survey offered to show implied falsity for a false advertising claim, the court discounted the survey on reliability grounds, including issues with the control, biased questions, and insignificant findings.  Neither court, however, was considering a motion to wholly exclude the testimony of the expert at trial.

[9] Hunter Decl. ¶ 4, Exhibit C, p. 15; *see also Ironclad, L.P. v. Poly-America, Inc.*, 2000 U.S. Dist. LEXIS 10728, at *24 (N.D. Tex. July 28, 2000) ("However, the Court need not exclude the survey due to the lack of control, as generally, technical deficiencies go to the weight rather than admissibility.  In light of the deficiency, the Court discounts the weight of the survey, yet still gives Mr. Stone's results some consideration.").

instead, from the use of GEICO in the title of the sponsored links. Because, by the time of trial, Google had disabled all of the sponsored links containing the term GEICO in their text, while continuing to allow advertisers to use GEICO as a keyword trigger, the confusion caused by the appearance of GEICO in the text of the sponsored links shown to the survey respondents was legally irrelevant to GEICO's injunction claim and needed to be isolated from the survey results. The entirety of the survey criticisms in the *GEICO* opinion related to the inability to separate out the legally relevant confusion engendered by the use of GEICO as a keyword from the legally irrelevant confusion engendered by the appearance of GEICO in the text of the sponsored links. And the only way to do that, if GEICO was not removed from the text of the sponsored link, was to remove GEICO from the keyword search and then to test the remaining confusion.[10]

Here, unlike in *GEICO,* Dr. Mazis's survey respondents were not shown sponsored links with Check N Go in the title; to the contrary, they were only shown links containing terms that are permissible under Google's current policies and that continue to appear on the search pages triggered by a search of the keyword Check N Go.[11] Thus, unlike in the *GEICO* survey, the confusion engendered by the appearance of the sponsored links shown to Dr. Mazis's survey respondents was legally *relevant* (since those links were representative of the links that are still being triggered by the use of Check N Go as a keyword), and Dr. Mazis did not need to isolate the confusion engendered by the use of Check N Go as a keyword from the confusion

---

[10] Moreover, simply because the *GEICO* court endorsed a particular survey design does not signify that this design is the only one that will produce relevant results, especially considering the easily distinguished facts. *Cf. Whirlpool Props.*, 2006 WL 62846, at *36-*37 (asserting that prior case cited by plaintiff "did not establish a survey template that must be followed in every case," and that defendant's survey design provided "sufficiently reliable and relevant information to pass the gatekeeping threshold").

[11] In fact, by avoiding the use of many of the more deceptively titled links, that are permitted under Google's policies and that continue to appear today, e.g., "Check in Go" and "CheckinGo.com," Dr. Mazis's survey tended to underreport the likely measure of legally relevant confusion. And because the sponsored links shown to Dr. Mazis's respondents contained no text suggesting any connection with Check N Go, there is no reason to believe that any appreciable amount of respondents would have believed that those listings were affiliated with Check N Go had they been shown those links in response to their search of a generic keyword such as "payday loans."

engendered by the appearance of the sponsored links on the Check N Go search page. Thus, absent the need to separate out these two types of confusion, which was necessitated under the unique facts in *GEICO,* there was no need for Dr. Mazis to control for the confusion engendered by a search of a generic keyword.[12]

Finally, for all its griping about CNG's failure to use a generic search term, such as "payday loans," as a control and for all of its claims that the need for such control was so obvious, Google's own experts in *GEICO*, both in the initial survey and expert report and in the rebuttal expert report, did not use and seemingly never even considered the use of a generic search term as a control.[13] Further, as emphasized in CNG's summary judgment opposition papers, Google did not bother to conduct its own survey utilizing its preferred control to refute Dr. Mazis' findings, a detail courts in the Sixth Circuit have noted "significantly undermines the efficacy" of any argument to exclude another party's expert.[14]

---

[12] Google distorts Dr. Mazis' testimony on this point as well. Rather than testifying that he ignored the *GEICO* court's criticism of the GEICO plaintiff's survey for not using a different keyword as a control, what Dr. Mazis actually said was that that criticism did not apply to this case. Hunter Decl., ¶ 3, Exhibit B (Mazis depo. p. 58:3-58:14).

[13] In its initial survey report in *GEICO*, Google's first survey expert, Dr. Jacoby, utilized several controls; however, none was a generic search term related to GEICO's insurance field. Hunter Decl., ¶ 5, Exhibit D. In its rebuttal expert report, Google's second survey expert, Dr. Itamar Simonson, criticized the control used by GEICO's expert, but he did not discuss the apparently now-obvious virtues of using a generic search term related to insurance as a control. *Id.*, ¶ 6, Exhibit E.

[14] On this point, Google's statement about the significance CNG assigns to Google not conducting its own survey is utterly disingenuous. According to Google, CNG argued that "because Google's expert criticized CNG's survey but did not conduct one himself, *CNG's survey must be relevant and inadmissible.*" [CNG assumes this last part is a typographical error, as CNG certainly did not argue its survey must be *in*admissible.] Google then proceeds to take its self-embellished version of CNG's argument to "its logical extreme"—essentially comparing Dr. Mazis' detailed survey of consumer confusion to a study proving "clowns are funny." Google's Motion to Exclude Mazis at 7 n.2. What CNG actually stated in its opposition to Google's motion for summary judgment is that Google's failure to present its own survey evidence challenging Dr. Mazis' findings is telling and "*compels against excluding* Dr. Mazis' study." *See* CNG's Memorandum in Opposition to Google's Motion for Summary Judgment at 21. CNG did not then and does not now represent that the absence of competing survey evidence, on its own, warrants the admission of its survey. However, Google's flippant analogies and disregard for what CNG and courts have actually asserted cannot explain away Sixth Circuit law, also cited by CNG in its opposition papers, supporting that the absence of competing survey evidence "*significantly undermines* the efficacy of plaintiffs' arguments that defendants' evidence is so unreliable that it must be excluded." *Whirlpool*, 2006 U.S. Dist. LEXIS 1378, at *11-*12.

9

## CONCLUSION

For the reasons stated above, Google's Motion to Exclude Testimony of Plaintiff's Expert Dr. Michael Mazis should be denied.

Respectfully submitted,

/s/ Barry D. Hunter
Ann Gallagher Schoen
Frost Brown Todd, LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, OH 45202-4182
Tel.: (513) 651-6800
Fax: (513) 651-6981

Barry D. Hunter
Medrith Lee Norman
Frost Brown Todd LLC
250 West Main Street, Suite 2700
Lexington, Kentucky 40507
Tel.: (859) 231-0000
Fax: (859) 231-0011

Attorneys for CNG FINANCIAL CORPORATION

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was electronically filed with the Clerk of the Courts using the CM/ECF, system which will send notification of such filing to the following, this 20th day of July, 2007:

>Kenneth F. Seibel, Esq.
>Jacobs, Kleinman, Seibel & McNally
>2300 Kroger Building
>1014 Vine Street
>Cincinnati, OH  45202
>
>Michael H. Page, Esq.
>Klaus H. Hamm, Esq.
>Keker & Van Nest LLP
>710 Sansome Street
>San Francisco, CA  94107

>/s/ Barry D. Hunter
>Attorney for Plaintiff/Counter Defendant

LEXLibrary 0102393.0533475 339659v1