CNC Financial Corporation v. Google Inc    Doc. 74 Att. 2
Case 1:06-cv-00040-SSB-TSB   Document 74-3   Filed 07/20/2007   Page 1 of 2
Case 5:03-cv-05340-JF   Document 265   Filed 01/26/2007   Page 2 of 21

```
                                                                    Page 1
 1              UNITED STATES DISTRICT COURT

 2             NORTHERN DISTRICT OF CALIFORNIA

 3

 4  GOOGLE INC., a Delaware      )
    corporation,                 )
 5                               )
            Plaintiff(s),        )
 6  vs.                          )   Case No.
                                 )
 7  AMERICAN BLIND & WALLPAPER   )   C 03-5340-JF (RS)
    FACTORY, INC., a Delaware    )
 8  corporation d/b/a            )
    decoratedtoday.com, Inc., and)
 9  DOES 1 through 100,          )
    inclusive,                   )
10                               )
            Defendant(s).        )
11  _____)
                                 )
12  AMERICAN BLIND & WALLPAPER   )
    FACTORY, INC., a Delaware    )
13  corporation d/b/a            )
    decoratedtoday.com, Inc., and)
14  DOES 1 through 100, inclusive)
                                 )
15          Counter-Plaintiff,   )
    vs.                          )
16                               )
    GOOGLE INC., a Delaware      )
17  corporation,                 )
                                 )
18          Counter-Defendant.   )
    _____)
19

20         DEPOSITION OF DR. ITAMAR SIMONSON

21             Held at Howrey
           525 Market Street, Suite 3600
22            San Francisco, California
         Friday, December 15, 2006,  9:51 a.m.
23

24

25  REPORTED BY:  James Beasley, CSR No. 12807
```

DR. ITAMAR SIMONSON

EXHIBIT A

Page 126

1 search result that the consumer would expect to get
2 if they just put in blinds?
3 A. I don't know. I don't think that that
4 would be a concern. I'm not sure how many
5 consumers have some theories about the algorithm
6 that generates organic results or in the context of
7 the survey that would be a significant factor, that
8 somehow they would analyze and say, well, here is
9 American Blinds.
10 Let's assume that they know to research a
11 brand or think, is there American Blinds, which
12 sounds like a perfectly legitimate organic result.
13 I mean, there are blinds that are made and sold in
14 America. So there is nothing unusual there.
15 Q. Okay. So have you any other suggestions
16 for what a proper control would be?
17 A. You know, I haven't thought -- that seems
18 so obvious. I haven't thought about others.
19 Q. Okay.
20 A. I mean, you could have asked about a
21 different brand. That would be another control.
22 Like, would you find -- I don't know, name another
23 brand.
24 Q. Uh-huh.
25 A. That could be another control.

Page 127

1 Q. Okay.
2 A. This was an especially easy survey for
3 which to find a control.
4 Q. Would changing the appearance of the way
5 the listings come back be a proper control, in
6 other words, moving the sponsored listings down to
7 the bottom and putting a disclaimer saying that
8 these listings aren't related to the search term?
9 A. I don't know. Now you -- that's an
10 open -- there are infinite possibilities about
11 moving it two inches down or an inch and a half up.
12 I don't see any need for that.
13 I mean, the key here is whether the
14 consumers are misled after entering the term
15 american blinds by the sponsored links that appear.
16 So I think that's really the question, not exactly
17 the positioning.
18 I understand the complaint is not saying,
19 how come the sponsored links appear two inches to
20 the right or whatever. My understanding, that's
21 not the basis for the allegations here.
22 Q. Well, I think you're mistaken on that.
23 You're aware that the ordering of listings can have
24 an impact on the click-through rate, right?
25 A. Yes.

Page 128

1 Q. And that's why right now the sponsored
2 listings are either at the top of the organic
3 listings or directly to the right of the top of the
4 organic listings, correct?
5 A. Yes.
6 Q. And so if you assume -- if you just accept
7 my representation that the manner in which the
8 listings are presented in response to a search term
9 in the trademark is part of the problem, would it
10 be an acceptable control to just move the sponsored
11 listings down to the bottom and put a disclaimer
12 up?
13 A. No.
14 Q. And why not?
15 A. No. I mean, I don't think that's the
16 question. The question is whether -- I forget how
17 Mr. Ossip defined his mandate, but I believe he
18 said, whether consumers who enter the search term
19 american blinds in the Google search engine are
20 misled by their results by the sponsored links
21 appearing on the web results.
22 That's the question. So the question is,
23 in other words, you have to enter the terms
24 american blinds and then you are misled by the
25 links. It doesn't say are misled because the

Page 129

1 links -- the sponsored links appear one inch from
2 the top as opposed to four and a half inches from
3 the top. I just didn't see that in his objective
4 for the survey. So therefore that would not be my
5 control.
6 Q. Okay. But if it was his control, why
7 wouldn't that have been acceptable, what would your
8 criticism be?
9 A. Because it would have the same problems
10 that we talked about.
11 Q. I don't understand. What would the same
12 problems be?
13 A. Well, because it still would not show in
14 any way that the beliefs or the answers had
15 anything to do with entering the key words,
16 american blinds.
17 Q. Well, but you understand that the
18 infringement is not the fact that people type in
19 american blinds, or the alleged infringement is not
20 the fact people type in american blinds, it's what
21 comes back in response to that?
22 A. Yeah, that's my understanding.
23 Q. So if you were to compare what's currently
24 coming back versus, you know, rearranging it in
25 some way and you didn't have -- and you didn't have