UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| CNG FINANCIAL CORPORATION : | |
| : | Case No. 1:06-cv-040 |
| Plaintiff/Counterclaim- : | |
| Defendant, : | Chief Judge Sandra S. Beckwith |
| : | Magistrate Timothy S. Black |
| vs. : | |
| : | **CNG FINANCIAL CORPORATION'S** |
| GOOGLE INC. : | **OPPOSITION TO GOOGLE INC.'S** |
| : | **MOTION TO EXCLUDE** |
| Defendant/Counterclaim- : | **TESTIMONY OF PLAINTIFF'S** |
| Plaintiff. : | **EXPERT STEPHEN SCHALLER** |

Based on his specialized knowledge, Mr. Stephen Schaller proposes to testify about factual information which the Court will need to consider in reaching its own conclusions as to the legality, context and effect of the sponsored link advertisers' conduct. In so doing, he will not supplant the Court's authority to interpret the controlling law in this case. Instead, his testimony will assist the Court, by providing it with the context to evaluate Google's claims that the social utility of Google's sale of CNG's trademark outweighs the harm done by that sale and by demonstrating the nature of the harm suffered by CNG.

CNG certainly does not suggest that Mr. Schaller's opinion as to the meaning of the governing law should supersede this Court's domain, but his declaration does far more than simply state his opinion of the law governing this case.[1] Mr. Schaller does not offer an opinion as to whether Google's conduct or that of the sponsored link advertisers infringes the trademark. To the extent his testimony involves a legal determination, it depends on a factual inquiry into whether or not the advertisers in question are offering loans to residents of various states and

---

[1] According to the Sixth Circuit, "[t]he problem with testimony containing a legal conclusion is in conveying the witness' unexpressed, and perhaps erroneous, legal standards to the jury. This 'invade[s] the province of the court to determine the applicable law and to instruct the jury as to that law.'" *Torres v. County of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985). That problem does not arise in a case, such as this one, where the court serves as the trier of fact.

whether or not those lenders are licensed in those states. Mr. Schaller's expertise, based on his responsibilities for CNG's regulatory compliance, enables him to assist this Court in addressing: (1) whether the sponsored link advertisers are actually offering loans to residents in various jurisdictions; (2) the actual name under which these sponsored link operators are offering their loans in those jurisdictions; and (3) whether these operators have obtained licenses with the regulatory bodies that govern payday lending in these various jurisdictions (which requires knowledge of the actual names under which the lenders are operating in those states). If, as CNG argues without refutation by Google, applicable law requires these advertisers to obtain payday lending licenses before offering loans to residents of a given state (which this Court can determine from the parties' arguments), then Mr. Schaller's testimony on whether these lenders are, in fact, offering loans to residents of various states without obtaining a license from those states paints a more complete and realistic picture of the market in which CNG and these lenders operate than would otherwise be available. Moreover, it is evidence that only someone with Mr. Schaller's background and knowledge could present, and not the type of conclusory testimony which the courts have excluded. *See Torres*, 758 F.2d at 151 (exclusion appropriate only when the terms used by the witness have a "separate, distinct and specialized meaning in the law" different than the common usage—excluding testimony that plaintiff had been "discriminated" against, but noting that testimony that national origin motivated the hiring decision would be acceptable). Because his testimony directly bears on these factual issues, rather than simply parroting legal terminology, it is permissible under the Sixth Circuit standard. *Id.*

As the cases cited by Google hold, courts in the Sixth Circuit will reject testimony on a controlling matter of law within the knowledge and province of the Court. However, where such testimony will assist the trier of fact to understand a complex regulatory structure or evaluate

2

another issue in the case, the Court may admit it for that purpose. *See, e.g., Flanagan v. Altria Group, Inc.*, 423 F. Supp. 2d 697, 700-701 (E.D. Mich. 2005) (expert's understanding of the issue helpful to the court where he had acquired specialized knowledge about a complex regulatory matter); *Century Indem. Co. v. Aero-Motive Co.*, 254 F. Supp. 2d 670, 677 (W.D. Mich. 2003) (expert's testimony was admissible where it pertained to issues of fact and was based on experience not possessed by ordinary person); *see also Envtl. Def. Fund, Inc. v. Lamphier*, 714 F.2d 331, 340 (4th Cir. 1983) (health department director could testify as expert on the application and interpretation of state statutes and regulations that govern solid waste disposal activities). Thus, trial judges in the Sixth Circuit have a wide degree of discretion in admitting or excluding testimony which arguably contains a legal conclusion. *Torres*, 758 F.2d at 150.

Moreover, Mr. Schaller's testimony is as much factual as legal—he can testify as to CNG's compliance efforts in each of the jurisdictions in which it operates and the results of his investigations into such factual matters as to whether the sponsored link advertisers hold a license from those jurisdictions. The Court certainly has the ability to accept the parts of the testimony which rest on Mr. Schaller's experience, even if it opts to make its own evaluation of the various regulatory requirements of each of the states. Thus, Google's request that the Court reject the entirety of Mr. Schaller's testimony is far too broad. To the extent that the Court feels that Mr. Schaller strays to closely to the law governing this case, it can disregard that portion while accepting those parts helpful to its decision. *See Davis v. Combustion Eng'g, Inc.*, 742 F.2d 916, 919-920 (6th Cir. 1984) (no reversible error in admitting testimony arguably representing legal conclusion where court instructed jury that testimony represented opinion which jury could accept or reject).

3

Finally, whether Google is selling the CNG trademark to sponsored link advertisers who operate outside the regulatory requirements of the various jurisdictions is directly relevant to CNG's request for injunctive relief as well as to the arguments put forth by Google. To evaluate the propriety of an injunction, the Court must weigh and balance several related inquires: the likelihood of irreparable harm, the balance of the hardships between the plaintiff and the defendant and the public interest. *See Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006). Certainly, the fact that the sponsored link advertisers that Google is calling to consumers' attention when they search CNG's trademark on the Google search engine are operating illegally speaks to the public interest prong. Similarly, it speaks to the damage CNG will suffer when consumers associate its trademark with the services offered by these competing companies. Not only does CNG lose immediate business, but there exists a real risk that its hard won reputation will be seriously tarnished.

In addition, Google has argues that its Adwords program actually benefits the public by providing alternatives to the specific products and services that the consumer intends to locate. *See, e.g.*, Google's Motion for Summary Judgment and Memorandum in Support Thereof, at pp. 3, 17. Again, this argument loses much of its force when applied to the facts of this case, where the majority of these allegedly helpful alternatives make no effort to operate according to the same standards as the company whose trademark the consumer has entered. Put simply, to the extent that Google claims to be offering the consumer a public service sufficient to outweigh the harm to CNG, CNG should have the opportunity to demonstrate that Google actually does consumers a disservice by allowing unlicensed, and potentially unscrupulous, operators to trade on the confidence consumers derive from their knowledge of the Check N Go name. Having

4

raised the issue, Google cannot now argue a lack of relevance as a bar to providing the Court with both sides of the story.

In sum, Mr. Schaller's testimony falls well within the bounds of FRE 702 and should be admitted. It does not usurp the province of the Court, because it does not purport to dictate the law governing the parties' behavior in this case. It does, however, assist the trier of fact to understand the regulatory environment in which CNG and its competitors operate and the market in which the advertising at question, and the resultant harm, takes place. This type of factual information bears on the Court's balancing of the harm to CNG against any public interest as put forth by Google and the irreparable nature of the harm to its reputation which CNG suffers. Moreover, the Court is well able to separate any portions of Mr. Schaller's testimony that it finds objectionable at trial; it need not throw out his wealth of experience in this area for fear of a legal conclusion which strays too close to one of the controlling issues in the case. Accordingly, Google's motion for the exclusion of Mr. Schaller's testimony should be denied.

Respectfully submitted,

/s/ Barry D. Hunter
Ann Gallagher Schoen
Frost Brown Todd, LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, OH  45202-4182
Tel.:  (513) 651-6800
Fax:  (513) 651-6981

Barry D. Hunter
Medrith Lee Norman
Frost Brown Todd LLC
250 West Main Street, Suite 2700
Lexington, Kentucky 40507
Tel.:  (859) 231-0000
Fax:  (859) 231-0011

*Attorneys for CNG Financial Corporation*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was electronically filed with the Clerk of the Courts using the CM/ECF, system which will send notification of such filing to the following, this 20th day of July, 2007:

    Kenneth F. Seibel, Esq.
    Jacobs, Kleinman, Seibel & McNally
    2300 Kroger Building
    1014 Vine Street
    Cincinnati, OH  45202

    Michael H. Page, Esq.
    Klaus H. Hamm, Esq.
    Keker & Van Nest LLP
    710 Sansome Street
    San Francisco, CA  94107

    /s/ Barry D. Hunter
    Attorney for Plaintiff/Counter Defendant