# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| CNG FINANCIAL CORPORATION, )<br>Plaintiff, )<br>)<br>vs. )<br>)<br>GOOGLE, INC., )<br>Defendant. )<br>)<br>) | Case No. 1:06-cv-040 |

## ORDER

This matter is before the Court on the Motion to Exclude Testimony of Plaintiff's Expert Michael Mazis filed by Defendant and Counter-Claimant Google, Inc. ("Google") (doc. no. 69) and Google's Motion to Exclude Testimony of Plaintiff's Expert Stephen Schaller (doc. no. 71). Plaintiff CNG Financial Corporation ("CNG") opposes both motions. Docs. no. 74, 76.

A. Standard of review

Federal trial courts have a "gatekeeping" role with regard to the admissibility of proffered expert testimony. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). The standard for the admission of expert scientific, technical or other specialized testimony is set forth in Fed. R. Ev. 702. Rule 702 allows such testimony to be admitted if it "will assist the trier of fact to understand the evidence or to determine a fact in issue" and if the witness is qualified as an expert. "[T]he trial judge must ensure that any and all

scientific testimony or evidence admitted is not only relevant, but reliable." Daubert, 509 U.S. at 589.

The inquiry under Rule 702 is a flexible one, and the focus for admissibility must be based "solely on principles and methodology, not on the conclusions that they generate." Id. at 595. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Id. at 596. The party proffering expert testimony has the burden of demonstrating by a "'preponderance of proof' that the expert whose testimony is being offered is qualified and will testify to . . . knowledge that will assist the trier of fact in understanding and disposing of issues relevant to the case." Pride v. BIC Corp., 218 F.3d 566, 578 (6th Cir. 2000) (citing Daubert, 509 U.S. at 592 n.10).

B.  Mazis Survey

Google seeks to exclude the Mazis report on the ground that the survey on which the report is based does not touch upon issues relevant to this case or test CNG's theory of liability, which Google frames as follows: "[W]hen Google triggers ads with CNG's trademarks, it causes confusion about the source of those ads in violation of the Lanham Act." Google claims that Mazis denies that his survey tested the validity of this theory and that he was forced to admit as much because the survey did not have a proper control to test for whether use of the "Check N Go" mark as a search term is the cause of the confusion. Google argues that, instead, by showing a control group Sponsored Links for services unrelated to payday lending (as opposed to links for services of CNG's

competitors), Mazis' survey controlled for, and tested, the irrelevant issue of whether consumers are more likely to think CNG is the source of ads for payday lending services than the source of ads for unrelated services, such as life insurance.  Google contends that because Mazis' survey was intended to test cause and effect, the purported failure to include a relevant control renders the survey data meaningless and the survey irrelevant.

In response, CNG contends that the Mazis survey "was designed to see if the appearance of competitors' sponsored links in response to the use of Check N Go as a keyword generates a material amount of confusion," which is a relevant issue in the case. CNG argues that Google's objections to the survey go to the weight to be afforded the survey rather than its admissibility.

Initially, the Court finds that the decision in GEICO v. Google, Inc.[1], which Google alleges should have instructed Mazis as to what control to use, provides little, if any, guidance as to the proper control for a survey in this case.  The district court found many flaws in the survey proffered in GEICO, including the fact that "the control retained the use of "GEICO" as a keyword, which itself was alleged to be a source of confusion." Id. at * 5.  The opinion, however, offers no analysis or reasoning for the conclusion that this constituted a flaw in the survey.

Moreover, in challenging Mazis' selection of a control, Google has not accurately described the purpose of the Mazis survey.  Mazis did not simply test for whether the use

---

[1] 2005 WL 1903128 (E.D. Va. Aug. 8, 2005) (unreported decision)

of "Check N Go" as a keyword causes confusion as to the source of the Sponsored Links that appear on the results page.  <u>See</u> doc. no. 70, Hamm Decl., Exh. A, Mazis depo., 57:11-17.  Rather, Mazis testified that the survey was designed more specifically to test to what extent people are confused as to the source of the Sponsored Links of competitors versus the links of non-competitors that appear on the results page.  <u>See</u> <u>id</u>. at 106:14-17; doc. no. 74, Hunter Decl., Exh. B, Mazis depo., 17:6-22.  The control selected by Mazis may have been effective to test for this and to establish the premise for which CNG apparently offers the survey evidence; i.e., that by generating Sponsored Links for *competitors'* services in response to the search term "Check N Go," Google causes confusion as to the source of those links.  Thus, Google has not established that the survey should be excluded based on Mazis' failure to use a proper control.

Assuming Mazis did not use a proper control, this does not warrant excluding the survey and his report from evidence pursuant to Rule 702.  Google's objections regarding the selected control, as well as its remaining objections, go to the weight to be afforded the survey.  Google is free to cross-examine Mazis and to present contrary evidence at trial regarding the purported flaws in the survey.  As the Court indicated in its Order denying summary judgment, the Court can determine the validity of Google's objections and the probative value of the Mazis report after hearing the evidence at trial.

C.  Schaller Testimony

Google moves to exclude the testimony of Stephen Schaller, CNG's general counsel, on two grounds.  First, Google contends that much of his proposed testimony constitutes legal conclusions, which are properly made by the Court.  Second, Google argues that all of the testimony pertains to an issue that is not relevant to this case; i.e., whether CNG and its competitors comply with various lending and consumer protection laws.

CNG contends that Mr. Schaller will not offer opinions on ultimate legal issues to be decided by the Court but will instead testify as to regulatory matters concerning CNG and its competitors.  CNG claims that Mr. Schaller's expertise, based on his responsibility for CNG's regulatory compliance, enables him to assist the Court in addressing the following issues: "(1) whether the sponsored link advertisers are actually offering loans to residents in various jurisdictions; (2) the actual name under which these sponsored link operators are offering their loans in those jurisdictions; and (3) whether these operators have obtained licenses with the regulatory bodies that govern payday lending in these various jurisdictions (which requires knowledge of the actual names under which the lenders are operating in those states)."  CNG claims that whether Google is selling the CNG trademark to Sponsored Link advertisers who operate outside the regulatory requirements of the various jurisdictions is relevant to CNG's request for injunctive relief and to arguments put forth by Google.  CNG claims this is so because "the fact that the

sponsored link advertisers that Google is calling to consumers' attention when they search CNG's trademark on the Google search engine are operating illegally speaks to the public interest prong" as well as to "the damage CNG will suffer when consumers associate its trademark with the services offered by these competing companies."  CNG further alleges that whether Google "actually does consumers a disservice by allowing unlicensed, and potentially unscrupulous, operators to trade on the confidence consumers derive from their knowledge of the Check N Go name" is relevant to whether Google offers consumers a public service sufficient to outweigh any harm to CNG.

It does not appear from the record that all of the testimony of Mr. Schaller that CNG intends to present at trial involves legal conclusions.  Nor has Google shown that it would be improper for Mr. Schaller to testify regarding certain regulatory matters that pertain to the payday lending industry.  Mr. Schaller's testimony based on his knowledge of the industry may assist the Court in resolving issues CNG has raised that conceivably bear on its right to injunctive relief and damages.  Accordingly, the Court will not exclude Mr. Schaller's testimony pursuant to Rule 702.  Google is free to raise specific objections to Mr. Schaller's testimony at trial.

D.  Conclusion

In accordance with the foregoing, Google's motions to exclude are **DENIED** without prejudice to Google's right to raise its objections to the report and testimony of Michael Mazis and Stephen Schaller at trial.

**IT IS SO ORDERED**.


Date:    8/24/07                                     S/ Sandra S. Beckwith
                                                              Sandra S. Beckwith, Chief Judge
                                                                 United States District Court